

email: njohnson@jjllplaw.com

September 30, 2022

**Via ECF**
Hon. Zahid N. Quraishi, U.S.D.J.
United States District Court for the District of New Jersey
Clarkson S. Fisher Bldg. & U.S. Courthouse
402 East State Street, Room 2020
Trenton, NJ 08608

>Re:  Jevremović, et al. v. Courville, 3:22-cv-04969-ZNQ-RLS
>     Response to Pre-Motion Letter

Dear Judge Quraishi:

Pursuant to Your Honor's Judicial Preferences, Plaintiffs Lima Jevremović ("Jevremović") and Autonomous User Rehabilitation Agent, LLC (together, "Plaintiffs"), hereby submit their response to Defendant Brittany J. Courville's ("Courville") request for the Court's leave to allow her to file a motion to dismiss or, alternatively, for a pre-motion conference.

*Background Summary*

Plaintiffs adopt Courville's version of the facts included in the background summary section of her letter, with a few exceptions. Courville's letter states that the Complaint contends that Amanda Rabb "had numerous additional substances, including non-prescribed barbiturates and cannabinoids[,] in her system." Such a factual contention is not made in the Complaint. Additionally, Courville states that the Complaint asserts that Courville "has taken an interest in guardianship cases and regularly posts about her 'theories' on Instagram and YouTube." However, the Complaint makes no such assertion. Because a Court may only consider the allegations in the Plaintiffs' Complaint in deciding a Motion to Dismiss under Federal Rule of Civil Procedure, Rule 12(b)(6) (*see* Tri3 Enterprises, LLC v. Aetna, Inc., 535 Fed.Appx. 192, 195 (3d Cir. 2013) (*citing* Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir. 1992))), this Court should disregard these contentions.

*Response to Asserted Grounds for Dismissal*

Courville argues that her statements are unactionable statements of opinion because she distributed them on social media sites; Courville argues that no one would expect her statements to be factual given their placement on the internet, her attire while making the statements, and the décor in her room where she films the videos she posts to the internet. Courville further argues that her statements could not be interpreted as factual because she couches her statements as "theories."

The decision in *Sciore v. Phung*, 2022 WL 950261 (D.N.J. Mar. 30, 2022), upon which Courville most heavily relies, does not justify dismissal. *Sciore* involved an online *restaurant review*, the sort of quintessentially subjective expression that is never actionable, no matter what the medium. It is the *content* of the communication, not the medium through which it is transmitted, that controls. There is no "internet defense" to defamation law, or other forms of civil and criminal liability. *United States v.*

*Gonzalez*, 905 F.3d 165, 192 (3d Cir. 2018) (holding internet posts were both defamatory and integral to crime). At the motion to dismiss juncture, the only question before the Court is whether a jury *could* conclude that Courville's statements were factual, or even if couched as "opinion," conveyed the implication of false defamatory facts. *Lynch v. New Jersey Educ. Ass'n*, 161 N.J. 152, 167 (1999). "[W]here the statement is capable of more than one meaning, one of which is defamatory and another not, the question of whether its content is defamatory must be resolved by the fact finder." *Dello Russo v. Nagel*, 358 N.J. Super. 254, 263 (App. Div. 2003). Here, a jury could easily conclude that Courville's smear campaign was intended to be understood as factual and was so understood.

These arguments further wholly ignore the numerous times that Courville emphasizes the accuracy of her statements and the numerous times that Courville implores her audience to accept her statements on the basis of her credentials. *See, e.g.*, Compl., ¶ 47 (quoting Courville: ". . . I am a licensed attorney who believes [Margera]'s constitutional rights have been violated. Based on my education, knowledge, and experience, he has been set up by a group of criminal co-conspirators[.]"); Compl., ¶ 68 (quoting Courville addressing a critic who questioned her assertions: "are you a lawyer? Because I am."); Compl., ¶ 84 (quoting Courville: "I never say anything as if it is a fact when I don't know it to be a fact."). Given Courville's repeated insistence that people take her statements literally and her professed expertise in the content of her speech, Courville cannot plausibly claim that her audience would not understand her statements to be factual.

Similarly, Courville attempts to avoid the factual nature of her statements by pointing to her use of the term "theory." Again, Courville's own language undercuts her argument: Courville disclaims that her allegations are inaccurate on account of being conspiracy theories. *See* Compl., ¶ 39 (quoting Courville: "I just [refer to my statements as conspiracy theories] so they can't use that stupid sh[i]t against me."); *see also*, Compl., ¶ 17, fn1; Compl., ¶ 47. Courville's assertion that the inclusion of the word "theory" results in her statements being non-actionable opinion is further at odds with established law: "Simply couching such statements in terms of opinion does not dispel [defamatory] implications." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990).

