**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

LIMA JEVREMOVIĆ, an individual; and
AUTONOMOUS USER REHABILITATION
AGENT, LLC, a Delaware Limited Liability
Company,

     Plaintiffs,

     vs.

BRITTANY JEREAM COURVILLE, an
individual,

     Defendant.

CIVIL ACTION NO.: 3:22-cv-04969-ZNQ-RLS

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ...................................................................................... 4

ARGUMENT ........................................................................................................ 6

I.    Plaintiffs Have Not Adequately Pled Defamation Claims............................ 6

   A.   The Alleged Defamatory Statements are not Actionable to the Extent They are not Defamatory Statements of Fact .......................................................... 8

     1.   The Context of Courville's Statements Demonstrates That They Are Protected Opinion ........................................................................................ 8

     2.   The Specific Statements Set Forth In The Complaint Are Not Defamatory ................ 12

   B.   To The Extent The Alleged Defamatory Statements Were Not "Of And Concerning" Plaintiffs, They Cannot Support a Claim For Defamation......................... 20

   C.   To The Extent The Alleged Defamatory Statements Were Not Made By Courville, They Are Not Actionable ............................................................. 25

II.   Plaintiffs Have Not Pled Actual Malice............................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.Z. v. Doe*,
  2010 WL 816647 (N.J. Super. Ct. App. Div. Mar. 8, 2010)....................................................7

*Air Wis. Airlines Corp. v. Hoeper*,
  571 U.S. 237 (2014).................................................................................................................7

*Allia v. Target Corp.*,
  2008 WL 1732964 (D.N.J. Apr. 10, 2008) ........................................................................20, 24

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................................................6, 30

*Barasch v. Soho Weekly News, Inc.*,
  208 N.J. Super. 163 (App. Div. 1986) ...................................................................................26

*Baskerville v. Soc'y Hill at Droyers Point Condo. Ass'n*,
  2009 WL 3849693 (N.J. Super. Ct. App. Div. Nov. 16, 2009) ..............................................17

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997)...................................................................................................5

*Cassidy v. Merin*,
  244 N.J. Super. 466 (App. Div. 1990) ...................................................................................26

*Cibenko v. Worth Publishers, Inc.*,
  510 F. Supp. 761 (D.N.J. 1981) .............................................................................................11

*Creditors Relief LLC v. United Debt Settlement LLC*,
  2019 WL 7288978 (D.N.J. Dec. 30, 2019) ............................................................................19

*Darakjian v. Hanna*,
  366 N.J. Super. 238 (App. Div. 2004) ........................................................................26, 27, 28

*Dashore v. Anderson*,
  2019 WL 4727926 (D.N.J. Sept. 27, 2019) ..............................................................7, 12, 14

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*,
  472 U.S. 749 (1985).................................................................................................................27

*Edelman v. Croonquist*,
  2010 WL 1816180 (D.N.J. May 4, 2010) ....................................................................12, 14, 18

*Foxtons, Inc. v. Cirri Germain Realty,*
2008 WL 465653 (N.J. Super. Ct. App. Div. Feb. 22, 2008) .....................................20, 22, 24

*Gertz v. Robert Welch Inc.,*
418 U.S. 323 (1974)..........................................................................................................7

*Harte-Hanks Commc'ns, Inc. v. Connaughton,*
491 U.S. 657 (1989).........................................................................................................30

*Jorjani v. New Jersey Institute of Tech.,*
2019 WL 1125594 (D.N.J. Mar. 12, 2019).................................................................. *passim*

*K.J. v. Greater Egg Harbor Reg'l High Sch. Dist. Bd. of Educ.,*
2015 WL 5039460 (D.N.J. Aug. 26, 2015) .............................................................7, 12, 14

*Karnell v. Campbell,*
206 N.J. Super. 81 (App. Div. 1985) ...............................................................................2

*Klagsbrun v. Va'ad Harabonim of Greater Monsey,*
53 F. Supp. 2d 732 (D.N.J. 1999), *aff'd,* 263 F.3d 158 (3d Cir. 2001) ..................................6, 7

*Konowicz v. Carr,*
2016 WL 3610154 (D.N.J. June 30, 2016) .......................................................................24

*Kraft v. Wells Fargo & Co.,*
2019 WL 3453271 (D.N.J. Jul. 31, 2019)....................................................................22, 24

*Lee v. TMZ Prods. Inc,*
710 F. App'x 551 (3d Cir. 2017) ............................................................................26, 27, 29

*Mauro v. Intell. Freedom Found., Inc.,*
2015 WL 10372230 (N.J. Super. Ct. App. Div. Feb. 26, 2016) ............................................26

*McCafferty v. Newsweek Media Grp., Ltd.,*
955 F.3d 352 (3d Cir. 2020)......................................................................................11, 30

*Minerva Marine, Inc. v. Spiliotes,*
2005 WL 8175071 (D.N.J. Apr. 4, 2005) .........................................................................25

*New York Times Co. v. Sullivan,*
376 U.S. 254 (1964).........................................................................................................28

*Pace v. Baker-White,*
850 F. App'x 827 (3d Cir. 2021) .......................................................................................28

*Pelkowski v. Hovermann,*
2021 WL 9032222 (E.D.N.Y. Sept. 9, 2021) .....................................................................9

*Perez v. Factory Direct of Secaucus, LLC*,
 2013 WL 5770734 (D.N.J. Oct. 23, 2013).............................................................6, 10, 11, 25

*Rapaport v. Barstool Sports, Inc.*,
 2021 WL 1178240 (S.D.N.Y. Mar. 29, 2021) ...........................................................................9

*Reed v. Scheffler*,
 218 F. Supp. 3d 275 (D.N.J. 2016), *aff'd*, 771 F. App'x 162 (3d Cir. 2019) ......................7, 19

*Remick v. Manfredy*,
 238 F.3d 248 (3d Cir. 2001).................................................................................................19

*Romaine v. Kallinger*,
 109 N.J. 282 (1988) .............................................................................................................14

*Salzano v. N. Jersey Media Grp. Inc.*,
 201 N.J. 500 (2010) ............................................................................................................6, 7

*Schwartz v. Worrall Pubs., Inc.*,
 258 N.J. Super. 493 (App. Div. 1992) ..................................................................................30

*Sciore v. Phung*,
 2022 WL 950261 (D.N.J. Mar. 30, 2022)............................................................................8, 12

*Singer v. Beach Trading Co.*,
 379 N.J. Super. 63 (App. Div. 2005) ....................................................................................6, 7

*Somerset Development, LLC v. Cleaner Lakewood*,
 2012 WL 4370271 (App. Div. 2012)....................................................................................17

*Valley Elecs. AG v. Polis*,
 2022 WL 893674 (2d Cir. Mar. 28, 2022) ..............................................................................8

*Yourman v. People's Sec. Life Ins. Co.*,
 992 F. Supp. 696 (D.N.J. 1998) .....................................................................................14, 18

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ...................................................................................1, 6

Defendant Brittany Jeream Courville ("Defendant" or "Courville") hereby respectfully moves to dismiss the Complaint filed by Plaintiff Lima Jevremović ("Jevremović") and Plaintiff Autonomous User Rehabilitation Agent, LLC ("AURA" and, collectively, "Plaintiffs") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## <u>PRELIMINARY STATEMENT</u>

AURA offers mental health treatment services for substance abuse disorders and Jevremović serves as its founder and CEO. Plaintiffs have coopted extensive media opportunities to market AURA, thereby inviting the scrutiny of the millions of viewers of these platforms—but when confronted with criticism or an unflattering opinion, Plaintiffs seek to stifle that opinion with a lawsuit. This is such a case, and it concerns a handful of posts by Courville on her social media platforms, including Instagram and YouTube, raising concerns and expressing her opinions about AURA's and Jevremović's practices, primarily as they relate to treatment of two high profile AURA clients: movie star and celebrity Bam Margera, and Amanda Rabb, a homeless, drug-addicted woman who died after receiving AURA's treatment. Courville's statements, made on informal channels replete with hyperbolic language, are not actionable as defamation simply because Plaintiffs do not like Courville's opinions or because they are unflattering; rather, they are valid expression about matters of public concern which are constitutionally protected by the United States constitution. Indeed, one New Jersey court—quoting the New Jersey Supreme Court—went so far as to express its "profound[] concern[] with the chilling effect that plaintiffs' lawsuit in these rather unremarkable circumstances may have on other citizens who would ordinarily speak out on behalf of what they perceive to be the public good," noting that courts "are extremely 'loathe to discourage that robust and uninhibited commentary on public issues that is part of our national heritage.'" *Karnell v. Campbell*, 206 N.J. Super. 81, 95 (App. Div. 1985) (citing *Kotlikoff v. The Community News*, 89 N.J. 62, 67 (1982).

