# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LIMA JEVREMOVIĆ, an individual; and AUTONOMOUS USER REHABILITATION AGENT, LLC, a Delaware Limited Liability Company,<br><br>      Plaintiffs,<br><br>         vs.<br><br>BRITTANY JEREAM COURVILLE, an individual,<br><br>      Defendant. | Civil Action No: 3:22-cv-04969-ZNQ-RLS<br><br>*Document Electronically filed* |

## PLANTIFFS' OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS COMPLAINT
## PURSUANT TO FED. R. CIV. P. 12(b)(6)

*On the Brief:*
Rodney Smolla, Esq.
Neville L. Johnson, Esq.
Adam M. Winokur, Esq.

# **TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................................................................... 1

II. LEGAL ARGUMENT ................................................................................................... 2

A.  THE STATEMENTS AT ISSUE ARE NOT OPINION .......................................... 2

    1.  Ties Go to Jevremović ...................................................................................... 2

    2.  What Matters is the Impact on the Average Reader ........................................ 3

    3.  The Internet and Social Media are Not Defamation Free-Fire Zones ........................ 4

    4.  A Jury Could Find Courville's Statements to be Factual ............................................ 5

        a. False Assertions that Jevremović Lied about the Rabb Autopsy ........................ 7

        b. False Assertions that Jevremović Procured Forced Treatments for AURA
        Clients in Pursuit of Financial Gain ..................................................................... 7

        c. False Accusations Claiming Jevremović Mistreated Amanda Rabb ................. 8

        d. False Statements Accusing Jevremović of Complicity in a Conspiracy
        Surrounding Bam Margera's Guardianship. ......................................................... 8

        e. False Statements Impugning the Integrity of AURA's Business Practices. ..... 10

B.  THE "OF AND CONCERNING" STANDARD IS SATISFIED .......................................... 11

C.  COURVILLE IS RESPONSIBLE FOR REPUBLICATION ................................................. 13

D.  THE COMPLAINT PLAUSIBLY PLEADS ACTUAL MALICE ...................................... 14

    1.  The Pleading Standard ................................................................................... 14

    2.  Jevremović's Allegations Easily Satisfy the Actual Malice Test ............................ 18

III. CONCLUSION ............................................................................................................ 24

i

# TABLE OF AUTHORITIES

**Cases**

*Ali v. Woodbridge Twp. Sch. Dist.*, 957 F.3d 174, 183 (3d Cir. 2020) ........................................... 6

*Anderson v. Liberty Lobby*, 477 U.S. 242 (1986) ....................................................................... 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................... 2, 14, 15, 16, 17

*Bajardi v. Pincus*, No. A-5668-14T4, 2019 WL 3521847

    (N.J. Super. Ct. App. Div. Aug. 2, 2019) ................................................................................ 6

*Baker v. Joseph*, No. 12-CV-23300-UU, 2013 WL 12094322 (S.D. Fla. May 30, 2013) ........... 17

*Barres v. Holt, Rinehart & Winston, Inc.*, 131 N.J. Super. 371, 330 A.2d 38 (Law Div.1974),

    *aff'd*, 141 N.J. Super. 563, 359 A.2d 501 (App.Div.1974), *aff'd*, 74 N.J. 461, 378 A.2d 1148

    (1975) (*per curiam*)................................................................................................................ 13

*Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) ................................. 2, 14, 15, 16, 17

*Biro v. Conde Nast*, 807 F.3d 541 (2d Cir. 2015) ...................................................................... 17

*Bivens v. Six Unknown Names Agents of the Federal Bureau of Narcotics*,

    403 U.S. 388 (1971)............................................................................................................... 15

*Burnett v. National Enquirer, Inc.*, 144 Cal. App. 3d 991, 193 Cal. Rptr. 206, 219 (Ct. App.

    1983) ..................................................................................................................................... 22

*Butowsky v. Folkenflik*, No. 4:18CV442, 2019 WL 3712026 (E.D. Tex. Aug. 7, 2019) ............. 16

*Church of Scientology of California v. Flynn*, 578 F. Supp. 266 (D.C.Mass. 1984).................... 12

*Ciemniecki v. Parker McCay P.A.*, Civ. No. 09–6450 (RBK/KMW), 2010 WL 2326209

    (D.N.J. June 7, 2010) ............................................................................................................ 18

*Dello Russo v. Nagel*, 358 N.J. Super. 254 (App. Div. 2003) ...................................................... 2

*Dijkstra v. Westerink*, 168 N.J. Super. 128, 401 A.2d 1118 (1979) ........................................... 11

*Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308 (5th Cir. 1995) ............................................ 22

*Eastwood v. National Enquirer, Inc.*, 123 F.3d 1249 (9th Cir. 1997) ......................................... 15

*Eramo v. Rolling Stone, LLC*, 209 F. Supp. 3d 862 (W.D. Va. 2016).................................... 19, 22

*Falwell v. Flynt*, 797 F.2d 1270, 1277 (4th Cir. 1986), *judgment rev'd on other grds,*

    *Hustler Magazine, Inc., v. Falwell*, 485 U.S. 46 (1988)........................................................... 19

*Gaprindashvili v. Netflix, Inc*., No. 221CV07408VAPSKX, 2022 WL 363537

    (C.D. Cal. Jan. 27, 2022) ......................................................................................................... 5

*Garrison v. Louisiana,* 379 U.S. 64 (1964) ............................................................................... 20

*Gertz v. Robert Welch, Inc*., 680 F.2d 527 (7th Cir. 1982).......................................................... 19

*Gnapinsky v. Goldyn*, 23 N.J. 243, 128 A.2d 697 (N.J.1957) ...................................................... 11

*Golden Bear Distributing Systems v. Chase Revel, Inc*., 708 F.2d 944 (5th Cir. 1983).............. 21

*Goldwater v. Ginzburg*, 414 F.2d 324, 337 (2d Cir. 1969), *cert. denied,*

    396 U.S. 1049 (1970).............................................................................................................. 19

*Gorman v. Swaggart*, 524 So. 2d 915 (La. Ct. App. 1988) ......................................................... 12

*Greenbelt Co-op. Publishing Association v. Bresler*, 398 U.S. 6 (1970) ...................................... 9

*Guam Federation of Teachers. v. Ysrael*, 492 F.2d 438 (9th Cir. 1974),

    *cert. denied*, 419 U.S. 872 (1974) ......................................................................................... 23

*Hansen v. Stoll*, 130 Ariz. 454 (Ariz. Ct. App. 1981).................................................................. 20

*Harris v. City of Seattle*, 152 Fed. Appx. 565 (9th Cir.2005).............................................. 19, 20

*Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657 (1989) .................... 20, 21, 22

*Heasley v. Belden & Blake Corp*., 2 F.3d 1249 (3d Cir. 1993) .................................................... 2

*Herbert v. Lando*, 441 U.S. 153 (1979) .............................................................................. 18, 23

*Herrmann v. Newark Morning Ledger Co*., 48 N.J. Super. 420 (App. Div. 1958) ....................... 2

*Hutchinson v. Proxmire*, 443 U.S. 111 (1979) ............................................................................ 16

*Kotlikoff v. The Community News*, 89 N.J. 62, 444 A.2d 1086 (1982)..................................... 3, 14

*Lynch v. Ackley*, Civ. No. 3:12CV537 (JBA), 2012 WL 6553649 (D. Conn. Dec. 14, 2012) ..... 17

