**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

LIMA JEVREMOVIĆ, an individual; and
AUTONOMOUS USER REHABILITATION
AGENT, LLC, a Delaware Limited Liability
Company,

    Plaintiffs,

vs.

BRITTANY JEREAM COURVILLE, an
individual,

    Defendant.

CIVIL ACTION NO.: 3:22-cv-04969-ZNQ-RLS

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION TO SEAL AND/OR REDACT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1
STATEMENT OF FACTS ......................................................................................................... 2
ARGUMENT ............................................................................................................................... 3
    I.     To Overcome the Strong Presumptive Right of Public Access to Judicial Records, Plaintiffs Must Meet a Staggeringly High Bar ....................................................... 3
    II.    In Seeking to Seal AURA's Identity, Plaintiffs' Motion Seeks an Extraordinary Remedy Which is Rarely Granted ........................................................................... 5
    III.   Plaintiffs Fail to Demonstrate Specific Harm ......................................................... 8
CONCLUSION ........................................................................................................................... 11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*3376 Lake Shore, LLC v. Lamb's Yacht Ctr., Inc.*,
  No. 3:14-CV-632-J-34PDB, 2014 WL 12621574 (M.D. Fla. Aug. 25, 2014) ....................... 6, 9

*A.A. v. Gramiccioni*,
  442 N.J. Super. 276 (App. Div. 2015) ....................................................................................... 7

*A.B.C. v. XYZ Corp.*,
  282 N.J. Super. 494 (App. Div. 1995) ................................................................................... 1, 6

*In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*,
  924 F.3d 662 (3d Cir. 2019) ............................................................................................. passim

*B.L. v. Fetherman*,
  2023 WL 1818402 (D.N.J. Feb. 8, 2023), *aff'd*, No. CV 22-3471, 2023 WL
  3004853 (D.N.J. Apr. 18, 2023) ..................................................................................... 6, 10, 11

*Bornstein v. Cnty. of Monmouth*,
  2014 WL 4273301 (D.N.J. Aug. 29, 2014), *aff'd*, 2014 WL 6386804 (D.N.J.
  Nov. 14, 2014) .......................................................................................................................... 11

*Connick v. Myers*,
  461 U.S. 138 (1983) ................................................................................................................... 8

*Den 8888, LLC v. Navajo Express, Inc.*,
  No. 21-CV-00321-STV DEN, 2021 WL 463623 (D. Colo. Feb. 9, 2021) ................................ 7

*Doe v. Kamehameha Sch./Bernice Pauahi Bishop Est.*,
  596 F.3d 1036 (9th Cir. 2010) ................................................................................................. 10

*Doe v. Megless*,
  654 F.3d 404 (3d Cir. 2011) ...................................................................................................... 8

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*,
  472 U.S. 749 (1985) ................................................................................................................... 8

*Edgewood Manor Apt. Homes LLC v. RSUI Indem. Co.*,
  2010 WL 2430996 (E.D. Wis. June 14, 2010) .......................................................................... 7

*KT State & Lemon LLLP v. Westchester Fire Ins. Co.*,
  No. 8:21-CV-1941-TPB-AAS, 2021 WL 5083745 (M.D. Fla. Nov. 2, 2021) ......................... 6

*Leamer v. Fauver*,
  2008 WL 630046 (D.N.J. Mar. 5, 2008) .................................................................................. 11

*Pansy v. Borough of Stroudsburg*,
    23 F.3d 772 (3d Cir. 1994) ........................................................................................... 8

*S. Fin. Grp., LLC v. Stoess*,
    2018 WL 10758704 (W.D. Ky. June 22, 2018) ........................................................... 7

*Signicast, LLC v. Fireman's Fund Ins. Co.*,
    920 F. Supp. 2d 967 (E.D. Wis. 2013) ......................................................................... 7

*Smith v. Westminster Mgmt., LLC*,
    No. CV JKB-17-3282, 2018 WL 572867 (D. Md. Jan. 26, 2018) ............................... 6

*Verni v. Lanzaro*,
    404 N.J. Super. 16 (App. Div. 2008) ........................................................................... 9

Defendant Brittany Jeream Courville ("Defendant" or "Courville") hereby respectfully submits her Opposition to the Motion to Seal filed by Plaintiffs Lima Jevremović ("Jevremović") and Autonomous User Rehabilitation Agent, LLC ("AURA" and, collectively, "Plaintiffs") to seal and/or redact counsel's certification listing AURA's members and their citizenship.