Courville next argues that impugning Jevremović's honesty is not defamatory because Jevremović "admits in her Complaint that her public statements regarding Ms. Rabb's cause of death were inaccurate." This is false. Courville misrepresents Plaintiffs' contentions in the Complaint. Jevremović never states that her statements regarding Ms. Rabb's cause of death were inaccurate, and Plaintiffs never allege in their Complaint Ms. Rabb's cause of death at all. In fact, as a proffer, the evidence would show that the Clark County Coroner's Office is currently re-examining the cause of death determination for Ms. Rabb, and without the coroner's updated report, no one can say whether Jevremović's statements regarding Ms. Rabb's cause of death were in fact inaccurate.

Next, Courville argues that her statements cannot be defamatory because she disclosed all facts upon which her opinions are based. However, Courville here asserts her own legal expertise and implores her audience to rely on her legal "education, knowledge, and experience." By holding herself out to her audience as capable of perceiving and understanding implications that her audience cannot, Courville is necessarily not disclosing the information she uses to arrive at her defamatory conclusions. Her audience, even if not understanding *how* Courville arrived at her defamatory conclusions, believes them to be true because of Courville's status as a lawyer and her self-proclaimed expertise in relevant law. Courville also fails to state all facts upon which her defamatory statements are made insofar as

Courville generally refers to Jevremović as a liar, fraudster, and a criminal, and not merely in the context of particular circumstances. *See, e.g.*, Compl., ¶¶ 49-51, 52, 56, 80.

Further, Courville argues that statements regarding a criminal conspiracy do not reference Jevremović specifically, and therefore do not defame her. However, Courville refers to Jevremović in the context of a member of her imagined criminal conspiracy. *See, e.g.*, Compl., ¶ 74. Courville further identifies a small group of people whom she asserts are members of the conspiracy, specifically identifying Jevremović as "THE WOMAN BEHIND BAM'S CONSERVATORSHIP." *See* video linked at Compl., ¶ 103. Finally, perhaps the best evidence that Courville's audience understood her conspiracy references to be of and concerning Jevremović is the fact that *Courville's audience did in fact understand these statements to be referencing Jevremović*. Courville's audience consistently left comments from which it is clear that they believed Courville to be referencing Jevremović. *See, e.g.*, Compl., ¶ 38.

Finally, Courville argues that Plaintiffs have failed to allege actual malice, asserting that Plaintiffs have set forth an insufficient factual basis to plead actual malice. Courville latches onto the profit motive identified in the Complaint, and Courville states that a profit motive alone does not suffice to establish actual malice. Courville claims that Plaintiffs have pleaded no other facts to establish actual malice. Courville appears to be reading the Complaint selectively.

In fact, Plaintiffs establish that Courville acted with, at minimum, a reckless disregard for the truth, and likely actually entertained serious doubts as to the veracity of her statements. Courville was motivated to, and did, concoct an imaginary scandal in order to generate attention from those who had followed her publications about Britney Spears. Compl., ¶ 9. In formulating her story, Courville used the same narrative surrounding popular opinion regarding the Britney Spears conservatorship, despite the lack of facts supporting her narrative as to Mr. Margera. Compl., ¶ 23. Further, Plaintiffs assert that Courville knew that no evidence supported her claims, but she made them regardless. Compl., ¶ 22. Courville made claims that were so highly improbable as to be beyond belief, but that her audience would believe on the basis of Courville's self-professed legal expertise. Compl., ¶ 24. Courville refused to retract her statements, instead providing a mere pretextual retraction in which she contended that her statements were not actually false. Compl., ¶ 28. Plaintiffs believe discovery will reveal that Courville in fact took steps to avoid learning the truth regarding Jevremović. Compl., ¶ 25.

For these reasons, Plaintiffs contend that the proposed Motion to Dismiss will be futile and should be denied if it proceeds.

        Respectfully submitted,

        THE LAW OFFICE OF SHERRI A. AFFRUNTI, LLC
        *s/Sherri A. Affrunti*
        Sherri A. Affrunti, Esq.

        JOHNSON & JOHNSON LLP
        *s/Neville L. Johnson*
        Neville L. Johnson, Esq.

cc:  All Counsel of Record