The statements that Plaintiffs cherry-pick, out of context, to include in their Complaint are not defamatory for many reasons. As an initial matter, Plaintiffs fail to plausibly allege many of the allegedly defamatory statements are even false. In particular, Plaintiffs' complaints about statements relating to Ms. Rabb's treatment appear to challenge Courville's statements calling Jevremović a "liar" in connection with Jevremović's public statements about the cause of and circumstances surrounding Ms. Rabb's death. Yet Jevremović concedes in her Complaint that her public statements regarding Ms. Rabb's cause of death are not reconcilable with the conclusions of her autopsy report. These admissions undermine any argument that Courville's statements are false, a prerequisite to pleading a defamation claim.

The allegedly defamatory statements are also not actionable to the extent that they are protected opinion. A review of the context—profanity-laden Instagram posts replete with hyperbolic rhetoric, Courville wearing fuzzy panda ears with a unicorn piñata in the backdrop—as well as Courville's repeated clarifications that her statements are merely her opinions, beliefs, or impressions, signify to the audience that her statements are opinion. Moreover, Courville set forth the bases for her opinions, disclosing the underlying facts that support the allegedly defamatory statements. For example, in referring to Jevremović as a "liar," Courville repeatedly explained that Ms. Rabb's formal autopsy report—which Courville repeatedly posted and highlighted—refuted Jevremović's public statements that Ms. Rabb died from a seizure disorder and that she only had Tylenol in her system at the time of her death. Courville also supports her opinions expressing concern over Jevremobic's relationship with Mr. Margera by detailing the financial entanglement between him and Jevremović, pointing out Jevremović's court-ordered legal guardianship over Margera, which entitled Jevremović to collect fees for her role, and highlighting that Margera has been court-ordered to receive involuntary treatment for his substance

2

abuse problems.  Jevremović not only does not dispute the truth of these underlying facts, she concedes them in her Complaint.  These undisputed underlying facts allow the audience to make its own determinations about Courville's opinions.  Courville's opinions that accompany these undisputed, disclosed facts are therefore fully protected by the First Amendment.

For the same reasons, Plaintiffs' challenges to statements suggesting "criminality" or "fraud" or "scams" fall flat.  Not only are these statements prototypical examples of hyperbole, through these statements, Courville raises legitimate questions about questionable business practices after a full and accurate disclosure of facts that the Complaint does not allege to be false.

Plaintiffs' defamation claims suffer from a variety of other fatal flaws.  For instance, Plaintiffs fail to plead that many of the alleged defamatory statements—which make no specific reference to Jevremović or AURA—are "of and about" Plaintiffs such that they would be entitled to recover for defamation.  Indeed, as Plaintiffs themselves concede, Courville's posts raise concerns about a long list of people in Mr. Margera's life, such that Courville's non-specific criticisms of unnamed individuals' treatment of Mr. Margera could easily be understood to apply to any of those individuals.  Plaintiffs also include in their defamation counts statements which were not even made by Courville—or statements that simply contain no disparaging content.

Lastly, and critically, Plaintiffs have utterly failed to plausibly plead actual malice, a necessary component of a defamation claim against a public figure concerning statements in the public interest.  Plaintiffs rely exclusively on conclusory allegations and vague insinuations of financial bias, but the case law makes clear such allegations (even if the Court were to credit Plaintiffs' farfetched suggestion of bias) are inadequate to demonstrate that Courville **actually** entertained serious doubts as to the veracity of her statements.  On the contrary, Courville's

repeated disclosure of the facts underlying her opinions makes clear that she truly and reasonably believed in her statements.

For these reasons, as more fully set forth herein, the Complaint should be dismissed.

## STATEMENT OF FACTS

Plaintiff, Lima Jevremović, is the founder and CEO of Plaintiff AURA (Compl. ¶ 2), which provides mental health treatment services for substance abuse disorders. *Id.* ¶ 10-11. AURA has engaged "celebrities, influencers, and persons in the public eye" to "develop a viral, word-of-mouth buzz surrounding" its services. *Id.* ¶ 11. One such celebrity was Mr. Margera, who "has starred in blockbuster Jackass movies and popular television programs." *Id.* ¶ 14. On or about June 7, 2021, an Arizona court imposed a one-year guardianship over Mr. Margera and ordered that Jevremović would serve as his guardian, statutorily entitling Jevremović to collect sums for her services. *Id.* ¶ 15. Under Ms. Jevremović's guardianship, Mr. Margera was court-ordered to begin treatment at a drug rehabilitation facility. *Id.* ¶ 16. Mr. Margera subsequently escaped this facility but was soon found and again "involuntarily" placed in the custody of another facility. *Id.*

In addition to providing its services to celebrities to create "viral buzz," AURA's business model also includes providing free-of-charge services to less fortunate individuals in line with its promotional campaign. *Id.* ¶ 11-12. In this vein, AURA provided its services to Amanda Rabb, a homeless, drug-addicted woman. *Id.* ¶ 12. Jevremović succeeded in obtaining court-ordered, involuntary treatment for Ms. Rabb, which AURA provided. *Id.* ¶ 12, 41. Ms. Rabb passed away on May 9, 2021. *Id.* ¶ 13. Ms. Rabb's "formal autopsy report states that she died from cardiac arrhythmia," and Courville posted that she was also found to have barbiturates and cannabinoids in her system. *Id.* ¶ 13, 34. Nonetheless, Jevremović publicized on Internet appearances, including YouTube videos, that Ms. Rabb died from a "seizure disorder," or her death was "caused by beatings and rap[e]s." *Id.* ¶ 34. Jevremović also publicly stated that the only drug found in Ms.

Rabb's system at the time of her death was Tylenol.  *Id.* ¶ 34.  Ms. Jevremović acknowledges the discrepancy between the facts of Ms. Rabb's death and her public statements.  *Id.* ¶ 13, 33.

While Ms. Rabb was still alive, Ms. Jevremović had started a GoFundMe fundraiser for Ms. Rabb's mental health treatment.  *Id.* ¶ 62.  Almost a year after her death, the fundraiser still remained active.  *Id.* ¶ 13, 62.

Courville is a self-proclaimed conspiracy "theorist" with an active social media presence.  *Id.* ¶ 7, 17.  Courville has taken an interest in conservatorship cases and regularly posts about her "theories" on Instagram and her YouTube channel.  *Id.* ¶ 8-9, 17-18; *see generally* Courville's Instagram account, https://www.instagram.com/thatsurprisewitness/;  Courville's YouTube channel, https://www.youtube.com/channel/UCDP9HU8g2JLimHmcLqsTGEg?app=desktop.[1]  This action arises from statements made by Courville on social media concerning specific topics:

- Statements suggesting that Jevremović lied by mischaracterizing the contents of Ms. Rabb's autopsy report (Compl. ¶ 30, 32, 34, 36, 52, 55-56, 80, 82);
- Statements suggesting that Jevremović procured "forced treatment" for AURA's clients and was financially motivated (Id. ¶ 38, 49-50, 74, 76, 97, 101, 103);
- Statements referring to Jevremović's treatment of Ms. Rabb, including employment of a fundraiser for Ms. Rabb's medical treatment (Id. ¶ 41, 58, 62, 76, 93, 95, 97, 101);
- Statements vaguely referring to a criminal conspiracy and other types of improper conduct surrounding Mr. Margera's guardianship (Id. ¶ 41, 43, 45, 47, 49-50, 53, 60, 64-65, 67-68, 70, 72, 76, 78, 85); and
- Statements expressing concern over AURA's business practices.  (Id. ¶ 93, 95, 97, 99, 101, 103).

---

[1] As the Complaint is based upon alleged defamatory statements on Courville's Instagram account and YouTube account, and since those accounts are matters of public record, their contents are properly considered in deciding a motion to dismiss for purposes of understanding the context of any individual post.  *See, e.g., In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (holding that where the plaintiff "relied upon" certain sources in formulating the complaint, those sources are properly considered on a motion to dismiss, as this allows for the challenged statements to be examined in their "full context").