*Lynch v. N.J. Educ. Assoc.*, 161 N.J. 152, 735 A.2d 1129 (1999) .................................................. 6

*Manzari v. Associated Newspapers Ltd.*, 830 F.3d 881 (9th Cir. 2016)....................................... 23

*Maple Heights News v. Lansky*, No. 1:15CV53, 2015 WL 4730737

    (N.D. Ohio Aug. 10, 2015) ...................................................................................................... 17

*Masson v. New Yorker Magazine Inc.*, 501 U.S. 496, 517 (1991)................................................. 3

*Mauro v. Intellectual Freedom Foundation, Inc.*, No. A-0004-15T2,

    2015 WL 10372230 (N.J. Super. Ct. App. Div. Feb. 26, 2016) ................................................. 4

*Mick v. American Dental Assoc.*, 49 N.J. Super. 262, 139 A.2d 570 (1958)............................... 11

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990) ...................................................................... 6

*Minerva Marine, Inc. v. Spiliotes*, No. CV 02-2517 (WHW),

    2005 WL 8175071 (D.N.J. Apr. 4, 2005) ............................................................................... 12

*Molnar v. The Star–Ledger,* 193 N.J. Super. 12 (App. Div. 1984) ................................................. 3

*Mr. Chow of New York v. Ste. Jour Azur S.A.*, 759 F.2d 219 (2d Cir. 1985) ................................ 5

*Neiman-Marcus Co. v. Lait*, 107 F. Supp. 96 (S.D.N.Y. 1952).................................................... 12

*Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ........................................................................... 15

*Okeke v. Anekwe*, No. A-3391-20, 2022 WL 2674944

    (N.J. Super. Ct. App. Div. July 12, 2022)............................................................................ 2, 4

*Palin v. New York Times*, 940 F.3d 804 (2d Cir. 2019)........................................................ 18, 22

*Perez v. Factory Direct of Secaucus, LLC*, No. 2:13-CV-00327 DMC,

    2013 WL 5770734 (D.N.J. Oct. 23, 2013)............................................................................. 14

*Pierson v. National Institute for Labor Relations Research*, 319 F. Supp. 3d 1100

(N.D. Ind. 2018) ................................................................................................. 17

*Prozeralik v. Capital Cities Communications, Inc.*, 82 N.Y.2d 466 (Ct. App. N.Y. 1993) ......... 21

*Reed v. Scheffler*, 218 F. Supp. 3d 275 (D.N.J. 2016), *aff'd*, 771 F. App'x 162 (3d Cir. 2019) .... 6

*Rinaldi v. Holt, Rinehart & Winston*, 42 N.Y.2d 369, 366 N.E.2d 1299,

397 N.Y.S.2d 943, *cert. denied*, 434 U.S. 969 (1977) ............................................... 3

*Rogers v. Courier Post Co.*, 2 N.J. 393, 66 A.2d 869 (1949) ....................................... 13

*Romaine v. Kallinger*, 109 N.J. 282 (1988) ................................................................ 5

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) ................................................................... 15

*Schiavone Const. Co. v. Time, Inc.*, 735 F.2d 94 (3d Cir. 1984) ................................. 13

*Schiavone Const. Co. v. Time, Inc.*, 847 F.2d 1069 (3d Cir. 1998) ........................ 20, 23

*Sciore v. Phung*, 2022 WL 950261 (D.N.J. Mar. 30, 2022) ......................................... 5

*Sedore v. Recorder Pub. Co.*, 315 N.J. Super. 137 (App. Div. 1998) ............................ 2

*Shoen v. Shoen*, 48 F.3d 412 (9th Cir. 1995) .............................................................. 22

*Singer v. Beach Trading Co.*, 379 N.J. Super. 63, 876 A.2d 885 (App. Div. 2005) ........................ 6

*Spacecon Specialty Contractors, LLC v. Bensinger*, No. 09CV02080REBKLM,

2010 WL 3720166 (D. Colo. Sept. 15, 2010) ................................................... 17, 22

*Spirito v. Peninsula Airport Commission*, 350 F. Supp. 3d 471 (E.D. Va. 2018) ................ 16, 22

*St. Amant v. Thompson*, 390 U.S. 727 (1968) ....................................................... 20, 23

*Tah v. Global Witness Publishing, Inc.*, 413 F. Supp. 3d 1 (D.D.C. 2019),

*aff'd*, 991 F.3d 231 (D.C. Cir. 2021), *cert. denied*, 142 S. Ct. 427 (2021) ......................... 5, 13

*Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*, 164 F.3d 186 (3d Cir. 1998) ............................ 11

*Tiversa Holding Corp. v. LabMD, Inc.*, Civ. A. No. 13–1296, 2014 WL 1584211

   (W.D. Pa. Apr. 21, 2014) ................................................................................ 17

*United States v. Gonzalez*, 905 F.3d 165 (3d Cir. 2018) ................................................ 4

*Vasquez v. Whole Foods Market, Inc.*, 302 F. Supp. 3d 36 (D.D.C. 2018) ................................. 13

*W.J.A. v. D.A.*, 210 N.J. 229, 240, 43 A.3d 1148 (2012) ............................................ 11

*Ward v. Zelikovsky*, 136 N.J. 516 (1994) ................................................................. 3, 5, 6,

*Wehling v. Columbia Broadcasting System*, 721 F.2d 506 (1983) .................................... 4

*Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066 (5th Cir. 1987) ............................... 21

**Treatises**

D. Elder, *Defamation: A Lawyer's Guide* § 7.12 (2016) ............................................. 18

Restatement Second, Torts § 580A (1977) ............................................................. 21

Robert Sack, *Libel, Slander, and Related Problems* (1980) ......................................... 3

Rodney Smolla, *Law of Defamation* § 4:03 (1986) ................................................... 3

Rodney Smolla, *Law of Defamation* § 5.08 (1991) ................................................... 4

Rodney Smolla, *Law of Defamation* § 9:17 ........................................................... 11

Rodney Smolla, *Law of Defamation* § 3:71 ........................................................... 19

Rodney Smolla, *Law of Defamation* § 6.03[8][a] .................................................... 6

**Books**

MARSHALL MCLUHAN, UNDERSTANDING MEDIA: THE EXTENSIONS OF MAN 23-35 (1964) .......... 4

Plaintiffs Lima Jevremović and her company, Autonomous User Rehabilitation Agent, LLC, (AURA) hereby respond to the Memorandum of Law filed in support of Defendant Brittany Jeream Courville's Motion to Dismiss.[1]

## I. INTRODUCTION

Courville launches two distinct lines of attack on Jevremović's Complaint.  The first front invokes a variety of defamation doctrines to advance the defense that the statements made by Courville are not actionable.  The second speaks to fault.  Courville claims that Jevremović has not plausibly pled actual malice.

Courville's first line of defense, dealing with whether her statements are actionable at all, subdivides into three subsidiary arguments.  Courville asserts that the statements at issue were opinion, rhetorical hyperbole, or name-calling, and not statements of fact.  Courville asserts that at least some of the statements were not "of and concerning" Jevremović or AURA.  And finally, Courville asserts that any otherwise actionable statements made by third parties that were republished by Courville or agreed with by Courville are not attributable to Courville and so not actionable against her.