## PRELIMINARY STATEMENT

Plaintiffs' Motion seeks an extraordinary remedy: to seal the identities of the people who are suing Courville for defamation. But Plaintiffs face an uphill battle. The Third Circuit has repeatedly held that the "public right of access" "begins with a presumption in favor of public access," putting "a thumb on the scale in favor of openness." Plaintiffs' attempt to downplay the significance of their exceptional request—arguing that the sealed information would not be relevant to the merits of this dispute—has been consistently rejected by New Jersey courts, which have held that there are "virtually limitless" ways in which such anonymity would infringe on Defendant's right to a fair trial, including restricting Defendant's ability to conduct discovery, motion practice and jury selection. *A.B.C. v. XYZ Corp.*, 282 N.J. Super. 494, 504-05 (App. Div. 1995). Sealing motions are therefore presumptively denied except for the exceedingly rare case where the type of information being sought is subject to sealing **and** where the movant can demonstrate specific, concrete and credible threats of harm. This case does not present such extraordinary circumstances.

Plaintiffs' Motion relies on the vague and unsupported accusation that Courville, through her social media followers, is somehow likely to do something with the information about AURA's members' names. Setting aside the incredibly speculative nature of these arguments (belied by Courville's Declaration), New Jersey courts are clear that even general allegations of threats are insufficient to warrant sealing. Rather, the movant must detail *specific* incidents where a credible

1

threat was made. And Plaintiffs' Motion offers nothing more than conclusory allegations of "threats" and "harassment," without a single concrete example. Moreover, courts routinely hold that it is improper for a plaintiff LLC to refuse to provide the names of its membership.

Plaintiffs' attempt to hide AURA's membership is particularly inappropriate here given that Plaintiffs' Complaint is predicated on Courville's allegedly defamatory statements directed at AURA's business practices. It would be impossible for Defendant to thoroughly defend against these allegations—and for the public to appreciate the legal process involved—without knowing the membership of AURA. And the public's right of access applies with even greater force here considering the substantial public interest in this litigation. Indeed, this case stems from Courville's critical opinions regarding AURA's provision of healthcare, including statements concerning the death of a woman who was in Plaintiffs' care. The public has a right to access these judicial proceedings concerning this matter of public health, and Plaintiffs, in purposefully availing themselves of the jurisdiction of this Court, are not entitled to duck behind a veil of secrecy.

## STATEMENT OF FACTS

Plaintiff, Lima Jevremović, is the founder and CEO of Plaintiff AURA (Compl. ¶ 2), which provides mental health treatment services for substance abuse disorders. *Id.* ¶ 10-11. AURA has engaged "celebrities, influencers, and persons in the public eye" to "develop a viral, word-of-mouth buzz surrounding" its services. *Id.* ¶ 11. For instance, AURA obtained the support of celebrity Bam Margera, and after Mr. Margera's relapse, Jevremović obtained a guardianship over him. *Id.* ¶ 14-15. Under Jevremović's guardianship, Mr. Margera has been "involuntarily placed" in various drug rehabilitation facilities. *Id.* ¶ 16.

In addition to providing its services to celebrities to create "viral buzz," AURA's promotional campaign has also focused on providing free-of-charge services to less fortunate

individuals. *Id.* ¶ 11-12.  For instance, AURA provided its services to Amanda Rabb, a homeless, drug-addicted woman. *Id.* ¶ 12.  Much like Mr. Margera, Jevremović obtained court-ordered, involuntary treatment for Ms. Rabb, which AURA provided. *Id.* ¶ 12, 41.  Ms. Rabb passed away on May 9, 2021. *Id.* ¶ 13.

Defendant Courville has taken an interest in conservatorship cases and regularly posts about her "theories" on Instagram and her YouTube channel. *Id.* ¶ 8-9, 17-18.  This action arises from opinion statements made by Courville on social media concerning various topics, including Plaintiffs' treatment of Ms. Rabb (*id.* ¶ 41, 58, 62, 76, 93, 95, 97, 101) and AURA's business practices. *Id.* ¶ 93, 95, 97, 99, 101, 103.