## ARGUMENT

A defamation complaint is "subject to the heightened pleading standard set forth in *Ashcroft v. Iqbal*," which requires Plaintiffs to plead not merely possibility, but plausibility. *Perez v. Factory Direct of Secaucus, LLC*, 2013 WL 5770734, at *4 (D.N.J. Oct. 23, 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)). Under this stringent pleading regime, in order to survive dismissal, a complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and a complaint will not "suffice" if it provides only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*¸ 550 U.S. 544, 555, 557 (2007)). A claim must be pled with facial plausibility; where a complaint provides facts "merely consistent with" the defendant's liability, it "stops short of the line between possibility and plausibility" and will not survive review under Rule 12(b)(6). *Iqbal*¸ 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

## I.      Plaintiffs Have Not Adequately Pled Defamation Claims

"To state a claim for defamation, a plaintiff must prove the following elements: (1) a defamatory statement of fact; (2) the defamatory statement concerned the plaintiff; (3) the statement was false; (4) the statement was communicated to persons other than the plaintiff; and (5) fault." *Klagsbrun v. Va'ad Harabonim of Greater Monsey*, 53 F. Supp. 2d 732, 739 (D.N.J. 1999), *aff'd*, 263 F.3d 158 (3d Cir. 2001)).

The first element of a defamation claim is a defamatory statement of *fact*. *Singer v. Beach Trading Co.*, 379 N.J. Super. 63, 80 (App. Div. 2005). A defamatory statement is one that "harms the reputation of another such that it lowers the defamed person in the estimation of the community or deters third parties from dealing with that person." *Salzano v. N. Jersey Media Grp. Inc.*, 201 N.J. 500, 512 (2010); *see also Klagsbrun*, 53 F. Supp. 2d at 739. A statement can only be

defamatory if it is verifiable; in other words, if it can be "proven true or false." *A.Z. v. Doe*, 2010 WL 816647, at *4 (N.J. Super. Ct. App. Div. Mar. 8, 2010) (quotations and citations omitted).

It is a defamation plaintiff's burden to establish the falsity of a statement in its case in chief because falsity is not presumed. *See Salzano*, 201 N.J. at 513; *Singer*, 876 A.2d at 894. Where a plaintiff merely pleads "in conclusory terms, that [the allegedly defamatory statements] are defamatory and false," this is insufficient. *Dashore v. Anderson*, 2019 WL 4727926, at *4 (D.N.J. Sept. 27, 2019) (dismissing claim for defamation for failure to allege falsity); *see also K.J. v. Greater Egg Harbor Reg'l High Sch. Dist. Bd. of Educ.*, 2015 WL 5039460, at *14 (D.N.J. Aug. 26, 2015) (dismissing defamation claim where, *inter alia*, plaintiffs "fail to provide a factual basis for the allegation that the statement was false" and allege only that statements "were false and defamatory in nature"). Minor inaccuracies do not render a statement false; even where a statement contains inaccuracies, it does not amount to falsity so long as the gist or sting of the factual disclosures is justified. *Air Wis. Airlines Corp. v. Hoeper*, 571 U.S. 237, 247 (2014) (citing *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991)).

Statements of opinion, as a matter of constitutional law, are not actionable as defamation. *Jorjani v. New Jersey Institute of Tech.*, 2019 WL 1125594, at *4 (D.N.J. Mar. 12, 2019); *Reed v. Scheffler*, 218 F. Supp. 3d 275, 282 (D.N.J. 2016), *aff'd*, 771 F. App'x 162 (3d Cir. 2019) (holding that opinions are not defamatory "because such statements only reflect a state of mind, and therefore generally cannot be proved true or false.") (quotations and citations omitted). As the United States Supreme Court held, it does not matter how "pernicious" an opinion is; they cannot be false and are therefore constitutionally protected. *Gertz v. Robert Welch Inc.*, 418 U.S. 323, 339-340 (1974). Whether a statement is fact or opinion, and more broadly whether it is susceptible to defamatory meaning, is a question of law for the Court. *Jorjani*, 2019 WL 1125594, at *4.

**A.    The Alleged Defamatory Statements are not Actionable to the Extent They are not Defamatory Statements of Fact**

**1.    The Context of Courville's Statements Demonstrates That They Are Protected Opinion**

In distinguishing between fact and protected opinion for purposes of a defamation claim, courts must consider the context of the statements.  *See, e.g. Sciore v. Phung*, 2022 WL 950261, at *11-12 (D.N.J. Mar. 30, 2022) ("whether a statement is defamatory depends on its…context," as "the context of a statement can affect significantly its fair and natural meaning.") (quotations and citations omitted).  And here, the context is critical:  Courville's statements were delivered by a social media influencer on Instagram, and occasionally, YouTube.  These are forums infamous for being littered with hyperbole; they are not arenas where one goes for a coolheaded recitation of the facts.  *See, e.g. id.* at *11-12 ("Statements made on internet forums are made in a unique context in that they are generally informal and unedited.  This context leads readers to give less credence to allegedly defamatory remarks published on the Internet than to similar remarks made in other contexts"; noting that since the defendant's allegedly defamatory statements were made on "an Internet forum specifically designed for the publication of crowd-sourced opinionated" statements, this "conveys a strong signal to a reasonable reader that the statements are defendant's opinion…the allegedly defamatory statements here do not overcome that context and are not actionable.") (quotations and citations omitted); *Valley Elecs. AG v. Polis*, 2022 WL 893674, at *2 (2d Cir. Mar. 28, 2022) (finding as relevant context for affirming dismissal of defamation claim as protected opinion fact that statements were made in Instagram comments because they "used media that are typically regarded by the public as … vehicles for the expression of individual opinion rather than the rigorous and comprehensive presentation of factual matter") (quotations and citation omitted); *Pelkowski v. Hovermann*, 2021 WL 9032222, at *5 (E.D.N.Y. Sept. 9, 2021) ("The defamatory statements [plaintiff] claims defendants made first appeared on the widely

popular social media website Instagram, a context which weighs in favor of a finding that the statements were opinion.  Numerous New York courts have noted that communication appearing on social media and other internet websites are distinct from that which appears in print media such as newspapers and magazines" and noting that the suggestion of opinion "is further bolstered by the fact that it appears in a social media post featuring a string of hashtags, colorful emojis, and snarky writing") (collecting cases); *Rapaport v. Barstool Sports, Inc.*, 2021 WL 1178240, at *12 (S.D.N.Y. Mar. 29, 2021) ( "apparent statements of fact may assume the character of statements of opinion … where comments are made on free-wheeling internet fora, such as blogs or social media sites, which courts have generally found to be a persuasive factor in holding that a statement would be understood by readers as reflecting the author's opinion" and citing cases).

Indeed, in one of the profanity-laced YouTube videos at issue, Courville is wearing either panda ears or bunny ears while making her statements, while a sparkly unicorn piñata rests prominently in the background.  *See* Compl. ¶ 84 (linking YouTube video.)  The profile picture for Courville's Instagram page is a photo of Courville in a pink fuzzy ear headband, wearing a tie dye crop top, in an exaggerated pose of surprise. https://www.instagram.com/thatsurprisewitness/. And in one of the challenged YouTube videos, Courville spends a few moments thinking aloud about what day of the week it is.  *See* Compl. ¶ 80 (linking video.)  Any suggestion that this is the type of forum where one would reasonably expect to receive facts is entirely implausible.

Plaintiffs self-servingly suggest that Courville held herself out to be a legal expert, but the challenged posts are devoid of legal jargon, breezily nonchalant, and include strings of emojis as well as the phrase "#bitcheslovehashtags."  Compl. ¶ 70-71; *see also id.* ¶ 39.  It is simply implausible that a reasonable audience would seek objective facts from Instagram posts captioned "#bitcheslovehashtags."  Indeed, Courville herself expressly disclaims that her opinions are "not

9

legal advice" on her Instagram page. *See* Courville's [Instagram account bio, https://www.instagram.com/thatsurprisewitness/.](https://www.instagram.com/thatsurprisewitness/.) *See, e.g., Perez*, 2013 WL 5770734, at \*5 ("[Plaintiffs] unpersuasively argue that 'the fact that the…statements appeared on a law firm website, authored by a lawyer, actually heightens the defamatory harm of those statements because the readers are more inclined to perceive the contents of the statements as true.' This Court finds that the opposite is true – the context of [the allegedly defamatory statements] makes it clear to a reasonable reader that the statements within the Post describe disputed facts.").