Jevremović responds to these arguments by first exposing Courville's exposition of the legal principles as misleading and incomplete.  Jevremović secondly demonstrates that the allegations in her Complaint easily meet her burdens at the pleading stage.  As to all three of the issues in play here regarding actionability, Jevremović submits that the burdens here are asymmetrical.  Courville may not prevail on her Motion unless her spin on the meaning of the statements is the *only* plausible understanding of their meaning, as viewed through the lens of the

---

[1] Unless otherwise indicated, for simplicity this Memorandum refers to Plaintiffs collectively as "Jevremović" or "Plaintiffs" and Defendant as "Courville" or "Defendant"

average reader.  Jevremović, in contrast, may proceed with her claims as long as her proffered meaning of Courville's words constitute at least *one* plausible understanding.

Courville's second line of attack is actual malice.  Because actual malice is a quintessentially *factual* determination, at the pleading stage, the plausibility standards articulated in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) must be satisfied. Yet somewhat like the apocryphal quote often credited to Mark Twain, that "rumors of my death are greatly exaggerated," the impact of *Twombly* and *Iqbal* on the pleading burdens facing a defamation plaintiff are often exaggerated as well.  The allegations in Jevremović's Complaint, construed with all inferences in Plaintiffs' favor, easily cross the modest line from the "possible" to "plausible" that *Twombly* and *Iqbal* require, entitling Jevremović to prevail against the Motion to Dismiss and proceed to discovery.

## II. LEGAL ARGUMENT

### A.   THE STATEMENTS AT ISSUE ARE NOT OPINION.

#### 1.   Ties Go to Jevremović.

In baseball, "ties go to the runner." *See Heasley v. Belden & Blake Corp*., 2 F.3d 1249, 1258 (3d Cir. 1993).  In defamation law, ties go to the plaintiff. "[W]here the statement is capable of more than one meaning, one of which is defamatory and another not, the question of whether its content is defamatory must be resolved by the fact finder." *Dello Russo v. Nagel*, 358 N.J. Super. 254, 263 (App. Div. 2003). "If the challenged language is ambiguous 'in the sense of being reasonably subject to either an innocent or a defamatory meaning,'" it is for the factfinder to determine whether the language will be read in its defamatory sense." *Okeke v. Anekwe*, No. A-3391-20, 2022 WL 2674944, at *5 (N.J. Super. Ct. App. Div. July 12, 2022) (*quoting Herrmann v. Newark Morning Ledger Co*., 48 N.J. Super. 420, 429-30 (App. Div. 1958)); *Sedore v. Recorder*

*Pub. Co.*, 315 N.J. Super. 137, 145-46 (App. Div. 1998) ("The jury decides the question only when the trial court determines that 'the statement is reasonably susceptible to both a defamatory and a non-defamatory meaning.'") (*quoting Molnar v. The Star–Ledger,* 193 N.J. Super. 12, 18 (App. Div. 1984)).

### 2..    What Matters is the Impact on the Average Reader.

Jevremović fully agrees with Courville that Jevremović must ground her suit in alleged false statements of fact.  Opinion, rhetorical hyperbole, or name-calling will not do. "Courts thus distinguish 'between genuinely defamatory communications as opposed to obscenities, vulgarities, insults, epithets, name-calling, and other verbal abuse.'" *Ward v. Zelikovsky*, 136 N.J. 516, 530 (1994) (*quoting* Rodney Smolla, *Law of Defamation* § 4:03 (1986)).  Jevremović disagrees with Courville, however, in her suggestion that somehow statements made on social media receive a talismanic free pass from what would otherwise be actionable, or that Courville's vituperative vulgarity or gratuitous cruelty insulate her from the ordinary rules of defamation liability.  At the end of the day, constitutional law and common law principles are both grounded in the same common-sense inquiry: how would the average reader understand the statement? *See Kotlikoff v. The Community News*, 89 N.J. 62, 71, 444 A.2d 1086, 1090 (1982) ("The ordinary and average reader would likely understand the use of these words, in the context of the entire article, as meaning that plaintiff had committed illegal and unethical actions. Accusations of criminal activity, even in the form of opinion, are not constitutionally protected.") (*quoting Rinaldi v. Holt, Rinehart & Winston*, 42 N.Y.2d 369, 382, 366 N.E.2d 1299, 397 N.Y.S.2d 943, *cert. denied*, 434 U.S. 969 (1977)). As the Supreme Court has summarized, the test is whether the statement would "'have a different effect on the mind of the reader from that which the pleaded truth would have produced.'" *Masson v. New Yorker Magazine Inc.*, 501 U.S. 496, 517 (1991) (*quoting* Robert Sack,

3

*Libel, Slander, and Related Problems* 138 (1980) and *citing Wehling v. Columbia Broadcasting System*, 721 F.2d 506, 509 (1983) *and* Rodney Smolla, *Law of Defamation* § 5.08 (1991)). And as long as *one* plausible understanding of how that average reader would understand the statement is that it asserted a defamatory *fact*, the case moves forward. Courville does not get a "get out of jail free card" for surrounding otherwise factual defamatory statements with vulgarity and self-indulging histrionics.

### 3.     The Internet and Social Media are Not Defamation Free-Fire Zones.

Suggestions by Courville that somehow posts on the Internet and social media are insulated from defamation liability are entirely mistaken.  The philosopher Marshall McLuhan famously declared that "the medium is the message." MARSHALL MCLUHAN, UNDERSTANDING MEDIA: THE EXTENSIONS OF MAN 23-35 (1964).  The law of defamation, however, directs the opposite proposition.  It is the message, not the medium, that controls.  There is no talismanic social media defense known to defamation law.  To the contrary, as much of our public discourse moves to social media, the law of defamation moves with it.  Liability arising from social media posts are now commonplace. *See, e.g., Okeke v. Anekwe*, No. A-3391-20, 2022 WL 2674944, at *5–6 (New Jersey court ruling that statements made on Facebook and Yelp could be capable of carrying a defamatory meaning); *Mauro v. Intellectual Freedom Foundation, Inc.*, No. A-0004-15T2, 2015 WL 10372230, at *3 (N.J. Super. Ct. App. Div. Feb. 26, 2016) ("Contrary to Doe's argument, the anonymous posts are not opinions, but rather accusations, which to the reasonable person of ordinary intelligence, accuse Mazzuckis and Pereira of an adulterous relationship."). There simply is no "internet defense" to defamation law, or other forms of civil and criminal liability. *United States v. Gonzalez*, 905 F.3d 165, 192 (3d Cir. 2018) (holding that internet posts were both defamatory and integral to crime).

4

There will, of course, be posts on social media that are properly classified as "opinion," just as there will be in any medium. The decision in *Sciore v. Phung*, 2022 WL 950261 (D.N.J. Mar. 30, 2022), upon which Courville most heavily relies, is an example. But the defendant won in *Sciore* not because the review at issue was on social media, but because the review was intrinsically not actionable. *Sciore* involved an online *restaurant review*, the sort of quintessentially subjective expression that is never actionable, no matter what the medium. *See Mr. Chow of New York v. Ste. Jour Azur S.A.*, 759 F.2d 219, 228 (2d Cir. 1985) ("Appellee does not cite a single case that has found a restaurant review libelous."). It is the *content* of the communication, not the medium through which it is transmitted, that controls.