On May 30, 2023, after the parties fully briefed Defendant's Motion to Dismiss, the Court issued an Order to Show Cause instructing that "the citizenship of a limited liability company is determined by the citizenship of its members," and directing AURA to "e-fil[e] a certification or Amended Complaint that sets forth a valid basis for [subject matter] jurisdiction."  Dkt. #24.  On June 6, 2023, Plaintiffs filed both an Amended Complaint and a Certification of Counsel in Response to the Court's Order to Show Cause (the "Certification"), which listed the names and states of residence of AURA's members.  The Amended Complaint was publicly filed, but not the Certification.  Plaintiffs concurrently filed the instant Motion to permanently seal the Certification. Dkt. #27.

## ARGUMENT

### I. To Overcome the Strong Presumptive Right of Public Access to Judicial Records, Plaintiffs Must Meet a Staggeringly High Bar

As Plaintiffs acknowledge (Mot. at 5), there is a "rigorous common law right of access" which governs this Motion and protects the public's ability to observe judicial records and proceedings. *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.,* 924 F.3d 662, 670 (3d Cir.

3

2019). The "public right of access" "begins with a presumption in favor of public access," putting "a thumb on the scale in favor of openness." *Id.* at 670, 676. This "strong presumption" of a right of access "antedates the Constitution." *Id.* at 672, 676 (citing *Bank of Am. Nat'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 343 (3d Cir. 1986)).

This right of access serves key judicial interests, including "promot[ing] public confidence in the judicial system by enhancing testimonial trustworthiness and the quality of justice dispensed by the court." *In re Avandia*, 924 F.3d at 672 (citing *Littlejohn v. BIC Corp.*, 851 F.2d 673, 678 (3d Cir. 1988)). The public's right of access also "diminishes possibilities for injustice, incompetence, perjury, and fraud." *Id.* Moreover, "the very openness of the process should provide the public with a more complete understanding of the judicial system and a better perception of its fairness." *Id.* These interests apply with even greater force in cases that implicate the public interest, such as cases which deal with public health or the safety of a particular drug or medical treatment. *Id.* at 672, 676 (denying motion to seal documents filed in connection with summary judgment motion, and holding that the public's right of access is "particularly important in a case such as this one," since the case is "important to public health and safety" and "implicates the public's trust in a well-known and (formerly) widely-used drug.").

The party seeking to overcome the "strong presumption" of public access bears the burden of showing "that the interest in secrecy outweighs the presumption." *Id.* at 672, 676 (citing *Bank of Am.*, 800 F.2d at 344). The movant must show "that the material is the kind of information that courts will protect **and** that disclosure will work a clearly defined and serious injury to the party seeking closure." *Id.* at 672 (citing *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994)) (emphasis added). "In delineating the injury to be prevented, specificity is essential." *Id.* (citing *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001)). Critically, "[b]road allegations of harm, bereft

4

of specific examples or articulated reasoning, are insufficient." *Id.* Where a declaration merely "contains broad, vague, and conclusory allegations of harm," it is "insufficient to overcome the presumption of public access." *Id.* at 678.

Far beyond the "strong presumption" of access which attaches to the "rigorous common law right" (*id.* at 670), the "First Amendment right of access requires a much higher showing than the common law right [of] access before a judicial proceeding can be sealed." *Id.* at 673 (quoting *In re Cendant Corp.*, 260 F.3d at 198 n.13). Under the First Amendment framework, any restriction on the right of public access is "evaluated under strict scrutiny." *Id.* (citing *PG Publ'g Co. v. Aichele*, 705 F.3d 91, 104 (3d Cir. 2013)). A party seeking to seal judicial records can only rebut the presumption of access by demonstrating an "overriding interest in excluding the public based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* (citing *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1061 (3d Cir. 1984)); *see also id.* ("to limit the public's access to civil trials there must be a showing that the denial serves an important governmental interest and that there is no less restrictive way to serve that governmental interest.").

## II. In Seeking to Seal AURA's Identity, Plaintiffs' Motion Seeks an Extraordinary Remedy Which is Rarely Granted

The first hurdle Plaintiffs have to clear is a showing that "the material [sought to seal] is the kind of information that courts will protect." *Id.* at 672 (citing *Miller*, 16 F.3d at 551). Plaintiffs fail to do so. Plaintiffs' Motion seeks to conceal the very identity of one of the Plaintiffs, a severe remedy which would seriously infringe on Defendant's right to a fair trial. As a Plaintiff in this action, AURA has chosen to initiate this lawsuit against Courville, and Courville is entitled to know the identities of those against whom she must defend. Courts across the country routinely deny motions, brought by limited liability companies, seeking to seal the identities of their