Moreover, the specific language used in the surrounds of the allegedly defamatory statements signals that Courville is merely expressing her opinions and theories. This language of conjecture is pervasive: Courville repeatedly refers to her opinions—including the relationship between Jevremović and Margera—as mere "theories." *See, e.g.* Compl. ¶ 38-39, 43, 45, 74. Indeed, Courville continually characterizes herself as a "conspiracy *theorist*," (Compl. ¶ 17, 38-39, 43, 45 (emphasis added)) and attaches disclaimers to her self-proclaimed theories making clear they are her beliefs. *See, e.g. id.* ¶ 38 ("what do I know I'm just a conspiracy *theorist*") (emphasis added); *id.* ¶ 45 ("I AM a conspiracy *theorist*. I have a *theory* that this is a criminal conspiracy.") (emphasis added); *id.* ¶ 47 ("I…*believe*[] [Mr. Margera]'s constitutional rights have been violated.") (emphasis added); *id.* ¶ 50-51 (according to Plaintiffs' allegations, adopting statement that "I personally *believe* conservatorships are never the answer and forced treatment is harmful") (emphasis added);[2] *id.* ¶ 74 (referring to Mr. Margera's court-ordered involuntary rehabilitation as "a forced rehab" and stating that such characterization is "just my conspiracy *theory*.") (emphasis added); *id.* ¶ 76 (responding to Instagram commentator's theories regarding, *inter alia*, forced

---

[2] Aside from the fact that these statements are mere opinion, and were not made by Courville, the statement alleged in Compl. ¶ 50-51 does not appear to exist. Neither the commentator's statement nor Courville's reply are anywhere in the link provided by Plaintiffs.

treatment, and stating, "I mean…that's my ***impression***.") (emphasis added); *id.* ¶ 78 (referring to theory regarding forced treatment, and stating, "some of it ***looks*** criminal…but what do I know. It ***looks*** criminal ***to me***.") (emphasis added).   Plaintiffs' allegations similarly acknowledge Courville making clear that when she refers to her theories, she is only referring to "my opinion or my belief or my suspicion" (*id.* ¶ 84), "my impression" (*id.* ¶ 76), "my [] theory" (*id.* ¶ 45, 74), what "I [] believe[]" (*id.* ¶ 47, 49) or what was "alleged."  *Id.* ¶ 70.

Taken together, there can hardly be clearer language signaling opinion.  *See, e.g., Perez*, 2013 WL 5770734, at *5 (defendant's qualification that its statement explicitly refers to "'*alleged* conduct' of Third-Party Plaintiffs" sufficiently signals opinion rather than fact) (emphasis in original); *McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 356 (3d Cir. 2020) (inclusion of qualifiers signal non-actionable opinion: "[i]f it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable.")

Finally, Courville's employment of rhetorical questions signifies that she is merely expressing her beliefs and raising unasked questions.  *See* Compl. ¶ 55 (posing an alternative theory as a rhetorical question: "or is it maybe…?"); *id.* ¶ 76-77 (according to Plaintiffs, adopting Instagram commentator's question); *id.* ¶ 93-94 (same); *id.* ¶ 38 (posing rhetorical question of "who would have an incentive to want to control [Margera's] money and who would be in a position to do so?").  Such statements pose rhetorical questions rather than statements of fact and are not actionable as defamation.  *See, e.g., Cibenko v. Worth Publishers, Inc.*, 510 F. Supp. 761, 765-66 (D.N.J. 1981) (dismissing defamation claim on motion to dismiss, holding that "a rhetorical question [is] tantamount to opinion"); *Sciore*, 2022 WL 950261, at *11 (dismissing defamation

claims; statements were nothing "more than an opinion posing a hypothetical conclusion utilizing hyperbolic language…There is no way of verifying the statement as it is a hypothetical").

Taken together, and viewed holistically, this context for the allegedly defamatory statements would signal to a reasonable audience that the statements are intended to relay opinion rather than fact.

### 2.     The Specific Statements Set Forth In The Complaint Are Not Defamatory

Plaintiffs' defamation claims should also be dismissed because the specific statements Plaintiffs allege to be defamatory are not actionable.  Specifically, New Jersey courts have long held that "[s]tatements of 'pure' opinion—i.e., when the speaker states the facts on which an opinion is based—cannot trigger liability."  *Jorjani,* 2019 WL 1125594, at *4; *Edelman v. Croonquist*, 2010 WL 1816180, at *6-7 (D.N.J. May 4, 2010) (calling plaintiff derogatory names was protected opinion because defendant set forth basis for the opinion) (citing *Yourman v. People's Sec. Life Ins. Co*., 992 F. Supp. 696, 706 (D.N.J. 1998) (dismissing as non-defamatory statement accusing plaintiff of fraud where truth of the disclosed facts underlying conclusion not disputed; "statements of opinion premised on disclosed facts [are], as a matter of law, not defamatory.")).  Moreover, a defamation claim is not actionable where a plaintiff does not plausibly allege the falsity of a statement.  *See Dashore*, 2019 WL 4727926, at *4-5 (dismissing defamation claim where plaintiff only alleged "in conclusory terms, that [statements] are defamatory and false.  But, Plaintiff goes no further in elaborating upon their falsehood.  Indeed, Plaintiff does not plead any facts in her Complaint as to the verifiable truth regarding these statements."); *see also Greater Egg Harbor Reg'l High Sch. Dist. Bd. of Educ.,* 2015 WL 5039460, at *14 (dismissing defamation claim where plaintiffs "fail to provide a factual basis for the

allegation that the statement was false"). These defects, among others, permeate the allegedly defamatory statements and warrant dismissal of the Complaint.

- **Statements Calling Jevremović a Liar. (Compl. ¶¶ 30, 32, 34, 36, 52, 55-56, 80, 82)**

The thrust of Plaintiffs' allegations of defamation regarding Ms. Rabb center on posts calling Jevremović a liar because she mischaracterized the cause and circumstances surrounding Ms. Rabb's death. *See, e.g.* Compl. ¶¶ 30, 32, 34, 36, 52, 55-56, 80, 82. Specifically, the alleged defamatory statements fault Jevremović for publicly asserting that Ms. Rabb died of a "seizure disorder" and Jevremović's statements that her death was "caused by beatings and rap[e]s," and for publicly stating that her toxicology report revealed that she had "only Tylenol" in her system. *Id*. ¶ 34. But these statements are not defamatory for several reasons.

First, and most importantly, Jevremović does not dispute that her public statements that Ms. Rabb died of a seizure disorder, or that she only had Tylenol in her system, were not true. Plaintiffs do not dispute Courville's accurate disclosure of the facts, and even affirmatively concede their veracity. *See id.* ¶ 13 ("Rabb's formal autopsy report states that she died from cardiac arrhythmia."); ¶ 82 (describing a post in which "Courville addresses the discrepancy between Ms. Jevremović's description of Rabb's cause of death and the official autopsy report"). Rather, Plaintiffs appear to only take issue with Courville *calling Jevremović a liar* for misrepresenting these circumstances surrounding Ms. Rabb's death. *Id*. ¶ 30-31, 32-33, 34-35, 36-37, 52-53. Specifically, Plaintiffs allege that Courville's recitation of the differences between Ms. Rabb's autopsy report and Jevremović's public statements was defamatory not because Ms. Rabb did only have Tylenol in her system, or because Ms. Rabb did die of a seizure disorder, but rather only to the extent Courville called Ms. Jevremović a liar, as such characterization "impugns

Ms. Jevremović's honesty." *Id.*  In other words, Plaintiffs acknowledge that Jevremović's public statements are not consistent with the autopsy report findings, yet Plaintiffs argue that it was somehow defamatory for Courville to characterize Jevremović a "liar."