### 4.    A Jury Could Find Courville's Statements to be Factual.

Confronted with the issue of whether a statement is factual, a court "must consider the content, verifiability, and context of the challenged statements." *Ward v. Zelikovsky*, 136 N.J. at 529. When considering a statement's content, a court looks "to the fair and natural meaning which will be given it by reasonable persons of ordinary intelligence." *Romaine v. Kallinger*, 109 N.J. 282, 290 (1988). As noted throughout Plaintiffs' Complaint, the *actual readers* of Courville's defamation campaign against Jevremović overwhelmingly interpreted Courville's statements as factual. They believed Courville, and were outraged, because they thought Courville's statements were factually true. While the law of defamation employs as a construct the "average reader," in the tradition of tort law's "ordinary reasonable person," evidence of how readers in the real world *actually* understood a statement is often a highly valuable tool in determining how "average readers" *could* understand a statement. "Such evidence, while not dispositive, supports how a 'reasonable' viewer might have understood the [statement]." *Gaprindashvili v. Netflix, Inc*, No. 221CV07408VAPSKX, 2022 WL 363537, at *7 (C.D. Cal. Jan. 27, 2022); *Tah v. Global Witness*

*Publishing, Inc.*, 413 F. Supp. 3d 1, 11–12 (D.D.C. 2019), *aff'd*, 991 F.3d 231 (D.C. Cir. 2021), *cert. denied*, 142 S. Ct. 427 (2021) (such evidence, "although not dispositive," is "insightful.")

The vast bulk of Courville's statements are not even phrased or couched as "opinion" at all, but are flat declarations that purport to be literal. Yet even if they were surrounded by some of the linguistic trappings of "opinion," that alone would not save them. "Statements of opinion do not receive 'a wholesale defamation exemption,' however, if the statements "imply false underlying objective facts.'" *Reed v. Scheffler*, 218 F. Supp. 3d 275, 282 (D.N.J. 2016), *aff'd*, 771 F. App'x 162 (3d Cir. 2019) (*citing and quoting Singer v. Beach Trading Co*., 379 N.J. Super. 63, 79, 876 A.2d 885 (App. Div. 2005); *Lynch v. N.J. Educ. Assoc*., 161 N.J. 152, 167, 735 A.2d 1129 (1999); *Milkovich v. Lorain Journal Co*., 497 U.S. 1, 18 (1990)); *see also Bajardi v. Pincus*, No. A-5668-14T4, 2019 WL 3521847, at *13 (N.J. Super. Ct. App. Div. Aug. 2, 2019) ("An opinion is actionable, however, if 'it implies 'reasonably specific assertions' of 'underlying objective facts that are false'"). "Courts do not automatically decide a case on '[t]he literal words of the challenged statement.'" *Ward*, 136 N.J. at 532 (*quoting* Rodney Smolla, *Law of Defamation* § 6.03[8][a]). "Rather, courts must 'consider the impression created by the words used as well as the general tenor of the expression,' as experienced by a reasonable person." *Ward*, 136 N.J. at 532 (*quoting* Smolla, *Law of Defamation* § 6.03[8][a]).

While other factors may count on the margins, at the end of the day, verifiability—whether a statement is susceptible of being objectively proven true or false—is always the core. "Determining if a statement is one of fact or opinion rests on the concept of verifiability, because if a statement cannot be proven true or false, it cannot be subject to liability." *Ali v. Woodbridge Twp. Sch. Dist*., 957 F.3d 174, 183 (3d Cir. 2020) (*citing Lynch*, 161 N.J. 152).

The Complaint is replete with allegations of defamatory factual falsehood. Courville's

Motion to Dismiss is replete with ambiguity as to which of the alleged false statements of fact Courville actually claims are opinion.  In a cryptically worded assertion, Courville states in her Memorandum that the "allegedly defamatory statements are also not actionable *to the extent* that they are protected opinion."  Courville Mem. at p.2 (emphasis added).  But what does "to the extent" mean, and how is Jevremović *or the Court* supposed to analyze this defense when phrased in such ambivalent terms?  Courville merely states a truism.  It is every bit as true that the statements in Courville's Complaint *are* actionable "to the extent" that they *are not* protected opinion. In this posture, it is enough to defeat Courville's Motion that this Court be satisfied that *some* of the alleged defamatory factual falsehoods are factual.  Consider the following groupings.

### a. False Assertions that Jevremović Lied about the Rabb Autopsy.

The Complaint contains numerous allegations asserting that Courville falsely stated that Jevremović lied to the public about Rabb's autopsy report. Compl. ¶¶ 30, 32, 34, 36, 52, 55-56, 80, 82.  Here is a typical example:

> Lima [Jevremović]. . . LIED ABOUT [AMANDA'S] CAUSE OF DEATH
> TO MILLIONS of people. (Compl. ¶ 30).

Jevremović alleges that all these statements by Courville are factually false.  Jevremović did not lie about the autopsy report.  Compl. ¶¶ 33, 35, 37, 53, 56, 57, 81, 83.  Courville's statements are not couched as opinion, they are couched as flat-out facts.  The statements may be objectively proven true or false.  Jevremović either lied about the autopsy or she did not.

### b. False Assertions that Jevremović Procured Forced Treatments for AURA Clients in Pursuit of Financial Gain.

The Complaint contains numerous allegations that Courville falsely accused Jevremović and AURA of unethically and illegally procuring false treatments for clients in pursuit of financial gain.  Compl. ¶¶ 38, 49-50, 74, 76, 97, 101, 103. Here is an example:

> Rabb did not consent to being used as a research object. She was court ordered into a conservatorship after Lima, mark Laita, and Rabb's dad SET HER UP. This same woman petitioned to put Bam into a conservatorship. #FreeBam #RabbRabb #InvestigateAURA (Compl. ¶ 101)

The Complaint explains in detail why these allegations are false. Compl. ¶¶ 39, 51, 75, 77, 98, 102, 104. The false assertions by Courville are not mere insult, name-calling, rhetorical hyperbole, or opinion. The language alleges intentional misconduct—such as by claiming that Jevremović conspired to "SET HER UP." The underlying truth or falsity of these allegations are subject to objective proof or disproof. They are actionable.

### c. False Accusations Claiming Jevremović Mistreated Amanda Rabb.

The Complaint contains numerous allegations that Courville falsely stated that Jevremović mistreated Amanda Rabb. Compl. ¶¶ 41, 58, 62, 76, 93, 95, 97, 101. Here is an example:

> the issue is that Rabb was forced to do this treatment under threat of going to prison. She was set up against her with the help of the government do be used as a test subject and marketing tool. I agree with you completely that it 'seems cool'. What's not cool is taking away someone's choice for their own treatment. (Compl. ¶ 97)

Jevremović plausibly alleges that all these mistreatment claims are false. Compl. ¶¶ 42, 59, 63, 77, 94, 96, 98, 102. Courville did not couch these assertions as opinion or name-calling. In asserting that Jevremović set up Rabb against her will to be used as a test subject for a marketing tool, Courville is communicating to viewers that this is exactly what happened. Whether it did happen or did not happen is a question of fact that a jury may determine objectively through the weighing of evidence. These statements are actionable.