members.  *See, e.g. Smith v. Westminster Mgmt., LLC*, No. CV JKB-17-3282, 2018 WL 572867, at *5–7 (D. Md. Jan. 26, 2018) (denying motion to seal LLC's members' identities, since those members "comprise the parties in this case," and "chose to avail themselves of federal jurisdiction on the basis of diversity of citizenship…and knew (or should have known) that doing so would require an exposition of their members for the purpose of determining citizenship…the members of an LLC are not unsuspecting bystanders caught in the litigational crossfire."); *3376 Lake Shore, LLC v. Lamb's Yacht Ctr., Inc.*, No. 3:14-CV-632-J-34PDB, 2014 WL 12621574, at *2 (M.D. Fla. Aug. 25, 2014) (same); *KT State & Lemon LLLP v. Westchester Fire Ins. Co.*, No. 8:21-CV-1941-TPB-AAS, 2021 WL 5083745, at *1–2 (M.D. Fla. Nov. 2, 2021) (denying motion to seal: "[p]rotecting the identities of individuals involved in the ownership structure of a litigant is typically not regarded as a sufficient basis for sealing court records.") (citing cases).

In rejecting such motions to seal as a matter of course, courts recognize the nearly limitless complications and resultant harms to a defendant from concealing a corporate plaintiff's identity. As made clear by the New Jersey Court of Appeals,

> "[c]ourt proceedings are public proceedings and the names of the parties and their addresses are essential not only to identify the various parties, but also in connection with aspects of the judicial process such as discovery, motion practice, jury selection, and execution to enforce money judgments. …allowing a plaintiff in a case such as this, where a jury is demanded, to proceed anonymously against a defendant [], not only is contrary to our public policy of open judicial forums and public disclosure, but would create serious problems of fairness to the defendant in a jury trial, as well as in such preliminary matters as the process of selection of a fair and impartial jury.  Defendant might well be prejudiced in defending against a complaint by being perceived as a wrongdoer by the very fact of anonymity alone. .... The potential implications and complications are virtually limitless."

*A.B.C.*, 282 N.J. Super. at 504-05.  The principles of judicial transparency apply with even greater force where the corporate entity is the "plaintiff[] who had sought to initiate litigation."  *Smith*, 2018 WL 572867, at *6; *see also B.L. v. Fetherman*, 2023 WL 1818402, at *4–5 (D.N.J. Feb. 8, 2023), *aff'd*, No. CV 22-3471, 2023 WL 3004853 (D.N.J. Apr. 18, 2023) (noting that sealing a

6

plaintiff's identity is "an extraordinary measure reserved for unique cases."); *A.A. v. Gramiccioni*, 442 N.J. Super. 276, 284–86 (App. Div. 2015) (holding that in only "rare" and "exceptional case[s]" may a plaintiff seal their identity).

Plaintiffs brush aside this laundry list of key interests, arguing that "[t]he identities of the owners of AURA will serve no purpose apart from satisfying the Court that subject matter jurisdiction exists." Mot. at 7. Not only is this wrong, but even the underpinnings of a court's decision regarding subject matter jurisdiction are routinely held to require public access and outweigh the privacy interests of an LLC's members. *See, e.g., Den 8888, LLC v. Navajo Express, Inc.*, No. 21-CV-00321-STV DEN, 2021 WL 463623, at *2–3 (D. Colo. Feb. 9, 2021) (denying motion to seal citizenship information of plaintiff LLC, and rejecting plaintiff's argument that the "identity of the members is not a central issue to this case…The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.' Therefore, the public interest in understanding the basis for the court's jurisdiction—in this case, the identity and citizenship of the members—outweighs the plaintiff's interest in keeping that information confidential.") (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998); *3376 Lake Shore*, 2014 WL 12621574, at *2) (same); *Signicast, LLC v. Fireman's Fund Ins. Co.*, 920 F. Supp. 2d 967 (E.D. Wis. 2013) (denying motion to seal the identities of the plaintiff LLC's members, noting that the LLC members' desire for privacy is not a "valid reason for removing documents that influence or underpin a judicial decision from the public record in civil litigation"); *S. Fin. Grp., LLC v. Stoess*, 2018 WL 10758704, at *1 (W.D. Ky. June 22, 2018) (denying motion to seal LLC members' identities); *Edgewood Manor Apt. Homes LLC v. RSUI Indem. Co.*, 2010 WL 2430996, at *5 (E.D.