Plaintiffs' argument misses the point; the plain meaning of the word "liar" is someone who has been untruthful, and Plaintiff's own pleading makes clear that Jevremović was not truthful to the extent Jevremović's disclosure of Ms. Rabb's circumstances and cause of death contradicts the contents of the autopsy report. *Romaine v. Kallinger*, 109 N.J. 282, 288-89 (1988) (in determining whether statement has a defamatory meaning, "the court must evaluate the language in question according to the fair and natural meaning which will be given it by reasonable persons of ordinary intelligence.") (quotations and citation omitted).  Plaintiffs therefore utterly fail to plead the ***falsity*** of this category of statements to support a defamation claim. *Dashore*, 2019 WL 4727926, at *4; *Greater Egg Harbor*, 2015 WL 5039460, at *14.[3]

In addition to Plaintiffs failing to plausibly allege that the "liar" statements are false, these statements are not actionable because they are Constitutionally-protected opinion.  Specifically, the allegedly defamatory statements only characterize Jevremović as a liar after painstakingly disclosing the facts upon which this opinion is based.  Courville supported these statements by posting photos from Ms. Rabb's formal autopsy report, which clearly disclose that Ms. Rabb died of "cardiac arrhythmia," and was found with various drugs other than Tylenol in her system. *Id.* ¶ 32, 34.  This disclosure of the facts upon which the opinion was based renders the resulting statements—*i.e.*, Courville's statement that Jevremović was a liar—protected opinion. *Jorjani,* 2019 WL 1125594, at *4; *Edelman*, 2010 WL 1816180, at *6-7; *Yourman*, 992 F. Supp. at 706.

---

[3] Plaintiffs cannot plausibly allege—nor have they plausibly alleged—that Courville has not disclosed all the facts on which she bases these opinions.  Each of the challenged statements discloses the these facts or builds on prior Instagram posts that disclose these facts.

Given the inescapable conclusion that Jevremović did make statements about Ms. Rabb's death that are irreconcilable with the autopsy report, Plaintiffs ground their argument for defamation in Jevremović's self-serving, unsupported statement that Jevremović "accurately conveyed the information that the Clark County Coroner had conveyed to [Plaintiffs]" (Compl. ¶ 33), even though such information is clearly contradicted by the autopsy report prepared by the same Clark County Coroner. *Id.* ¶ 32; 13. Charitably read, Plaintiffs appear to argue that while Jevremović admittedly made untrue statements about Ms. Rabb's cause and circumstances of death, Jevremović did not ***knowingly*** make these untrue statements. Even taking this self-serving allegation, utterly devoid of any supporting factual allegations, as true, it is simply irrelevant; Courville's statement that Jevremović was a "liar" does not turn on whether Jevremović made the untrue statements knowingly—it turns only on the reality, conceded by Plaintiffs, that the statements were untrue. Moreover, Courville's statements were an inferentially reasonable conclusion based on the publicly available—and wholly disclosed—facts. Indeed, Plaintiff nowhere pleads any facts suggesting that Courville knew, or could have known, that the Clark County Coroner provided Jevremović false information (if true).

- **Statements Regarding Forced Treatment And Financial Motive. (Compl. ¶¶ 38, 49-50, 74, 76, 97, 101, 103)**

Plaintiffs allege it was defamatory for Courville to state that Mr. Margera and Ms. Rabb had undergone "forced treatment." However, these statements were protected opinion, accompanied by Courville's accurate disclosure that both Mr. Margera and Ms. Rabb were court-ordered to receive involuntary rehabilitation treatment in lieu of jail time. *See, e.g.* Compl. ¶¶ 41, 101, 103. Plaintiffs do not dispute the veracity of these underlying facts: as to Ms. Rabb, that "Ms. Jevremović and Larry Rabb, Amanda Rabb's father," worked together "to transfer Amanda from

jail to a drug rehabilitation facility through the use of **Court Ordered** Treatment under California law" (Compl. ¶ 41 (describing interview with Jevremović and Ms. Rabb's father) (emphasis added)); and that as to Mr. Margera, that Jevremović had a "court-ordered guardianship" over Mr. Margera, (*id.* ¶ 16-18) and that Mr. Margera was court-ordered to complete a drug treatment program.  Indeed, Plaintiffs themselves admit that Mr. Margera was "***involuntarily*** placed in the custody of [a] drug rehabilitation facility." *Id.* ¶ 16 (emphasis added).  Because Plaintiffs do not allege that these underlying facts are false, Courville's opinion reached from these facts is protected opinion.

In an apparent acknowledgement that the term "forced rehab" is based on solid factual grounds, Plaintiffs argue that Courville's statements are only defamatory because they improperly suggest that Ms. Jevremović is concerned with "depleting Margera's money rather than assisting with treatment for a substance abuse disorder," thus "falsely imput[ing] a profit motive to Ms. Jevremović." *Id.* ¶ 74-75; *see also id.* ¶¶ 38-39, 47-48, 49-51, 76-77.  Yet once again, Plaintiffs do not even attempt to dispute the facts underlying this opinion.  To the contrary: they affirmatively concede the existence of financial ties between Mr. Margera and Ms. Jevremović, acknowledging that even before Ms. Jevremović's guardianship over Mr. Margera, Mr. Margera had "provide[d] [his] support to Plaintiffs' worthy cause." *Id.* ¶ 14; *see also id.* ¶ 15 (alleging that because of her guardianship over Mr. Margera, Ms. Jevremović is "statutorily permitted to collect reasonable sums for her services.").  Despite Plaintiffs' protestations, an opinion regarding one's "profit motive" (*id.* ¶ 75) is constitutionally protected, especially where such opinion is based on disclosed facts that Plaintiffs do not dispute.

- **Statements Regarding Accusations of Scams, Criminal Activity, and Fraud.**
  **(Compl. ¶¶ 41, 43, 45, 47, 53, 58, 60, 62, 64-65, 70, 72, 78, 85)**

Plaintiffs take issue with Courville's characterization of their GoFundMe fundraiser as "fraudulent," as well as Courville's vague allusions to a criminal conspiracy and comparisons of involuntary treatment to human trafficking.

As an initial matter, New Jersey courts have repeatedly recognized that merely labeling a plaintiff's conduct as criminal, or uses language that is also the name of a crime, is not tantamount to accusing that plaintiff of committing a crime. *See Baskerville v. Soc'y Hill at Droyers Point Condo. Ass'n*, 2009 WL 3849693, at *9 (N.J. Super. Ct. App. Div. Nov. 16, 2009) (holding that allegedly defamatory conclusion that defendants' statements were "slanderous and libelous" was "nothing more than a pure opinion"); *Somerset Development, LLC v. Cleaner Lakewood,* 2012 WL 4370271 (App. Div. 2012) (holding that defendants' statements that plaintiff "short changed the tax payers with millions," was a "rip off artist" and an "under the table crook" were not actionable statements of fact, but rather mere "rhetorical hyperbole").

In any event, the challenged allegations of scams/fraudulent behavior/criminal conspiracy were accompanied by a full disclosure of the underlying facts; the statements are therefore Constitutionally protected opinion.  For example, Plaintiffs challenge Courville's reference to Plaintiffs' "fraudulent fundraiser" for Ms. Rabb, characterizing this post as "falsely accus[ing] Ms. Jevremović of criminal behavior – namely, fraud." Compl. ¶ 62-63; *see also id*. ¶ 58-59. Yet the post in question discloses the simple fact underpinning this hyperbolic opinion: Courville wrote, "WHY IS THIS GOFUNDME STILL COLLECTING DONATIONS AMANDA IS DEAD." *Id*. ¶ 62.  Indeed, Plaintiffs themselves pled that Ms. Rabb had already been deceased for almost a full year while the GoFundMe fundraiser was still active.  *Compare id*. ¶ 13 (pleading that Ms. Rabb

died on May 9, 2021); *with id.* ¶ 62 (pleading that Courville screenshotted the active GoFundMe page on April 25, 2022).  As such, Courville disclosed to her readers the undisputed factual underpinning for her opinion, leaving the reader with the opportunity to confront those facts and reach its own conclusions.  *See, e.g. Yourman,* 992 F. Supp. at 707 (dismissing defamation claim concerning letter accusing plaintiff of committing fraud, finding that "any allegations of misrepresentation and fraud in [the] letter are protected expressions of opinion based upon [disclosed] undisputed fact"); *see also Jorjani,* 2019 WL 1125594, at *4; *Edelman*, 2010 WL 1816180, at *6-7.

The same is true regarding Courville's statements allegedly referring to the "trafficking" of Mr. Margera.  Compl. ¶ 70.  As an initial matter, Courville is simply reciting the allegations delivered by others, expressly hedging the description of "trafficker" by clarifying that it is only "alleged."  *Id.* ¶ 70.  And Courville clearly recites the facts underlying this opinion:  Courville's Instagram post includes a screenshot of the opinions of Ryan Nix, a man who Margera has referred to as "fam[ily]," along with a photograph where Mr. Nix suggested that Ms. Jevremović was "tak[ing] [Mr. Margera's] rights away."  *Id.* ¶ 70.  In short, the reader is provided with the information that Mr. Margera's friend thought his rights were being taken away, and that Mr. Margera had been court-ordered to receive involuntary treatment.