### d. False Statements Accusing Jevremović of Complicity in a Conspiracy Surrounding Bam Margera's Guardianship.

The Complaint contains numerous allegations that Courville falsely accused Jevremović of complicity in a conspiracy to push through a sham guardianship of Bam Margera. Compl. ¶¶

41, 43, 45, 47, 49-50, 53, 60, 64-65, 67-68, 70, 72, 76, 78, 85. Here is an example:

> [PEOPLE] . . . are mad that I'm uncovering a criminal conspiracy And #FREEBAM. (Compl. ¶ 43)

Elaborating on the nature of the Margera conspiracy, Courville accuses Jevremović of "human trafficking."  Courville describes herself as:

> the woman who dared use her, volunteer her time to help [Margera] out of a literal human trafficking situation (Compl. ¶ 85)

Jevremović alleges that she was never party to any such conspiracy and that Courville's accusations are entirely false.  Compl. ¶¶ 42, 44, 46, 48, 51, 54, 61, 66 79, 71, 73, 77, 79, 86.

To be sure, not every accusation that a person is a "criminal" is intended to be understood literally as factual.  People often will accuse others of behavior that is "criminal," or "getting away with murder," or engaging in "blackmail," employing such phrases as figurative pejoratives.  A pro-life advocate may accuse a doctor who performs abortions of being a "murderer."  A critic of a business may accuse an executive of "blackmail" for exerting financial leverage.  The classic example is *Greenbelt Co-op. Publishing Association v. Bresler*, 398 U.S. 6, 13 (1970), in which the Supreme Court held that taken in context, accusations of "blackmail" were not literal accusations of crime, but figurative critiques.

Yet these examples are a far cry from what was said and intended by Courville. When Courville claimed to have uncovered a criminal conspiracy, she plainly meant an actual criminal conspiracy.  When she claimed to have stood up to human trafficking, she meant real human trafficking.  Whether a conspiracy existed and whether Jevremović was a conspirator are factual issues that may be proven or disproven through evidence, in the routine manner through which juries weigh evidence.  The entire criminal law of conspiracy is built upon the supposition that judges and juries are competent to determine guilt or innocence by separating truth from falsehood

when such allegations are brought.

The language and phrasing employed by Courville powerfully reinforces that she said what she meant, and she meant what she said.  Courville claimed to have uncovered a "*literal* human trafficking situation."  Compl. ¶ 85.  Courville doubled down, touting that "*facts* ain't defamation." Compl., ¶ 27 (emphasis added).

Moreover, Courville constantly flaunted her status as a lawyer and her knowledge of law to lend verisimilitude to her defamatory attacks.  Compl. ¶ 47 ("I am a licensed attorney who believes [Margera]'s constitutional rights have been violated. Based on my education, knowledge, and experience, he has been set up by a group of criminal co-conspirators."); Compl. ¶ 68 (quoting Courville addressing a critic who questioned her assertions: "are you a lawyer? Because I am."). So too, Courville constantly assured readers that as a good lawyer her accusations were factual and accurate. Compl, ¶ 84 ("I never say anything as if it is a fact when I don't know it to be a fact.").

While Courville now mocks her own membership in the profession as she tries to walk back her constant touting of her legal skills, a reasonable jury could find that in repeatedly emphasizing her legal expertise she was communicating to readers a message on the order of: *When I say there was a conspiracy, when I say there was a crime, I mean it, because I'm a lawyer and I know I know conspiracy, and I know crime.*

### e. False Statements Impugning the Integrity of AURA's Business Practices.

The Complaint alleges that the criminal and unethical practices falsely attributed to Jevremović repeatedly contain parallel attacks on the integrity of the business practices of AURA. Compl. ¶¶ 93, 95, 97, 99, 101, 103.  As an example, Courville wrote: "But I think another way of saying that is she never had seizures prior to using AURA." Compl. ¶ 95.  AURA plausibly alleges

these statements to be false.  Compl. ¶¶ 94, 96, 98, 100, 102, 104.  Again, Courville is not engaging in hyperbolic name-calling here, but rather engaged in specific allegations of unethical and illegal business fraud and manipulation.  Far from being insulated opinion, the law has long treated such imputations of business misconduct or misfeasance as defamation *per se*, of the sort entitling a plaintiff to presumed damages.  *W.J.A. v. D.A.*, 210 N.J. 229, 240, 43 A.3d 1148, 1154 (2012) (*citing* Rodney Smolla, *Law of Defamation* § 9:17).

### B. THE "OF AND CONCERNING" ELEMENT IS SATISFIED.

Courville's claims that her defamatory statements are not "of and concerning" Jevremović or AURA are all but incoherent.  To begin with the obvious, Courville attacked Jevremović *by name* and AURA *by name* relentlessly, as recited throughout the Complaint.

It is not necessary that every defamatory phrase or sentence use the magic words "Lima" or "Jevremović" or "AURA."  "A defamatory statement need not explicitly name a plaintiff, so long as it was understood to refer to it by at least one third party: '[i]f the applicability of the defamatory matter to the plaintiff depends upon extrinsic circumstances, it must appear that some person who saw or read it was familiar with the circumstances and reasonably believed that it referred to the plaintiff.'" *Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*, 164 F.3d 186, 189 (3d Cir. 1998) (*quoting Gnapinsky v. Goldyn*, 23 N.J. 243, 128 A.2d 697, 703 (N.J.1957)); *see also Dijkstra v. Westerink*, 168 N.J. Super. 128, 401 A.2d 1118, 1120 (1979) ("It is enough that there is such reference to him that those who read or hear the libel reasonably understand the plaintiff to be the person intended."); *Mick v. American Dental Assoc.*, 49 N.J. Super. 262, 139 A.2d 570, 582 (1958) ("When defamatory words are directed at a group or class of persons rather than an individual, the plaintiff must show that he is a member of the defamed class and must establish some reasonable application of the words to himself.").

11

Courville laments that some of her defamatory attacks were only aimed at Jevremović individually, not AURA organizationally.  Yet Jevremović and AURA in their Complaint did not fire back indiscriminately, but rather did the best they could to render unto to Jevremović the libels that were Jevremović's and to AURA the libels that were AURA's.  Inevitably, there was overlap and duplication.  But this is of Courville's own making, for it was Courville who constantly intertwined her libels against both Jevremović and AURA, mentioning both in the same breath, conjoining them in the public eye.  And while libels against a corporation do not necessarily also libel the corporate executive, and vice-versa, at times to libel one *is* to libel the other, and the common law in its pragmatic common sense recognizes this reality.

There is, in fact, no hard and fast rule as to when a libel directed at a corporate employee may give rise to a claim by a corporation, or the reverse.  As this Court explained in *Minerva Marine, Inc. v. Spiliotes*, No. CV 02-2517 (WHW), 2005 WL 8175071, at *4 (D.N.J. Apr. 4, 2005):

> With regard to defamatory statements made about employees, while "a corporation, like a private individual, cannot prevail in a libel action unless the allegedly defamatory statement was published 'of and concerning' the corporation, *Church of Scientology of California v. Flynn*, 578 F. Supp. 266, 268 (D.C.Mass. 1984), "[a] corporation may be defamed by words directed at its employees if they are such as to discredit the method by which its business is conducted." *Neiman-Marcus Co. v. Lait*, 107 F. Supp. 96, 101 (S.D.N.Y. 1952).

When the reputation of a corporation and its leader are inextricably intertwined, to defame one may also be to defame the other.  The leading case explaining the principle is *Gorman v. Swaggart*, 524 So. 2d 915, (La. Ct. App. 1988).  As the court there explained:

> This case is not like that of a business corporation seeking damages for statements made about the personal morality of one of its officers or a member of its board of directors in matters unrelated to business. Gorman's personal reputation was one of MGM's primary assets. By questioning his moral integrity, the integrity of the corporation itself was called into question. In many ways, defamation of Gorman was defamation of his ministry. He was its principal spokesman. It was with him that the public identified.