Wis. June 14, 2010) (unsealing jurisdictional statement which disclosed identities of LLC's members).

Plaintiffs' attempt to seal AURA's identity is particularly improper given the nature of Plaintiffs' claims in this case. AURA's claims are premised on Courville's allegedly defamatory statements regarding AURA and its business practices. Given that AURA can only act through its members, it would be impossible for Courville to fully defend herself against these allegations without knowing the identity of AURA's members. *See Doe v. Megless*, 654 F.3d 404, 410 (3d Cir. 2011) (holding that sealing a party's identity is particularly unjustified where their identity is "relevant to the outcome of the claim.").

Finally, this case implicates the public interest: the defamation claims stem from public critiques of Plaintiffs' provision of healthcare services. This discussion of public health is clearly in the public interest, and "occup[ies] the 'highest rung of the hierarchy of First Amendment values." *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 759 (1985) (*Connick v. Myers*, 461 U.S. 138, 145 (1983)); *see also In re Avandia*, 924 F.3d at 677 (holding that the right of public access is "particularly important" in cases concerning "the public's trust" in the provision of healthcare). As the Third Circuit has recognized, "[c]ircumstances weighing against confidentiality exist when confidentiality is being sought over information important to the public health and safety." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994).

### III. Plaintiffs Fail to Demonstrate Specific Harm

Plaintiffs also fail to clear the second hurdle for the extraordinary remedy of sealing: demonstrating that "disclosure will work a clearly defined and serious injury to the party seeking closure." *In re Avandia*, 924 F.3d at 672 (citing *Miller*, 16 F.3d at 551). Far from setting forth any "clearly defined" or "serious" injury, Plaintiffs offer vague, conclusory, and highly speculative

allegations of harm which fall far short of the prohibitively high bar a movant must meet to infringe on the common law and First Amendment rights of public access.

Specifically, Plaintiffs vaguely argue that Courville's undefined "audience" has "threaten[ed] and harass[ed] Jevremović" over the "internet," and is likely to do the same to AURA's members. *See, e.g.* Mot. At 8.  But these allegations—even if true (and they are not, as set forth in Courville's accompanying Declaration)—do not qualify for sealing.  New Jersey courts have recognized that freedom from "harassment, while important to the litigant, will not outweigh the presumption of open judicial proceedings even in relatively uncomplicated and non-notorious civil litigation." *Verni v. Lanzaro,* 404 N.J. Super. 16, 24 (App. Div. 2008).  And, in any event, Plaintiffs' allegations are devoid of any factual specificity, as they fail to point to a single ***specific and credible*** threat or incident of harassment.[1]  Mot*.* at 8.  This is insufficient; "In delineating the injury to be prevented, specificity is essential…Broad allegations of harm, bereft of specific examples or articulated reasoning, are insufficient…broad, vague and conclusory allegations of harm" are "insufficient to overcome the presumption of public access." . *In re Avandia*, 924 F.3d at 672, 678 (citing *In re Cendant*, 260 F.3d at 194).

Recent jurisprudence from this judicial district confirms that Plaintiffs cannot meet the high threshold for the extraordinary remedy they seek.  New Jersey courts reject motions to seal which provide far more specific and persuasive allegations detailing credible threats of physical harm.

---

[1] The only remotely specific incident Plaintiffs identify is Jevremović's vague reference to when, allegedly, "unknown third parties attempted to gain entry while my family was home." Decl. of Lima Jevremović in Support of Motion to Seal ("Decl."), ¶3. As Jevremović's own declaration makes clear, these parties were "unknown," and there is nothing connecting them to Courville. *Id.* There is similarly nothing suggesting that these unknown parties meant any harm. The only other (vague and general) alleged harm referenced by Plaintiffs is that Courville allegedly could publicly disseminate the unsealed information regarding AURA's members. *Id.* ¶4. In so arguing, Jevremović appears to contend that the harm resulting from public access would be the risk of public access. This argument is circular and baseless, especially since public access is a feature, not a bug, of the First Amendment protection which Plaintiffs concede applies here. Mot. at 6-7. Further, an LLC simply does not have a "legitimate privacy interest in [its] members' identities and its preference that the identities remain private is not a valid reason to overcome the presumption of public access." *See, e.g. 3376 Lake Shore*, 2014 WL 12621574, at *2.