And as for vague allegations of "criminal conspiracies" (which, as set forth in detail below, make no specific reference to Jevremović), Courville discloses the facts on which this opinion is based.  *See* Compl. ¶ 43, 45, 47, 53, 68, 72, 78 (referring vaguely to criminality, with no mention of Jevremović, but only after repeatedly disclosing in various Instagram posts and YouTube videos that both Mr. Margera and Ms. Rabb were subjected to involuntary treatment under Jevremović's guardianship/conservatorship, that Ms. Rabb died with a multitude of drugs in her system, that

Jevremović publicly claimed, despite the autopsy report, that Ms. Rabb only had Tylenol in her system, and that Jevremović held a fundraiser for Ms. Rabb's medical treatment for almost a full year after she had died).

Finally, Courville's characterization of Ms. Jevremović's "scam conservatorship" over Ms. Rabb and "criminal conspiracies" are clear exaggeration, hyperbole and obvious overstatement that are simply not actionable. *See Creditors Relief LLC v. United Debt Settlement LLC*, 2019 WL 7288978, at *11 (D.N.J. Dec. 30, 2019) (holding that the "use of the term 'scam' is protected opinion, and would not be understood to be reporting an objective fact," and noting that courts have held that the word "scam" is "incapable of being proven true or false") (quotations and citations omitted); *Remick v. Manfredy*, 238 F.3d 248, 262 (3d Cir. 2001) (holding that even though attorney drafted a letter to opposing counsel accusing them of "extortion," the term was "non-defamatory 'rhetorical hyperbole, a vigorous epithet used by those who considered [plaintiff's] negotiating position extremely unreasonable.") (citing *Greenbelt Coop. Publ'g Ass'n v. Bresler*, 398 U.S. 6, 14 (1970) (finding "blackmail" accusation not defamatory because no reader could have though that plaintiff was being charged "with the commission of a criminal offense."")). Indeed, Plaintiffs themselves concede that "these statements might ordinarily be readily understood as hyperbole." Compl. ¶ 70-71; *see also id.* ¶ 85-86. These allegations effectively constitute admissions that these statements are not actionable.[4]

---

[4] In addition, Plaintiffs challenge as defamatory statements that are simply not defamatory because they cannot be plausibly injurious to a party's reputation. *See, e.g.* Compl. ¶ 64-65 (Courville's screenshot of the National Human Trafficking Hotline contact information); *id.* ¶ 67-68 (Courville's discussion of the distinction between a guardianship and conservatorship); *id.* ¶ 17, 39 (Courville referring to herself as a conspiracy theorist). Such statements are not actionable. *Reed v. Scheffler*, 218 F. Supp. 3d 275, 283 (D.N.J. 2016), *aff'd*, 771 F. App'x 162 (3d Cir. 2019) (dismissing defamation claim since statements were not "of such a nature to harm plaintiff's reputation in the community.").

- **<u>Statements Regarding AURA's Alleged Business Practices</u>.  (Compl. ¶¶ 93, 95, 97, 99, 101, 103)**

Finally, AURA challenges statements by Courville relating to AURA's practice of providing treatment to a homeless population and posting the progress and related content on the Internet.  However, these statements are not alleged to be false—the Complaint readily alleges that AURA provides these tools to individuals such as Ms. Rabb "free of charge" to "develop a viral, word-of-mouth buzz surrounding the product."  Compl. ¶ 11.  Plaintiffs therefore do not dispute that AURA was allowing Ms. Rabb the use of this treatment, which was only in its initial round of funding (*id.*), as a marketing tool on their Internet presence.  AURA therefore has conceded the veracity of Courville's statements about Ms. Rabb's participation in an experiment for AURA for marketing purposes.  Compl. ¶¶ 93, 97.  AURA's suggestion that these statements are defamatory to the extent it implies that AURA is "doing something inhumane" (*id.* ¶¶ 94, 98, 102) is simply an implausible leap of logic from the stated words, particularly in light of AURA's own admissions in the Complaint.[5]

### B.    To The Extent The Alleged Defamatory Statements Were Not "Of And Concerning" Plaintiffs, They Cannot Support a Claim For Defamation

A statement is only actionable as defamatory where one would reasonably understand that the statement referred to the plaintiff.  *See, e.g.  Foxtons, Inc. v. Cirri Germain Realty*, 2008 WL 465653, at *5 (N.J. Super. Ct. App. Div. Feb. 22, 2008); *Allia v. Target Corp.*, 2008 WL 1732964, at *5 (D.N.J. Apr. 10, 2008) ("it must appear that the third party understood the communication to relate to plaintiff" for defamation claim) (citing *Gnapinski v. Goldyn*, 23 N.J. 243, 252 (1957)).

---

[5] For the same reasons, AURA's suggestion that Courville's statement that Ms. Rabb never had any seizures prior to using AURA (Compl. ¶ 95) is defamatory ignores that AURA does not—and cannot—allege that this statement is untrue.

The Complaint suffers from this fatal defect.  The majority of the alleged defamatory statements about an alleged "criminal conspiracy" in relation to Margera **do not mention Jevremović at all**; instead, they are directed at some nebulous and amorphous so-called conspiracy, the exact participants of which are entirely unclear from the statements themselves.  *See* Compl. ¶¶ 38, 43, 45, 57, 60, 64-65, 67-68, 72, 78, 84-85.  Plaintiffs' own pleadings acknowledge the hazy and undefined nature of this conspiracy; according to Plaintiffs, "Courville's theory is that Margera's **family, friends, and business partners** used a court-imposed guardianship to remove Margera as an obstacle to co-opting his assets."  Compl. ¶ 18 (emphasis added).  Indeed, this same language about criminality, conspiracy and the hashtag #FreeBam is exactly the language Courville uses in her Instagram posts in March, April and May of 2022 in which Courville directs criticism to a whole host of targets—Nicole Boyd[6], Margera's friend and collaborator Johnny Knoxville, Paramount, MTV, trustee of a trust established for Margera, Stephen B. Timmer, and "sober coach" Bob Marier[7], Brandon Novak, Mr. Margera's friend and collaborator[8], and

---

[6] *See, e.g.* Compl. ¶ 38 (linking April 3, 2022 Instagram post where Courville highlights Nicole Boyd's name and writes, "Bam is worth $20 million.  Now who would have an incentive to want to control that money and who would be in a position to do so."  Courville also commented on the post that she "imagine[s]" Nicole Boyd is using their child together "as leverage."); Compl. ¶ 72 (linking Courville's April 18, 2022 Instagram post where Courville screenshots marriage and divorce records, highlighting that "[n]o marriage & divorce records associated with [Bam] Margera were found."  Courville captions the post: "Rumor has it Nikki and Bam aren't even legally married.  #FreeBam."  When a woman named Kelli comments, "where are his parents?" Courville responds, "helping the criminals girl.").

[7] *See, e.g.* Compl. ¶ 60 (linking Courville's April 25, 2022 Instagram post where Courville tags Johnny Knoxville, Bob Marier and Stephen Timmer, suggesting that they all conspired with Paramount to set up a trust fund for Mr. Margera's son in order to stop Mr. Margera from bringing suit against Paramount); Compl. ¶ 70 (linking Courville's April 19, 2022 Instagram post where Courville screenshots an article about Mr. Margera's "Post Jackass Settlement," writing that Mr. Margera "settled with his corporate overlords @mtv @johnnyknoxville @paramountco…#FreeBam #BitchesLoveHastags #EndHumanTrafficking.").

[8] *See, e.g.* Compl. ¶ 70  (linking Courville's April 19, 2022 Instagram post where Courville writes: "Brandon Novak for sure is part of team con…#EndHumanTrafficking").