12

*Id.* at 919.

Once again, as the Complaint well pleads, many readers of Courville's attacks clearly viewed Jevremović and AURA as one and the same target of Courville's accusations. And as previously noted, evidence of how real readers in fact understood a publication is probative of how average readers could understand a publication. *Tah v. Global Witness*, 413 F. Supp. 3d at 12. The court in *Tah*, indeed, relied on an "of and concerning" case in reaching this conclusion. *Id.* (*citing Vasquez v. Whole Foods Market, Inc.*, 302 F. Supp. 3d 36, 64 (D.D.C. 2018) ("A plaintiff can rely upon extrinsic evidence to show that listeners understood the statements to pertain to the plaintiff.").

Finally, on this question, as with all questions of defamatory meaning, if there is doubt, do not throw it out. If any particular defamatory statement *could* be construed as either of Jevremović or AURA, or both, it is for the trier of fact to resolve the ambiguity.

### C. COURVILLE IS RESPONSIBLE FOR REPUBLICATION

Most of the statements upon which Jevremović and AURA have sued are statements made by Courville in her own voice. Some statements, however, involve the republication by Courville of statements made by others, followed by expressions of agreement or endorsement by Courville.

Courville is responsible for the republication of defamatory statements originating with others. This is an ancient common-law principle followed nationally, and has long been the law of New Jersey. "In New Jersey, one who republishes defamatory matter is generally subject to liability as if he or she had originally published it." *Schiavone Const. Co. v. Time, Inc*., 735 F.2d 94, 96 (3d Cir. 1984) (*citing Rogers v. Courier Post Co*., 2 N.J. 393, 66 A.2d 869 (1949)); *Barres v. Holt, Rinehart & Winston, Inc*., 131 N.J. Super. 371, 330 A.2d 38 (Law Div.1974), *aff'd*, 141 N.J. Super. 563, 359 A.2d 501 (App.Div.1974), *aff'd*, 74 N.J. 461, 378 A.2d 1148 (1975) (*per*

13

*curiam*).  "It is a well settled rule of defamation law that one who republishes libelous matter is subject to liability as if he had published it originally, even though he attributes the libelous statements to the original publisher." *Kotlikoff v. The Community News*, 89 N.J. at 66, n.1.

Courville relies on the decision in *Perez v. Factory Direct of Secaucus, LLC*, No. 2:13-CV-00327 DMC, 2013 WL 5770734, at *5 (D.N.J. Oct. 23, 2013).  But *Perez* does not get Courville where she wants to go.  It was not a republication case, but a case in which the entire theory of liability was predicated on two short comments by a person responding to another's post, in circumstances in which the comments could not be reasonably understood to endorse or adopt the underlying post. *Id.* ("First, it cannot reasonably be argued that the fact that Robert Ottinger posted two short comments on the Spaulding Post resulted in Ottinger adopting the entire Post.").  In contrast, here Courville is a classic re-publisher.  And even if she were not, as the Complaint makes clear, Courville encouraged, endorsed, and amplified the reactions of her readers to her *own* defamatory attacks on Jevremović and AURA.  Courville created an escalating feedback loop in which her attacks on Jevremović and AURA fed frenzied comments by her followers. And then piling on, Courville in turn ratified and amplified those comments, escalating the frenzy.

### D. THE COMPLAINT PLAUSIBLY PLEADS ACTUAL MALICE

#### 1.    The Pleading Standard

Neither federal pleading standards emanating from *Twombly* and *Iqbal* nor substantive First Amendment principles impose on plaintiffs the burden of establishing "slam-dunk" or "smoking gun" evidence of actual malice at the *pleading* stage in defamation cases. Libel plaintiffs will essentially never have direct evidence of actual malice.  "As we have yet to see a defendant who admits to entertaining serious subjective doubt about the authenticity of an article it published, we must be guided by circumstantial evidence.  By examining the editors' actions, we try to

14

understand their motives." *Eastwood v. National Enquirer, Inc*., 123 F.3d 1249, 1253 (9th Cir. 1997).

In *Twombly*, the complaint merely stated in conclusory "information and belief" terms a critical element of the antitrust claim, the existence of a "contract, combination, or conspiracy." *Twombly*, 550 U.S. at 551.  The Court understandably held that this did not satisfy the plausibility standard.   *Iqbal* was a *Bivens* action, alleging racial and religious profiling by Attorney General John Ashcroft and FBI Director Robert Mueller in the aftermath of the terrorist attacks of September 11, 2001.  *See Bivens v. Six Unknown Names Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  The Supreme Court framed the issue as turning on whether Iqbal had plausibly pled that Ashcroft and Mueller "adopted and implemented the detention policies at issue not for a neutral, investigative reason but for the purpose of discriminating on account of race, religion, or national origin."  *Iqbal*, 556 U.S. at 677.  As in *Twombly*, the Court in *Iqbal* understandably held that Iqbal failed to meet the required standard.

Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679. A court's subjective impressions of the allegations are not part of the analysis. "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations."  *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).  A well-pleaded complaint may proceed to discovery even if it appears to the judge "that a recovery is very remote and unlikely." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  As the Court in *Twombly* acknowledged, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer*, 416 U.S. at 236).

The plausibility standard under Rules 8(a) and 12(b)(6) plainly "does not impose a probability requirement at the pleading stage." *Twombly*, 550 U.S. at 556. "The plausibility standard is not akin to a probability requirement." *Iqbal*, 556 U.S. at 678. After discovery, of course, Courville will have a second bite at the apple. Yet, even at the summary judgment stage, a court must proceed with caution. As the Supreme Court explained in *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986): "We repeat, however, that the plaintiff, to survive the defendant's motion, need only present evidence from which a jury might return a verdict in his favor. If he does so, there is a genuine issue of fact that requires a trial." *Id*. at 257 (emphasis added). The Supreme Court has acknowledged that determining the issue of actual malice on summary judgment presents difficult challenges. *Hutchinson v. Proxmire*, 443 U.S. 111, 120 n.9 (1979) ("The proof of 'actual malice' calls a defendant's state of mind into question . . . and does not readily lend itself to summary disposition.") (citations omitted). If sensitivity to the dangers of usurping the role of the jury in actual malice determinations is important at the summary judgment stage, it is exponentially more important at the pleading stage.

It must be remembered that it is only a plausible *inference* that is required. "Accordingly, Plaintiff need only plead sufficient facts that, if proven, create a plausible inference that the . . . Defendants published their statements with actual malice." *Spirito v. Peninsula Airport Commission*, 350 F. Supp. 3d 471, 481 (E.D. Va. 2018) (*citing Iqbal*, 556 U.S. at 678). Indeed, federal courts across the country frequently infer actual malice at the pleading stage based on the totality of circumstances surrounding the defamation. *See, e.g.*, *Butowsky v. Folkenflik*, No. 4:18CV442, 2019 WL 3712026, at *10 (E.D. Tex. Aug. 7, 2019) ("Plaintiff's allegations are not limited to only conclusory statements regarding actual malice, as Defendants suggest. Rather, Plaintiff alleges specific facts, taken as true, showing Folkenflik and NPR purposefully avoided

the truth in publishing the Reports . . . The Court finds Defendants' objection regarding actual

malice without merit."); *Pierson v. National Institute for Labor Relations Research*, 319 F. Supp.