9

For instance, in *Doe v. Felician University*, the plaintiff alleged that she was the target of "harassment," "stalking, cyberbullying, and threats of physical violence." 2019 WL 2135959, at *1 (D.N.J. May 15, 2019).  Plaintiff "specifically recall[ed] being called several derogatory names and receiving physical threats online," and recounted incidents where "third-party individuals stalked and followed [her] and even called her home with threats." *Id.* at *1.  In light of all these threats of physical violence, plaintiff sought to seal her identity, fearing "that public identification will result in exacerbated threats of physical violence and harassment," both to her, her "family, and the children under her care as a nanny." *Id.* at *3-4.  And yet, even with such allegations—which are far more specific and fulsome than those made by the Plaintiffs in this Motion—the court held that these alleged threats were insufficient to warrant the extreme measure of concealing a party's identity.  *Id.* at *4.  Finding that the alleged online threats of physical violence only amounted to expressions of "disapproval and frustration," the court held that such statements did "not amount to threats," and could not justify sealing a party's identity.  *Id.* at *4.  As plaintiff "fail[ed] to cite a ***specific, credible*** threat," the extraordinary remedy of sealing a party's identity was not warranted.  *Id.* at *4  (emphasis added); *see also Doe v. Kamehameha Sch./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1044-45 (9th Cir. 2010) (affirming denial of four minor students' request to seal their identity, even though plaintiffs were the subject of express online threats, because these statements amounted to online frustration with the plaintiffs, and that "many times people say things anonymously on the internet that they would never say in another context and have no intention of carrying out").

Similarly, in *B.L. v. Fetherman*, the court rejected plaintiffs' attempt to conceal their identity, even though plaintiffs alleged that following their initiation of the lawsuit, they were the target of online "threats," were repeatedly contacted in "anger" online, they received "alarming

10

comments" in private online messages, both they and their families were publicly identified, an "online post" was created which "encouraged people to contact [plaintiff's college] to pressure the school to rescind its offer of acceptance," and people "posted a residential address of the person they suspect to be the plaintiff online" and even "encouraged vandalism." 2023 WL 1818402, at *4–5. The court found that these incidents "amount[] to mere frustration rather than a credible risk of harm" and held that the allegations in support of sealing referred "only to some vague possibility of physical harm." *Id.*; *see also Bornstein v. Cnty. of Monmouth*, 2014 WL 4273301, at *2–3 (D.N.J. Aug. 29, 2014), *aff'd*, 2014 WL 6386804 (D.N.J. Nov. 14, 2014) (denying motion to seal a correctional institution's security footage, even though the footage would allegedly "allow for potentially interested and violent parties to study the footage in order to potentially conduct an assault" on the correctional institution, and even though "members of the public that have family or friends confined in [the correctional institution] could evaluate the restricted areas and response movements of correctional officers to assist in a jailbreak," because such allegations were "vague and speculative…the moving party must make a particularized showing of harm that *would* result if the documents in question are publicly accessible, rather than merely making generalized allegations of harm that *might* occur.") (emphasis in original); *Leamer v. Fauver*, 2008 WL 630046, at *1–4 (D.N.J. Mar. 5, 2008) (denying motion to seal "mental health records of inmate[]" in prison, despite declaration of inmate's healthcare supervisor averring "that disclosure could jeopardize the safety of staff members who have portrayed [the] inmate in what the inmate believes to be a negative light," where these "assertions of harm are scant and conclusory. There are no specific examples of harm.").

## CONCLUSION

In light of the clear public interest in the claims raised in this litigation, the presumptive right of the public to access these judicial proceedings, and the Defendant's right to a fair trial,

Defendant, Brittany Jeream Courville, respectfuly requests that the Court deny Plaintiffs' Motion in its entirety.

Respectfully submitted,

COZEN O'CONNOR, PC
A Pennsylvania Professional Corporation
Attorney for Defendant Brittany Jeream Courville

BY: *[signature]*

John P. Johnson, Jr.
Keven T. Kerns
*(D.N.J Admission Forthcoming)*
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Telephone: 215-665-6912
Fax: 215-372-2352
jjohnson@cozen.com
kkerns@cozen.com

Tamar Wise (*Admitted Pro Hac Vice*)
3 WTC
175 Greenwich Street, 55th Floor
New York, NY 10172
Telephone: 212-883-4924
Fax: 646-461-2054
twise@cozen.com

Dated: June 20, 2023