Margera's parents[9]—regarding their treatment of Margera. Plaintiffs' suggestion that all statements which refer vaguely to #FreeBam and some kind of criminal conspiracy—particularly those that nowhere mention Jevremović—are nonetheless ***about*** her falls far short of satisfying the "of and about" plaintiff prerequisite for a defamation claim. It is simply implausible to argue that Plaintiffs' vague use of this language without referring by name to Jevremović would be understood as "of and concerning" Jevremović, as opposed to these other targets of Courville's concern. In light of the broad group of people and entities who could plausibly be the targets of the allegedly defamatory statements, it is clear as a matter of law that the statements are not plausibly "of and concerning" Plaintiffs. *See Foxtons*, 2008 WL 465653, at *3-5 (holding that plaintiff failed to show statement was of and concerning plaintiff even though the statement referred to a real estate broker employing a 3% commission, and plaintiff claimed they were the only real estate broker employing it); *see also Kraft v. Wells Fargo & Co.*, 2019 WL 3453271, at *7 (D.N.J. Jul. 31, 2019) (dismissing defamation claim where, *inter alia*, alleged defamatory statements referenced "the bank," without specifying which bank was being referenced, given that "multiple entities" could have been understood as "the bank"). [10]

Plaintiffs' apparent reliance on the comments in Courville's Instagram posts do not support the argument that the audience understood Courville's non-specific comments to be about Jevremović. To the contrary, the comments to the April 3, 2022 Instagram post Plaintiffs reference

---

[9] *See, e.g.* Compl. ¶ 72 (linking Courville's April 18, 2022 Instagram post where she commented that Mr. Margera's "parents" are conspiring with "the criminals.").

[10] The implausibility of connecting these statements to Plaintiffs is further confirmed by the commentators' reaction to another such post Plaintiffs allege as defamatory, where it is clear the commenters interpret any threats to Margera as stemming from Paramount and not Jevremović. Compl. ¶ 60 (linking Instagram post containing comment that reads: "[h]e'd better still be alive. [] it looks just like Paramount are getting all their ducks in a row…Hollyweird is a disgusting place! #FreeBam.").

in Paragraph 38 of the Complaint posit a variety of theories as to who is being referenced in connection with the accusations of a criminal conspiracy, ranging from Margera's "parents," his "grandparents," Novak, Knoxville, and Mr. Margera's "friends" generally.  Compl. ¶ 38 (linking to Courville's Instagram post).  Of the many comments, only *one* suggests the post refers to "lima," and that commentator in the same breath refers also to Novak and Margera's "parents."  Moreover, in her response to this comment, Courville refutes any such suggestion that Jevremović is the target, noting her opinion that "I imagine the child is being used as leverage…That's just my conspiracy theory." There is no plausible connection between Plaintiffs and Margera's child, and Plaintiffs do not allege otherwise.

To overcome this clear gulf between the vague allegations of criminal conspiracy and Plaintiffs' allegations of defamation, Plaintiffs ask this Court to make entirely unwarranted leaps of logic and language.  For example, in one particular Instagram post that nowhere references Jevremović, Courville responds to another commenter named Kelli that Margera's parents are "helping the criminals girl."  Compl. ¶ 72.  According to Plaintiffs, "[t]his statement is defamatory insofar as Courville's constant association of Ms. Jevremović with Margera's treatment naturally leads Courville's audience to understand 'girl' in this context to reference Ms. Jevremović." Compl. ¶ 73.  In this gross distortion of the plain text, Plaintiffs ask this Court to believe that Courville accidentally wrote "helping the criminals girl" when she meant to write "criminal girl," and what she really meant was that Jevremović was the criminal.  This tortured reading is simply unnatural, and therefore implausible; a far more natural reading of the comment is that Courville, writing in response to someone named Kelli, addressed Kelli as "girl" when she wrote "helping the criminals[,] girl."

Plaintiffs simply have not pled any reason why Jevremović's vague posts about criminality, conspiracy and "human trafficking"—the majority of which do not make a single mention of Jevremović—could not just as well refer to a host of other individuals who are repeatedly discussed in Courville's Instagram posts.  Absent plausible facts showing that these statements are "of and concerning" Jevremović, they are not actionable defamation.  *Foxtons*, 2008 WL 465653, at *4-5; *Kraft*, 2019 WL 3453271, at *7; *Allia*, 2008 WL 1732964, at *5.

Plaintiffs' defamation claims on behalf of AURA are similarly deficient to the extent they are based on statements that only mention Jevremović ***individually***, not AURA as an entity.  *See, e.g.*, Compl. ¶ 91, 97, 99, 101, 103.  For example, AURA complains about an Instagram comment in which Courville makes accusations about ***Jevremović's*** HIPPA compliance.  Compl. ¶ 91.  Similarly, an excerpt of a YouTube video that AURA challenges is missing the immediate context: in this video, Courville states that her problem ***with Jevremović*** is when "she" [Jevremović] "forces people by court order to use ***her*** [Jevremović's] tools."  *See* Compl. ¶ 103 (linking YouTube video.)  This statement is made in the context of reading Jevremović's bio on the website for the Jevremović Institute of Behavior and Brian Sciences, not AURA.  *Id.*[11]

New Jersey courts are clear that a statement directed at the head of a company does not qualify as "of and concerning" the company itself and does not entitle the company to sue for defamation.  *See, e.g., Konowicz v. Carr*, 2016 WL 3610154, at *1-3 (D.N.J. June 30, 2016) (dismissing defamation claim brought by one company where the allegedly defamatory statements were about a trademarked name used by plaintiff, rejecting plaintiffs' suggestion that a third party would understand that the statements about the trademark concerned the company).  Here, because

---

[11] Indeed, one of the posts is specifically *not* about AURA—it is about one of Jevremović's other ventures.  Compl. ¶¶ 99-100.

the challenged statements fail to identify or concern AURA, they cannot support a defamation claim brought on behalf of AURA.  *See Minerva Marine, Inc. v. Spiliotes*, 2005 WL 8175071, at *4 (D.N.J. Apr. 4, 2005) (holding that where defamation is directed at a corporation's employees, it only defames the corporation where it generally discredits "the method by which its business is conducted"; where it is only "directed at the actions of one or a few individual" members of the corporation, this is insufficient).

### C.    To The Extent The Alleged Defamatory Statements Were Not Made By Courville, They Are Not Actionable

Plaintiffs repeatedly seek to hold Courville liable for statements made by ***other people***. *See, e.g.* Compl. ¶¶ 49-51 (arguing that a multi-faceted comment by an Instagram user was "adopt[ed]" by Courville where she simply replied "bingo."); *id.* ¶¶ 76-77 (arguing that a three-part question posed by an Instagram user was "adopted" by Courville, where Courville simply responded "I mean…that's my impression."); *id.* ¶¶ 93-94 (arguing that a question posed by an Instagram user was "adopted" by Courville where Courville simply responded, "yes.").  But to impose defamation liability for the statements of another, a defendant must ***explicitly*** adopt those statements as their own.  *See, e.g. Perez*, 2013 WL 5770734, at *5 (declining to find statements to be actionable, as publishers never "adopted the statements contained therein as their own.").  The challenged statements do not reflect Courville's explicit adoption of these other people's statements, nor do Plaintiffs allege which portions of the posts to which Courville responds they allege she is adopting.  As such, they cannot be grounds for a defamation claim against Courville.

## II.    Plaintiffs Have Not Pled Actual Malice

Plaintiffs' claims should be dismissed on the additional, independent ground that Plaintiffs have failed to allege that Courville made defamatory statements with actual malice—a standard

the Third Circuit has referred to as a "heavy burden." *Lee v. TMZ Prods. Inc*, 710 F. App'x 551, 560 (3d Cir. 2017).

Where a statement concerns a public figure or involves a "matter of public concern," a plaintiff must plausibly allege that the defendant acted with actual malice, *i.e.*, that the plaintiff "in fact entertained serious doubts as to the truth of [her] publication." *Darakjian v. Hanna*, 366 N.J. Super. 238, 247 (App. Div. 2004) (citations omitted); *Jorjani,* 2019 WL 1125594, at *3; *Lee*, 710 F. App'x at 560 (affirming dismissal of defamation claim absent allegation defendant "*actually* doubted the veracity of the articles") (emphasis in original).