3d 1100, 1111 ( [N.D. Ind. 2018) ("To the extent that Pierson was required to plead actual malice

[the allegations were]  . . . sufficient under the federal notice pleading standard."); *Maple Heights*

*News v. Lansky*, No. 1:15CV53, 2015 WL 4730737, at *2 (N.D. Ohio Aug. 10, 2015) ("In sum,

the Court determines that the allegations in Defendant Jeffrey A. Lansky's Counterclaim against

Plaintiff William C. Brownlee are more than the vague, conclusory allegations which are

disfavored under *Twombly* and *Iqbal*. The Counterclaim states a right to relief that is more than

mere speculation."); *Baker v. Joseph*, No. 12-CV-23300-UU, 2013 WL 12094322, at *4 (S.D. Fla.

May 30, 2013) ("Although it is true that this allegation is not a model of clarity, the fact that it

alleges a factual basis for Defendant's knowledge arguably carries Plaintiff's second amended

complaint 'across the line from conceivable to plausible.'") (*quoting Twombly*, 550 U.S. at 570);

*Spacecon Specialty Contractors, LLC v. Bensinger*, No. 09CV02080REBKLM, 2010 WL

3720166, at *2 (D. Colo. Sept. 15, 2010) ("Considering all of the allegations in the plaintiff's

complaint, I conclude that these allegations are sufficient to state a claim on which relief can be

granted, assuming the actual malice standard is applicable to this case."); *see also Biro v. Conde*

*Nast*, 807 F.3d 541, 545–46 (2d Cir. 2015) ("[D]istrict courts in and out of our Circuit have inferred

actual malice at the pleading stage from allegations that referred to the nature and circumstances

of the alleged defamation or previous dealings with the defendant.") (*citing Tiversa Holding Corp.*

*v. LabMD, Inc*., Civ. A. No. 13–1296, 2014 WL 1584211, at *7 (W.D. Pa. Apr. 21, 2014) ("Given

the Court's duty to accept all of Plaintiffs' factual allegations as true and to draw all inferences

therefrom in Plaintiffs' favor, the Court is satisfied at this stage in the litigation that Plaintiffs have

met their burden of pleading actual malice.")); *Lynch v. Ackley*, Civ. No. 3:12CV537 (JBA), 2012

WL 6553649, at *9 (D. Conn. Dec. 14, 2012) ("Plaintiff is therefore required to plead and eventually prove malice. Notwithstanding Defendants' arguments to the contrary, Plaintiff has adequately pled all of the required elements for his libel claims."); *Ciemniecki v. Parker McCay P.A.*, Civ. No. 09–6450 (RBK/KMW), 2010 WL 2326209, at *14 (D.N.J. June 7, 2010) ("if the actual malice standard were applicable, the Court is of the opinion that the Complaint alleges it sufficiently.").

### 2.    Jevremović's Allegations Easily Satisfy the Actual Malice Test

The Complaint plausibly alleges that Courville knew and ignored the fact that no evidence demonstrated Jevremović to be dishonest.  Compl. ¶22.  Courville also knew and ignored the fact that no evidence demonstrated Jevremović to be a criminal. Compl. ¶22.  Actual malice can be inferred when a defendant publishes a defamatory statement that contradicts information known to the defendant. *See* D. Elder, *Defamation: A Lawyer's Guide* § 7.12 (2016) (collecting cases); *Palin v. New York Times*, 940 F.3d 804, 813-16 (2d Cir. 2019).   As the Supreme Court has explained:

> The existence of actual malice may be shown in many ways. As a general rule, any competent evidence, either direct or circumstantial, can be resorted to, and all the relevant circumstances surrounding the transaction may be shown, provided they are not too remote, including threats, prior or subsequent defamations, subsequent statements of the defendant, circumstances indicating the existence of rivalry, ill will, or hostility between the parties, facts tending to show a reckless disregard of the plaintiff's rights, and, in an action against a newspaper, custom and usage with respect to the treatment of news items of the nature of the one under consideration. The plaintiff may show that the defendant had drawn a pistol at the time he uttered the words complained of; that defendant had tried to kiss and embrace plaintiff just prior to the defamatory publication; or that defendant had failed to make a proper investigation before publication of the statement in question. On cross-examination the defendant may be questioned as to his intent in making the publication.

*Herbert v. Lando*, 441 U.S. 153, 164, n. 12 (1979).

The Complaint plausibly alleges that Courville had a preconceived story line. Compl. ¶23.

18

The Complaint plausibly gives rise to the inference that Courville cynically and recklessly decided that she could gain followers and make money by advancing her concocted attacks against Jevremović.  In the traditions of yellow journalism, not wanting the facts to get in the way of a good story, Courville advanced her preconceived attacks on Jevremović, purposefully twisting and misrepresenting information in order to fit her preconceived story line. Compl. ¶23.

The law on this point is clear—a preconceived story line is often powerful evidence of actual malice.  *See, e.g.*, *Gertz v. Robert Welch, Inc*., 680 F.2d 527, 539 (7th Cir. 1982) (decision on remand from the Supreme Court, finding actual malice in editor's preconceived story line); *Goldwater v. Ginzburg*, 414 F.2d 324, 337, 339 (2d Cir. 1969) *cert. denied*, 396 U.S. 1049 (1970) (actual malice may be established through circumstantial evidence of a "predetermined and preconceived plan to malign" the plaintiff Barry Goldwater, and "a possible preconceived plan to attack Senator Goldwater regardless of the facts"); *Falwell v. Flynt*, 797 F.2d 1270, 1277 (4th Cir. 1986), *judgment rev'd on other grounds*, *Hustler Magazine, Inc., v. Falwell*, 485 U.S. 46 (1988) ("It is, however, well established that the jury may infer from the totality of the defendant's conduct toward a plaintiff 'a predetermined and preconceived plan to malign [plaintiff's] character' and cause him injury which is, of course, a functional definition of actual malice."); *Harris v. City of Seattle*, 152 Fed. Appx. 565, 568 (9th Cir.2005) ("Finally, 'evidence that a defendant conceived a story line in advance of an investigation and then consciously set out to make the evidence conform to the preconceived story is evidence of actual malice, and may often prove to be quite powerful evidence.'") (*quoting* Rodney Smolla, *Law of Defamation* § 3:71); *Eramo v. Rolling Stone, LLC*, 209 F. Supp. 3d 862, 871- 72 (W.D. Va. 2016) ("plaintiff offers evidence that could lead a jury to determine that Erdely had a preconceived story line and may have consciously disregarded contradictory evidence . . ."'evidence that a defendant conceived a story line in advance of an

19

investigation and then consciously set out to make the evidence conform to the preconceived story is evidence of actual malice, and may often prove to be quite powerful evidence.'") (*quoting Harris*, 152 Fed. Appx. at 568).

The Complaint alleges that the outlandish accusations Courville launched against Jevremović were inherently improbable, to the point that no person would make them with anything other than reckless disregard for truth or falsity. Compl. ¶ 24. It has long been established that "recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports" or when the allegations are so "inherently improbable" that only a reckless broadcaster would have put them in circulation. *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968).