Plaintiffs have effectively conceded the application of the actual malice standard, reserving a section of their Complaint for pleading actual malice.  Compl. ¶ 22-28; *see also id.* ¶¶ 88-89, 106, 111.  And that is for good reason, because the allegations of this case warrant pleading actual malice.  A plaintiff is a public figure, and must plead actual malice, where they "voluntarily inject[] [themselves] or [are] drawn into a particular public controversy."  *Mauro v. Intell. Freedom Found., Inc.,* 2015 WL 10372230, at *4 (N.J. Super. Ct. App. Div. Feb. 26, 2016) (quoting *Berkery v. Estate of Stuart*, 412 N.J. Super. 76, 86 (App. Div. 2010)); *see also Barasch v. Soho Weekly News, Inc.*, 208 N.J. Super. 163, 170 (App. Div. 1986) (holding that people who have "thrust themselves 'into the vortex of [a] public issue,' or who ha[ve] 'engage[d] the public's attention in an attempt to influence its outcome,'" are limited public figures) (quoting *Gertz*, 418 U.S. at 352); *Cassidy v. Merin*, 244 N.J. Super. 466, 476 (App. Div. 1990) (holding that since plaintiffs "exposed themselves to an attendant risk of publicity" "by conducting a [public relations] campaign," any defamatory speech will "not be actionable unless it was published with actual malice.").  Here, Jevremović and AURA injected themselves into the public sphere by aggressively soliciting media attention via an intensive public relations campaign regarding their rehabilitation treatment; thus,

they are public figures.   Compl. ¶ 11 (alleging that Plaintiffs conducted a "viral" marketing campaign to create "word-of-mouth buzz" surrounding their products by engaging "celebrities, influencers, and persons in the public eye").   Moreover, matters of public concern "occup[y] the 'highest rung of the hierarchy of First Amendment values'" and therefore require pleading actual malice.   *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 759 (1985) (quoting *Connick v. Myers*, 461 U.S. 138, 145 (1983)).   Plaintiffs are public figures who injected themselves into the public sphere with an extensive public relations campaign for AURA; and the statements here involve matters of public concern, as they relate to treatment methods for substance abuse, conservatorship concerns, and a woman's death.   Courville's statements therefore trigger the application of the actual malice standard.

Critically, it is not enough for purposes of actual malice to plead that a defendant published statements "without fact-checking, without investigation, without interviewing those involved, and with no regard for accuracy."   *Lee*, 710 F. App'x at 560.   It is equally inadequate to allege that a defendant had bad motives or "ill will" towards plaintiff.   *Jorjani*, 2019 WL 1125594, at *4.   Nor can a plaintiff rely on "a bare conclusory assertion that [a defendant] 'knew and/or reasonably should have known that the statement was false.'"   *Darakjian*, 366 N.J. Super. at 248.   Instead, Plaintiffs need to plead sufficient facts to plausibly allege that Courville "*actually* doubted the veracity" of her statements."   *Lee*, 710 F. App'x at 560.   In other words, the complaint must "allege sufficient ***particularized facts*** to suggest that…[the report] was published with knowledge of its falsity or a reckless disregard for the truth or falsity of the reported statement."   *Darakjian*, 366 N.J. Super. at 248 (emphasis added).   This prohibitively high bar is purposeful; the actual malice standard reflects "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and

sometimes unpleasantly sharp attacks." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964); *see also Darakjian*, 366 N.J. Super. at 248 ("To permit a defamation action [regarding matters of public concern] to survive on the basis of a mere allegation of knowledge of falsity or reckless disregard affords insufficient breathing space to the critical rights protected, in the public interest, by the First Amendment.").

Plaintiffs have barely attempted to meet the high pleading burden for actual malice.  Their allegations rely almost exclusively on bare, conclusory allegations which merely recite the elements of the standard.  For example, Plaintiffs allege that "Courville knew or should have known each of these statements to be false at the time the statement was made, and thus, Courville acted with actual malice" (Compl. ¶ 88) and elsewhere that "Courville made these false statements in wonton and willful disregard of AURA's rights, with knowledge of their falsity or reckless disregard for whether the statements were true."  *Id.* ¶ 106.  New Jersey courts have made clear that such plainly conclusory allegations are woefully inadequate and necessitate dismissal.  *See Darakjian*, 366 N.J. Super. at 246 (reversing lower court and dismissing defamation claim for failure to plead actual malice: "plaintiff has pled no facts tending to support her assertion that the offending article was published with an awareness that the statements reported were false"; where plaintiff alleged only "a bare conclusory assertion that the press defendants 'knew and/or reasonably should have known that the statement…was false,' with no other factual reference to lend support to the contention," this is insufficient to sustain a claim of actual malice); *Jorjani*, 2019 WL 1125594, at *5 (same); *see also Pace v. Baker-White*, 850 F. App'x 827, 832 (3d Cir. 2021) ("conclusory allegations are insufficient" to establish actual malice at the pleading stage, such as allegations that defendant "had knowledge of, or acted in reckless disregard as to the falsity

of the matter they communicated." Rather, "[a]t the pleading stage, a public figure, like [plaintiff] must allege *facts* to support an inference of actual malice.") (emphasis in original).

Plaintiffs' conclusory—and therefore inadequate—allegations of actual malice take a few different variations.  Plaintiffs baldly allege that "Courville knew and ignored the fact that no evidence demonstrated Ms. Jevremović to be dishonest."  Compl. ¶ 22.  Yet setting aside that this allegation does not include a single fact, but rather bald conjecture, as set forth extensively herein, the Complaint itself, as well as Courville's own statements, include her legitimate supporting evidence (which was disclosed), demonstrating the authenticity of her beliefs.  *See Lee,* 710 F. App'x at 560 (holding that although complaint may have demonstrated "professional negligence," by publishing articles "without fact-checking, without investigation, without interviewing those involved and with no regard for accuracy," plaintiff failed to sufficiently allege that defendant "*actually* doubted the veracity of the articles," as the articles relied on already published materials) (emphasis in original).  Plaintiffs also appear to rely on the catch-all claim that "Courville was aware that her statements of fact were untrue based on their inherent improbability."  *Id.* ¶ 24.  But Plaintiffs have provided no clarification as to **which** specific statements were inherently improbable, nor a single factual allegation that would support **why** they were inherently improbable.  Plaintiffs also seek to satisfy the actual malice requirement with the entirely unsupported, naked claim that "Courville took steps to deliberately avoid learning the truth regarding Ms. Jevremović, despite that such information was available to her."  *Id*. ¶ 25.  Once again, Plaintiffs have offered no plausible allegation explaining what steps Courville took to avoid learning the truth, or what information was available to her.  In any event, this alleged failure to investigate is legally irrelevant.  The Third Circuit has made clear that a mere "failure to

investigate" does not prove actual malice. *McCafferty* 955 F.3d at 359 (quotations and citations omitted).

Ultimately, Plaintiffs' actual malice allegations rely nearly exclusively on the argument that Courville was somehow financially motivated to defame Plaintiffs. Compl. ¶ 26-27, 89, 106. As an initial matter, this is simply not a plausible allegation and cannot survive *Iqbal* scrutiny; if, as Plaintiffs allege, Courville had a financial motivation to generate traffic for her social media pages, this goal would be undermined by publishing verifiably false material, which would only hurt her credibility. In any event, these allegations are irrelevant to the actual malice analysis. As made clear by New Jersey courts, "even if [defendants] were acting to further some undisclosed political or financial motives…such motives cannot provide a sufficient basis for finding actual malice." *Schwartz v. Worrall Pubs., Inc.*, 258 N.J. Super. 493, 504 (App. Div. 1992); *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989) ("the fact that the defendant published the defamatory material in order to increase its profits" does not "suffice to prove actual malice."). As the Supreme Court has held, "[i]f a profit motive could somehow strip communications of the otherwise available constitutional protection, our [defamation] cases … would be little more than empty vessels." *Harte-Hanks¸* 491 U.S. at 667.

Stripping away Plaintiffs' conclusory allegations, the Complaint contains no factual allegations plausibly suggesting that Courville "seriously doubted" any of her statements. Plaintiffs' pleading failure necessitates dismissal of the Complaint.

Respectfully submitted,

COZEN O'CONNOR, PC
A Pennsylvania Professional Corporation
Attorney for Defendant Brittany Jeream Courville

BY: _____

John P. Johnson, Jr.
1010 Kings Highway South
Cherry Hill, NJ 08034
Telephone: 856-910-5001
Fax: 215-701-2049
jjohnson@cozen.com

Keven T. Kerns
*(D.N.J Admission Forthcoming)*
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Telephone: 215-665-6912
Fax: 215-372-2352
kkerns@cozen.com

Tamar Wise (*Admitted Pro Hac Vice*)
3 WTC
175 Greenwich Street, 55th Floor
New York, NY 10172
Telephone: 212-883-4924
Fax: 646-461-2054
twise@cozen.com

Dated:  October 14, 2022