The Complaint alleges that Courville took steps to deliberately avoid learning the truth regarding Jevremović, despite the ready availability of such information. Compl. ¶ 24. Yet a "person cannot close his eyes to the obvious truth, yet still claim lack of knowledge." *Hansen v. Stoll*, 130 Ariz. 454, 458 (Ariz. Ct. App. 1981). Such "a deliberate decision not to acquire knowledge of facts that might confirm" the falsity of a story is enough to establish actual malice. *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 692 (1989). As the Third Circuit has emphasized, "[w]here the defendant finds internal inconsistencies or apparently reliable information that contradicts its libelous assertions, but nevertheless publishes those statements anyway, the *New York Times* actual malice test can be met." *Schiavone Const. Co. v. Time, Inc.*, 847 F.2d 1069, 1090 (3d Cir. 1998) (hereinafter, "*Schiavone II*").

The Complaint gives rise to the evidence that Courville callously adopted defamation as a business model. The First Amendment does not protect "[t]he use of calculated falsehood*."* *Garrison v. Louisiana*, 379 U.S. 64, 75 (1964). "Although honest utterance, even if inaccurate,

20

may further the fruitful exercise of the right of free speech, it does not follow that the lie, knowingly and deliberately published about a public official, should enjoy a like immunity." *Id.*

Courville's videos aired advertisements from which she personally profited. Courville was thus incentivized to publish and disseminate shocking materials, materials regarding celebrities, and other materials designed to maximize the views received by the commercials that play during her videos. Compl. ¶ 25.  Evidence of a publisher's financial motive to defame can likewise support a finding of actual malice. *See Harte-Hanks*, 491 U.S. at 668; *Prozeralik v. Capital Cities Communications, Inc.*, 82 N.Y.2d 466, 475 (Ct. App. N.Y. 1993).  What a profit motive alone is never dispositive, it may be probative, for it "cannot be said that evidence concerning motive or care never bears any relation to the actual malice inquiry." *Harte-Hanks*, 491 U.S. at 668.  In Courville's case, where the more sensational the story the more money she made, it may be highly probative. Courville solicited and collected donations directly from viewers during her live broadcasts via YouTube. Courville operated a site to solicit donations on gofundme.com. Courville has a Patreon account in which she had 148 paying subscribers and where she solicited additional funds for in-depth videos on her accusations.  Courville also used her social media accounts to drive income through the sale of branded merchandise. The Complaint thus raises a plausible inference that Courville that defamation drove her income. Compl. ¶ 27.

Courville was confronted with clear evidence of the falsity of her stories, and a demand for a retraction, but no retraction ensued.  Compl. ¶ 28.  While not dispositive, a defendant's refusal to retract in such circumstances is evidence of actual malice. *See* Restatement Second, Torts § 580A, comment d at 219 (1977); *Golden Bear Distributing Systems v. Chase Revel, Inc*., 708 F.2d 944 (5th Cir. 1983); *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1071 (5th Cir. 1987).

*See also Burnett v. National Enquirer, Inc.*, 144 Cal. App. 3d 991, 1012, 193 Cal. Rptr. 206, 219 (Ct. App. 1983) ("We are also satisfied that even when it was thought necessary to alleviate the wrong resulting from the false statements it had placed before the public, the retraction proffered was evasive, incomplete and by any standard, legally insufficient.").

The scathing tone of Courville's statements speaks for itself.  Her personal animosity toward Jevremović drips from her every word.  Her vitriol plainly manifests common-law malice. She sought to bring Jevremović down.  While it is error to conflate common-law ill-will malice with constitutional actual malice, common-law ill-will malice is circumstantial evidence *probative* of the existence of actual malice. "[W]hile actual malice cannot be inferred from ill will or intent to injure alone, 'it cannot be said that evidence of motive or care never bears any relation to the actual malice inquiry.'" *Spirito v. Peninsula Airport Commission*, 350 F. Supp. 3d 471, 482 (E.D. Va. 2018) (*quoting Eramo v. Rolling Stone*, 209 F.Supp.3d at 872 (*quoting Harte-Hanks*, 491 U.S. at 688)); *see also Shoen v. Shoen*, 48 F.3d 412, 417 (9th Cir. 1995) ("ill will is considered circumstantial evidence of actual malice."); *and see Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 315 n.10 (5th Cir. 1995) ("[E]vidence of ill will can often bolster an inference of actual malice.").

It simply does not matter, at this stage, that Courville has arguments against the allegations of actual malice. Jevremović confidently asserts that her interpretation of Courville's conduct as grounded in actual malice is far more plausible than Courville's attempts to sanitize her own behavior.  But in the end, it does not matter, for "it is not the district court's province to dismiss a plausible complaint because it is not as plausible as the defendant's theory." *Palin v. New York Times*, 940 F.3d. at 172. "The test is whether the complaint is plausible, not whether it is less plausible than an alternative explanation." *Id.* at 172.

"If all a publisher needed to do was to deny the allegation, all implied defamation suits would be dead on arrival." *Manzari v. Associated Newspapers Ltd.*, 830 F.3d 881, 893 (9th Cir. 2016). If this were not the law, "mere swearing could, as a matter of law, defeat any claim to which the *New York Times* standards are applicable." *Guam Federation of Teachers. v. Ysrael*, 492 F.2d 438, 439 (9th Cir. 1974), *cert. denied*, 419 U.S. 872 (1974) (*citing St. Amant v. Thompson*, 390 U.S. at 732). The Third Circuit has recognized that "[a] plaintiff may 'rarely be successful in proving awareness of falsehood from the mouth of the defendant himself.'" *Schiavone II*, 847 F.2d at 1089 (*quoting Herbert v. Lando*, 441 U.S. at 170). "Therefore, objective circumstantial evidence can suffice to demonstrate actual malice." *Schiavone II*, 847 F.2d at 1089. "Such circumstantial evidence can override defendants' protestations of good faith and honest belief that the report was true." *Id.*

The cumulative weight of the various indicia probative of actual malice set forth in the Complaint easily satisfies Jevremović's burden at the pleading stage.

## III.   CONCLUSION

For all of the foregoing reasons, Defendant's Motion to Dismiss Jevremović's Complaint should be denied.

Respectfully submitted,

*s/Sherri A. Affrunti*

Sherri A. Affrunti, Esq. (SBN 017981996)
THE LAW OFFICE OF SHERRI A. AFFRUNTI, LLC
301 Oxford Valley Road
Bldg. 1800, #1803, 2d Floor, Jackson Suite
Yardley, PA 19067
Telephone:  267.392.5842
Email:  sherri@affruntilaw.com

Neville L. Johnson, Esq. (Admitted *Pro Hac Vice*)
Adam M. Winokur, Esq. (Admitted *Pro Hac Vice*)
JOHNSON & JOHNSON LLP
439 North Canon Drive, Suite 200
Beverly Hills, California 90210
Telephone: (310) 975-1080
Facsimile: (310) 975-1095
Email: njohnson@jjllplaw.com
          awinokur@jjllplaw.com

Rodney Smolla Esq. (Admitted *Pro Hac Vice*)
7 Brook Road
P.O. Box 77
Strafford, Vermont 05072
Telephone: (864) 373-3882
Email: rodsmolla@gmail.com

*Attorneys for Plaintiffs Lima Jevremović and*
*Autonomous User Rehabilitation Agent, LLC*

Dated:  October 24, 2022