**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| LIMA JEVREMOVIĆ, an individual; and AUTONOMOUS USER REHABILITATION AGENT, LLC, a Delaware Limited Liability Company, | : : : : : : | |
| Plaintiffs, | : : : | CIVIL ACTION NO.: 3:22-cv-04969-ZNQ-RLS |
| vs. | : : : : : | |
| BRITTANY JEREAM COURVILLE, an individual; PREM BENIPAL, an individual; and THAT SURPRISE WITNESS TV LLC, a New Jersey limited liability corporation. | : : : : : | |
| Defendant. | : : | |

<u>**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR**</u>
<u>**MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT PURSUANT**</u>
<u>**TO FED. R. CIV. P. 12(b)(6)**</u>

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS ......................................................................................... 5

ARGUMENT ........................................................................................................ 10

    I.     Plaintiffs' Defamation Claims Must Be Dismissed ................................... 10

         A.    The Second Amended Complaint Does Not Salvage the Deficient
              Defamation Claims ...................................................................... 10

              1.    The Challenged Statements in the Second Amended Complaint
                     are Still Protected Opinion. .......................................... 11

              2.    Plaintiffs Still Fail to Adequately Plead Actual Malice ............... 13

              3.    The Additional Challenged Statements are not Defamatory ........ 15

    II.    Plaintiffs' Additional Claims Are Inadequately Pled and Must Be
        Dismissed .......................................................................................... 23

         A.    Jevremović's False Light Claim Must Be Dismissed .............................. 23

         B.    Jevremović's Intrusion Upon Seclusion Claim Must Be Dismissed ........ 23

         C.    Jevremović's Harassment Claims Must Be Dismissed ........................... 25

         D.    Jevremović's Emotional Distress Claims Must Be Dismissed ................ 25

         E.    Plaintiffs' Unfair Competition Claims Must Be Dismissed ................... 28

    III.    The Claims Against Benipal and the LLC Must Be Dismissed......................... 30

         A.    There are no Plausible Allegations Supporting any Claims Against
              Benipal and the LLC .................................................................. 30

          B.    The Defamation-Based Claims Against Benipal and the LLC
              are Barred by the Statutes of Limitations ................................... 31

    CONCLUSION ................................................................................................ 33

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A.Z. v. Doe,*
2010 WL 816647 (N.J. Super. Ct. App. Div. Mar. 8, 2010)....................................16

*Air Wis. Airlines Corp. v. Hoeper,*
571 U.S. 237 (2014).................................................................................................16

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009).......................................................................................5, 10, 31

*Bank of Hope v. Chon,*
2017 WL 39554 (D.N.J. Jan. 4, 2017).....................................................................32

*Bisbee v. John C. Conover Agency, Inc.,*
186 N.J. Super. 335 (N.J. Sup. Ct. App. Div. 1982)................................................23

*Boyd v. New Jersey Dep't of Corr.,*
2013 WL 1163507 (D.N.J. Mar. 18, 2013)..............................................................31

*In re Burlington Coat Factory Sec. Litig.,*
114 F.3d 1410 (3d Cir. 1997).....................................................................................7

*Campbell v. Doe,*
2017 WL 349289 (D.N.J. Jan. 24, 2017)..................................................................32

*Cibenko v. Worth Publishers, Inc.,*
510 F. Supp. 761 (D.N.J. 1981)...............................................................................23

*Clark v. Cox,*
2018 WL 259770 (D.N.J. Jan. 2, 2018)...................................................................25

*D'Ambly v. Exoo,*
2021 WL 5083816 (D.N.J. Nov. 1, 2021) .........................................................23, 24

*Dashore v. Anderson,*
2019 WL 4727926 (D.N.J. Sept. 27, 2019) .......................................16, 17, 21, 22

*Edelman v. Croonquist,*
2010 WL 1816180 (D.N.J. May 4, 2010) ..........................................11, 17, 22, 27

*Fogarty v. Household Fin. Corp. III,*
2015 WL 852071 (D.N.J. Feb. 25, 2015) ............................................................27, 28

*Foxtons, Inc. v. Cirri Germain Realty*,
   2008 WL 465653 (N.J. Super. Ct. App. Div. Feb. 22, 2008) ............................................18, 19

*Gertz v. Robert Welch Inc.*,
   418 U.S. 323 (1974)..............................................................................................................11

*Green v. NCO Inovision*,
   2010 WL 147934 (D.N.J. Jan. 11, 2010) ................................................................................16

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
   491 U.S. 657 (1989)..............................................................................................................14

*Heartland Payment Sys., LLC v. Carr*,
   2021 WL 302918 (D.N.J. Jan. 29, 2021) ..........................................................................28, 29

*Innovasystems, Inc. v. Proveris Scientific Corp.*,
   2014 WL 3887746 (D.N.J. Aug. 6, 2014) ...............................................................................29

*Itiowe v. U.S. Gov't*,
   553 F. App'x 271 (3d Cir. 2014) ............................................................................................24

*Jevremović v. Courville*,
   No.: 23STRO05821, Order Granting Courville's Special Motion to Strike
   (Cal. Super. Ct. L.A. Cty., Dec. 27, 2023).............................................................................25

*Johnson v. City of Hoboken*,
   2023 WL 4717636 (N.J. Super. Ct. App. Div. July 25, 2023)..................................................27

*Jorjani v. New Jersey Institute of Tech.*,
   2019 WL 1125594 (D.N.J. Mar. 12, 2019)..............................................................11, 17, 22

*K.J. v. Greater Egg Harbor Reg'l High Sch. Dist. Bd. of Educ.*,
   2015 WL 5039460 (D.N.J. Aug. 26, 2015) .............................................................16, 21, 22

*Karnell v. Campbell*,
   206 N.J. Super. 81 (App. Div. 1985) ........................................................................................2

*Kennedy v. Am. Airlines Inc.*,
   195 F. Supp. 3d 646 (D.N.J. 2016) .........................................................................................26

*Klagsbrun v. Va'ad Harabonim of Greater Monsey*,
   53 F. Supp. 2d 732 (D.N.J. 1999), *aff'd*, 263 F.3d 158 (3d Cir. 2001) ..............................15, 16

*Kraft v. Wells Fargo & Co.*,
   2019 WL 3453271 (D.N.J. Jul. 31, 2019)................................................................................19

*Lassoff v. New Jersey*,
   2006 WL 5509595 (D.N.J. Jan. 31, 2006) ...............................................................................32

*Lee v. TMZ Prods. Inc*,
    710 F. App'x 551 (3d Cir. 2017) ............................................................13

*Malcolm v. Bray*,
    2019 WL 4918105 (D.N.J. Oct. 4, 2019) ...................................................25, 26

*Marino v. Westfield Bd. of Educ.*,
    2017 WL 216691 (D.N.J. Jan. 18, 2017) ...................................................23

*McBride v. Township of Washington*,
    2020 WL 3396802 (D.N.J. Jun. 19, 2020) ..................................................16

*Mosley v. Delaware River Port Auth.*,
    2000 WL 1534743 (D.N.J. Aug. 7, 2000) ...................................................27

*Mu Sigma, Inc. v. Affine, Inc.*,
    2013 WL 3772724 (D.N.J. Jul. 17, 2013) ...................................................28

*New Jersey Optometric Ass'n v. Hillman-Kohan Eyeglasses, Inc.*,
    144 N.J. Super. 411 (N.J. Super. 1976) ....................................................29

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964) ..............................................................................14

*Perez v. Factory Direct of Secaucus, LLC*,
    2013 WL 5770734 (D.N.J. Oct. 23, 2013) .............................................10, 22, 31

*Raciti v. Rushmore Loan Mgmt. Servs., LLC*,
    412 F. Supp. 3d 462 (D.N.J. 2019) ..........................................................26

*Reaves v. Monmouth Univ.*,
    2022 WL 17722803 (D.N.J. Dec. 15, 2022) .................................................25

*Reed v. Scheffler*,
    218 F. Supp. 3d 275 (D.N.J. 2016), *aff'd*, 771 F. App'x 162 (3d Cir. 2019) ...................11, 21

*Salzano v. N. Jersey Media Grp. Inc.*,
    201 N.J. 500 (2010) ..............................................................................16

*Schier v. Unifrutti of Am., Dovex Corp.*,
    1994 WL 897202 (D.N.J. Sept. 16, 1994) ...................................................32

*Schwartz v. Worrall Pubs., Inc.*,
    258 N.J. Super. 493 (App. Div. 1992) ......................................................14

*Sciore v. Phung*,
    2022 WL 950261 (D.N.J. Mar. 30, 2022) ...................................................22

*Slater v. Skyhawk Transp., Inc.*,
    187 F.R.D. 185 (D.N.J. 1999) ................................................................32

*Smith v. Datla*,
    451 N.J. Super. 82 (App. Div. 2017) ....................................................31

*Stokes v. Eldred*,
    2022 WL 1802882 (D.N.J. June 2, 2022) .............................................32

*Sussex Commons Outlets, L.L.C. v. Chelsea Prop. Group, Inc.*,
    2010 WL 3772543 (App. Div. 2010) .....................................................28

*Swift v. United Food Commercial Workers Union Local 56*,
    2008 WL 2696174 (N.J. App. Div. July 11, 2008) ...............................23

*Todd v. Citibank*,
    2017 WL 1502796 (D.N.J. Apr. 26, 2017) ...........................................25

*Wellness Pub. v. Barefoot*,
    2008 WL 108889 (D.N.J. Jan. 9, 2008) ...............................................28

*Yourman v. People's Sec. Life Ins. Co.*,
    992 F. Supp. 696 (D.N.J. 1998) ....................................................17, 22

**Statutes**

N.J.S.A. 2A:14-3 ..........................................................................................31

N.J.S.A. 2C:33–4 .........................................................................................25

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) .........................................1, 7, 10

Federal Rule of Civil Procedure 15 ...........................................................32

Defendants Brittany Jeream Courville ("Courville"), Prem Benipal ("Benipal") and That Surprise Witness TV LLC (the "LLC," and with Courville and Benipal, "Defendants") hereby respectfully move to dismiss the Second Amended Complaint ("SAC")[1] filed by Plaintiffs Lima Jevremović ("Jevremović") and Autonomous User Rehabilitation Agent, LLC ("AURA" and, collectively, "Plaintiffs") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## **PRELIMINARY STATEMENT**

Plaintiffs have already tried their luck on their defamation claims before this Court—to no avail. This Court dismissed the claims on two independent grounds, finding that the challenged statements were protected opinion ***and*** finding that Plaintiffs failed to allege particularized facts satisfying the high bar for "actual malice." Yet, even with the benefit of amending their pleading, Plaintiffs have done nothing to cure these defects. Instead, Plaintiffs have tried to widen the scope of this action, adding two defendants and eight causes of action along with a new theory of liability of harassment and doxing. But while the Second Amended Complaint is now twice as long as the original, with double the number of allegations, the pleading still glaringly lacks the plausible factual allegations necessary to support Plaintiffs' claims. This Court cautioned Plaintiffs that a "[f]ailure to cure the defects noted in this Opinion may lead to dismissal with prejudice." Dkt. #44 ("Opinion") at 19. The Second Amended Complaint failed to cure the defects and fails to state a claim, so it should be dismissed with prejudice.

By way of background, AURA offers mental health treatment services for substance abuse disorders and Jevremović serves as its founder and CEO. Plaintiffs have coopted extensive media opportunities to market AURA, thereby inviting the scrutiny of the millions of viewers of these

---

[1] The Second Amended Complaint is identical to the First Amended Complaint other than a change in the name of the LLC defendant.

platforms—but when confronted with criticism or an unflattering opinion, Plaintiffs seek to suppress that opinion with litigation.  This is such a case, and it concerns a handful of posts by Courville on her social media platforms, including on Instagram and YouTube, raising concerns and expressing her opinions about AURA's and Jevremović's practices, primarily as they relate to the treatment of two high profile AURA clients: movie star and celebrity Bam Margera, and Amanda Rabb, a homeless, drug-addicted woman who died while using AURA's services as part of her court-ordered treatment.

Courville's statements, made on informal channels replete with hyperbolic language, are not actionable as defamation simply because Plaintiffs do not like Courville's opinions or because they are unflattering; rather, the statements are valid expression about matters of public concern which are wholly protected by the United States Constitution.  Indeed, one New Jersey court— quoting the New Jersey Supreme Court—went so far as to express its "profound[] concern[] with the chilling effect that plaintiffs' lawsuit in these rather unremarkable circumstances may have on other citizens who would ordinarily speak out on behalf of what they perceive to be the public good," noting that courts "are extremely 'loathe to discourage that robust and uninhibited commentary on public issues that is part of our national heritage.'"  *Karnell v. Campbell*, 206 N.J. Super. 81, 95 (App. Div. 1985) (citing *Kotlikoff v. The Community News*, 89 N.J. 62, 67 (1982)).

Plaintiffs renew their defamation claims (and add a defamation-adjacent claim of false light) in the Second Amended Complaint, and even add a handful of additional allegedly defamatory statements.  However, these claims continue to suffer from the same pleading defects this Court found warranted dismissal of the original Complaint.  Specifically, this Court's grounds for finding that the challenged statements constituted protected opinion remain unaffected by the Second Amended Complaint.  In dismissing the defamation claims on the opinion ground, this

Court considered the context of the challenged statements—profanity-laden Instagram posts and YouTube videos replete with hyperbolic rhetoric, Courville wearing fuzzy panda ears with a unicorn piñata in the backdrop, and Courville's repeated clarifications that her statements are merely her opinions, beliefs, impressions, and "not legal advice." These specific contextual elements are unchanged, and the handful of additional allegations Plaintiffs added in the Second Amended Complaint are simply repetitive of allegations that this Court already considered and rejected.

This Court also dismissed the defamation claims because Plaintiffs failed to allege "particularized" allegations showing that Courville actually entertained serious doubts (or any doubts at all) as to the veracity of the challenged statements. But there are no such particularized allegations in the Second Amended Complaint. Plaintiffs continue to rely on conclusory allegations and vague insinuations of improper motives and financial bias, but as this Court already held, these are inadequate to demonstrate that Courville *actually* entertained serious doubts as to the veracity of her statements. This pleading failure provides a second, independent ground for dismissing the Second Amended Complaint's defamation-based claims.

Jevremović (but not AURA) also adds a handful of new allegedly defamatory statements, many of which are substantively identical to those in the dismissed Complaint and necessitate dismissal for the same reasons. For example, alleged challenged statements concerning Mr. Margera's guardianship and Jevremović's treatment of Amanda Rabb echo the previous statements that this Court found deficiently pled. In addition to the protected opinion and actual malice deficiencies, these additional challenged statements are also, variably, not alleged to be false, not "of or concerning" Jevremović, or they are statements of pure conjecture. These statements can therefore not support Plaintiffs' defamation claims. And because false light claims are subject to

the "same considerations" as defamation claims, Plaintiffs' false light claims must be dismissed for all of these reasons as well.  Plaintiffs also each bring claims for unfair competition, but these are simply repackaged defamation claims that should be dismissed for the same reasons.

Jevremović's remaining claims are based on new allegations in the Second Amended Complaint that Defendants published Jevremović's private information and engaged in some sort of cyber harassment.  Not only are these allegations insufficient to support the causes of action, but the theories are also not supported by plausible facts.  For example, Jevremović alleges that "[o]ver the course of nineteen months of harassment, Defendants have caused to be published over 300 videos across various forms of social media" about her, "with a total of 2,802+ minutes (46.7 hours)" and "with over 1000 posts on Instagram and Tiktok about Jevremović."  SAC ¶ 47.  But what that boils down to is an unimpressive *5 minutes* of video time a day, and an average of 1-2 posts between several social media sites a day.  To further buttress these accusations of harassment, Jevremović attaches to the Second Amended Complaint a Temporary Restraining Order issued in California in August 2023—but, that TRO has since been dismissed.  Importantly, not only has the TRO been dismissed, but the California court has also issued an accompanying order granting Courville's motion under California's anti-SLAPP statute which requires Jevremović to pay Courville's fees as part of that proceeding.

The present allegations also fail to state the harassment-based claims in the Second Amended Complaint.  Jevremović brings two claims for harassment under N.J.S.A. § 2C:33-4.  However, this is a *criminal* statute which confers no private civil right of action.  Jevremović also alleges claims for intentional and negligent infliction of emotional distress—but Jevremović fails to plead the basic requirements of claims of this nature (specific and severe emotional or psychological harm caused by highly offensive conduct).  Jevremović also alleges a claim for

intrusion upon seclusion, but this requires some intrusion into her *private* affairs by wrongful means.  And in the Second Amended Complaint, Jevremović does not allege that the disclosed information was not publicly available, nor does she plead that the information was wrongfully obtained.

Finally, the Second Amended Complaint added two new defendants—Prem Benipal and That Surprise Witness TV LLC ("the LLC").  But other than vague allegations that these additional defendants, respectively, financially supported Courville's social media efforts and carried out Courville's and Benipal's social media activities, the Second Amended Complaint contains no plausible factual allegations about what these defendants actually did that warrants liability on **nine** of Plaintiffs' ten claims in the Second Amended Complaint.  Indeed, the Second Amended Complaint attributes just a single allegedly defamatory statement, on an ambiguous date, to Benipal—but this statement is entirely speculative and not defamatory.  This paucity of allegations fails to meet the basic pleading requirement under the *Twombly* and *Iqbal* standards.  Moreover, because over a year has passed since the alleged statements giving rise to Plaintiffs' defamation and false light claims, they are barred by the statute of limitations.

Plaintiffs have now already had two bites at the apple and failed to meet their pleading burden.  For these reasons, as more fully set forth herein, Defendants respectfully request that the Court dismiss the Second Amended Complaint with prejudice.

## STATEMENT OF FACTS

Jevremović is the founder and CEO of AURA (SAC ¶ 2), which provides mental health treatment services for substance abuse disorders.  *Id.* ¶ 13-14.  AURA has engaged "celebrities, influencers, and persons in the public eye" to "develop a viral, word-of-mouth buzz surrounding" its services.  *Id.* ¶ 14.  One such celebrity was Mr. Margera, who "has starred in blockbuster Jackass movies and popular television programs."  *Id.* ¶ 23.  On or about June 7, 2021, an Arizona court

imposed a one-year guardianship over Mr. Margera and ordered that Jevremović would serve as his guardian, statutorily entitling Jevremović to collect sums for her services. *Id.* ¶ 24. Under Ms. Jevremović's guardianship, Mr. Margera was court-ordered to begin treatment at a drug rehabilitation facility. *Id.* ¶ 24.

In addition to providing its services to celebrities to create "viral, word-of-mouth buzz," AURA's business model also includes providing free-of-charge services to less fortunate individuals. *Id.* ¶ 14. In this vein, AURA provided its services to Amanda Rabb, a homeless, drug-addicted woman. *Id.* ¶ 17. Jevremović succeeded in obtaining court-ordered, involuntary treatment for Ms. Rabb, which AURA provided. *Id.* ¶ 17, 77. Ms. Rabb passed away on May 9, 2021. *Id.* ¶ 18. Ms. Rabb's "formal autopsy report states that she died from cardiac arrhythmia," and Courville posted that she was also found to have barbiturates and cannabinoids in her system. *Id.* ¶ 18, 71. Nonetheless, Jevremović publicized on Internet appearances, including YouTube videos, that Ms. Rabb died from a "seizure disorder," or her death was "caused by beatings and rap[e]s." *Id.* ¶ 69, 71, 73, 156. Jevremović also publicly stated that the only drug found in Ms. Rabb's system at the time of her death was Tylenol. *Id.* ¶ 18, 69, 71. Jevremović acknowledges the "discrepancy" between the facts of Ms. Rabb's death and her public statements. *Id.* ¶ 118; *see also id.* ¶ 18, 69, 73, 119.

While Ms. Rabb was still alive, Jevremović had started a GoFundMe fundraiser for Ms. Rabb's mental health treatment. *Id.* ¶ 94, 98. Almost a year after her death, the fundraiser still remained active. *Id.* ¶ 13, 62.

Courville is a self-proclaimed conspiracy "theorist" with an active social media presence. *Id.* ¶ 75, 81. Courville has taken an interest in conservatorship cases and regularly posts about her "theories" on Instagram and her YouTube channel. *Id.* ¶ 11-12, 79, 81, 110, 120; *see generally*

Courville's Instagram account, https://www.instagram.com/thatsurprisewitness/; YouTube channel, https://www.youtube.com/channel/UCDP9HU8g2JLimHmcLqsTGEg?app=desktop.[2] Plaintiffs allege that Benipal provided financial support to Courville's activities and has himself appeared on some unidentified podcasts. *Id.* ¶ 4. As for the LLC, Plaintiffs allege only that it was formed "to carry out the activities of Courville and Benipal." *Id.* ¶ 5.

On August 8, 2022, Plaintiffs brought this action alleging defamation claims against Courville on behalf of both Plaintiffs. On September 23, 2022, Courville submitted a letter to the Court seeking leave to file a motion to dismiss (Dkt. #15), and on September 30, 2022, the Court granted the request and waived the requirement for a pre-motion conference. Dkt. #17. Following motion practice, by Order dated August 10, 2023, the Court dismissed the Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Dkt. #45.

This Court relied on two independent grounds for dismissal of the Complaint: (1) the allegedly defamatory statements were protected opinion; and (2) Plaintiffs failed to adequately plead actual malice given that Plaintiffs were limited-purpose public figures.[3] As to the first ground, this Court held that "context is critical in deciphering unactionable opinion versus defamatory speech." Opinion at 12. As such, the Court noted that Courville's "statements were delivered by a social media influencer on Instagram, and occasionally, YouTube," "forums that welcome opinions and candor." *Id.* at 12-13 (citing cases). This Court cited case law recognizing

---

[2] The Amended Complaint is based upon alleged defamatory statements on Courville's Instagram and YouTube accounts. Because those accounts are matters of public record, their contents are properly considered in deciding a motion to dismiss for purposes of understanding the context of any individual post. *See, e.g., In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (where the plaintiff "relied upon" certain sources in formulating the complaint, those sources are properly considered on a motion to dismiss, as this allows for the challenged statements to be examined in their "full context").

[3] Plaintiffs never disputed this characterization.

that "internet forums" are "specifically designed for the publication of crowd-sourced opinionated statements," and publication on such forums "conveys a strong signal to a reasonable reader that the statements are defendant's opinion" and should be given "less credence" than "similar remarks made in other contexts." *Id.* (citing *Sciore v. Phung*, 2022 WL 950261, at *11–12 (D.N.J. Mar. 30, 2022)).  Referencing other critical context to the challenged statements, the Court noted that Courville "[i]n satirical spirit," "can be seen wearing either panda ears or bunny ears while making her statements, while a sparkly unicorn piñata rests prominently in the background.  Additionally, Defendant's profile picture [on her Instagram page] is a photograph of her wearing a pink fuzzy ear headband and tie-dye shirt, and includes in her Instagram biography that she is a 'Legal Edutainer (not legal advice).'"  Opinion at 13-14.  Finally, the Court noted that "the specific language" used by Courville "signals that [she] is merely expressing her opinions and theories," as she "repeatedly refers to her opinion" "as mere theories," marked by language such as "I think" or "it seems."  *Id.* at 13-14; *see also id.* at 16.  The Court held that "all of [this] point[s] to unactionable opinions."  *Id.* at 14.

As to actual malice, this Court made clear that the standard required Plaintiffs to plead "sufficient particularized facts" that Courville "seriously doubted" the truth of her statements.  *Id.* at 17 (citing cases).  This Court noted that it is "not enough" to plead that Courville published statements "without fact-checking, without investigation, without interviewing those involved, and with no regard for accuracy," and that it is "equally inadequate to allege that a defendant had bad motives or 'ill will' towards plaintiff."  *Id.* (citing cases).  Against this legal backdrop, this Court dismissed Plaintiffs' actual malice allegations—grounded in statements concerning motive and otherwise lacking any factual support—as "bare and conclusory."  *Id.*  As this Court found,

"Plaintiffs do not point to any facts—circumstantial or direct—that demonstrates Defendant entertained any serious doubts about the veracity of the statements she made." *Id.* at 19.

On September 11, 2023, Plaintiffs accepted this Court's invitation to file a Second Amended Complaint and, in doing so, attempted to drastically enlarge the scope of this case. In addition to reasserting the dismissed defamation claims, the Second Amended Complaint added two defendants (Benipal and the LLC) and asserted an additional eight causes of action. Specifically, each Plaintiff now alleges a defamation claim and unfair competition claim and Jevremović also alleges a related claim for false light. These defamation-based claims purport to arise from Courville's statements on social media concerning specific topics:

- statements suggesting that Jevremović lied by misstating the contents of Ms. Rabb's autopsy report (SAC ¶ 65, 69, 71, 73, 88, 91-92, 116, 118, 125);
- statements suggesting that Jevremović procured "forced treatment" for AURA's clients and was financially motivated (*Id.* ¶ 77, 112);
- statements referring to Jevremović's treatment of Ms. Rabb, including employment of a fundraiser for Ms. Rabb's medical treatment (*Id.* ¶ 94, 98, 127, 131, 133, 137);
- statements vaguely referring to a criminal conspiracy and other types of improper conduct surrounding Mr. Margera's guardianship (*Id.* ¶ 67, 75, 78, 81, 83, 86, 89, 96, 100-101, 104, 106, 108, 110, 114, 120-121, 123, 137, 141); and
- statements expressing concern over AURA's business practices. (*Id.* ¶ 152, 154, 156, 158, 160, 162, 164).

Plaintiffs attribute only one statement to Benipal, who allegedly commented on Jevremović's treatment of Ms. Rabb. *Id.* ¶ 146. In the Second Amended Complaint, Plaintiffs allege that the video in which Benipal made this statement is dated "August 2022" (*id.*); however, the link provided by Plaintiffs in footnote 80 makes clear the video aired on July 15, 2022. *Id.* ¶ 146 n.80.

Jevremović also alleges claims sounding in emotional distress, harassment, and intrusion upon seclusion stemming from Courville's purported public release of her personal information.

For the reasons set forth in detail herein, Plaintiffs failed to plausibly allege these claims and they should be dismissed with prejudice.

## ARGUMENT

The Second Amended Complaint is "subject to the heightened pleading standard set forth in *Ashcroft v. Iqbal*," which requires Plaintiffs to plead not merely possibility, but plausibility. *Perez v. Factory Direct of Secaucus, LLC*, 2013 WL 5770734, at *4 (D.N.J. Oct. 23, 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)).  Under this stringent pleading regime, to survive dismissal, a complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and a complaint will not "suffice" if it provides only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly¸* 550 U.S. 544, 555, 557 (2007)).  A claim must be pled with facial plausibility; where a complaint provides facts "merely consistent with" the defendant's liability, it "stops short of the line between possibility and plausibility" and will not survive review under Rule 12(b)(6). *Iqbal¸* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

## I.   Plaintiffs' Defamation Claims Must Be Dismissed

### A.   The Second Amended Complaint Does Not Salvage the Deficient Defamation Claims

This Court dismissed Plaintiffs' defamation claims on two grounds:  (1) the challenged statements were constitutionally protected opinion and (2) the complaint failed to allege that Courville made the challenged statements with actual malice.  Opinion at 7-19.  The Second Amended Complaint does not remedy either of these deficiencies.  Indeed, Plaintiffs appear to acknowledge that they are not attempting to cure the pleading defects forming the basis of the Court's August 10, 2023 Order, stating that while they "disagree with the Court's finding that no libel claims have been stated," they are still bringing their defamation claims "[i]n part to preserve

the issue for appeal."  SAC n. 1.  As discussed below, the defamation claims continue to suffer from the fatal defects this Court found warranted their original dismissal.

### 1.    The Challenged Statements in the Second Amended Complaint are Still Protected Opinion.

As this Court already found in dismissing the original Complaint, statements of opinion are not actionable as defamation.  *Reed v. Scheffler*, 218 F. Supp. 3d 275, 282 (D.N.J. 2016), *aff'd*, 771 F. App'x 162 (3d Cir. 2019) (holding that opinions are not defamatory "because such statements only reflect a state of mind, and therefore generally cannot be proved true or false.").  As the United States Supreme Court held, it does not matter how "pernicious" an opinion is; it cannot be false and is therefore constitutionally protected.  *Gertz v. Robert Welch Inc.*, 418 U.S. 323, 339-340 (1974).  New Jersey courts have long held that "[s]tatements of 'pure' opinion—i.e., when the speaker states the facts on which an opinion is based—cannot trigger liability."  *Jorjani v. New Jersey Institute of Tech.*, 2019 WL 1125594, at *4 (D.N.J. Mar. 12, 2019); *Edelman v. Croonquist*, 2010 WL 1816180, at *6-7 (D.N.J. May 4, 2010) (calling plaintiff derogatory names was protected opinion because defendant set forth basis for the opinion) (citing *Yourman v. People's Sec. Life Ins. Co*., 992 F. Supp. 696, 706 (D.N.J. 1998) (dismissing as non-defamatory statement accusing plaintiff of fraud where truth of the disclosed facts underlying the conclusion was not disputed; "statements of opinion premised on disclosed facts [are], as a matter of law, not defamatory.")).

In dismissing Plaintiffs' claims, this Court noted that, "[h]ere, context is critical in deciphering unactionable opinion versus defamatory speech."  Opinion at 12.  This Court considered the many indicia of opinion contextualizing the challenged statements—including the Internet (and, specifically, social media) forum; the tone of the statements accompanied by emojis; the loose, figurative and colloquial language and backdrop; the rhetorical questions and conjecture;

and the disclaimers—to reach the conclusion that these contextual clues, together, would indicate to a reader that the statements are intended to be opinion. *Id.* at 12-14, 16.

The Second Amended Complaint does not—because it cannot—attempt to change the context of the challenged statements. Indeed, there are no allegations that Plaintiffs could make that could change the fact that Courville made the challenged statements on social media platforms, or that she used satirical, opinion language in her emoji-ridden posts. Plaintiffs therefore make only a half-hearted attempt to overcome this Court's finding of opinion by adding a handful of additional allegations, *i.e.*, that in a mere *three* additional instances, Courville referenced her prior legal training. SAC ¶¶ 57, 139, 143. These additional allegations fail to move the needle—they are variations of what was already in the original Complaint. Plaintiffs simply double down on an argument about Courville's alleged seriousness and credibility they made in their prior motion to dismiss briefing—an argument this Court has already rejected. *See* Dkt. #22 at p. 10; Opinion at 9-10, 13. In rejecting this argument, this Court found that a holistic view of the context of the statements *as a whole* indicated to the reader that they were statements of opinion. Opinion at 9-10, 13.

Moreover, these additional allegations misleadingly fail to disclose to the Court that the videos in which these statements were made include a variation of a ticker at the bottom of the screen stating: "OPINION ONLY-NONE OF THIS IS LEGAL ADVICE. I REPEAT! THIS IS NOT LEGAL ADVICE!!!!!!! NOT LEGAL ADVICE!!!!. *See* SAC ¶¶ 139 n.78, 143 n.79. These videos also included the indicia of opinion this Court already found dispositive—the disclaimer and repeated references to Courville's "opinions" while wearing fuzzy bunny ears with the pinata in the background. *Id.*

Plaintiffs have therefore failed to cure the first, independent ground on which the Court dismissed the defamation claims, and the defamation-based claims in the Second Amended Complaint should be dismissed with prejudice.

### 2.    Plaintiffs Still Fail to Adequately Plead Actual Malice

Plaintiffs also failed to provide the plausible actual malice allegations missing from their original Complaint.  This Court found that the actual malice standard applies; thus, to survive dismissal, Plaintiffs had to "allege sufficient particularized facts" demonstrating that Defendants "seriously doubted" the veracity of their statements.  Opinion at 17 (citing cases); *Lee v. TMZ Prods. Inc*, 710 F. App'x 551, 560 (3d Cir. 2017) (affirming dismissal of defamation claim absent allegation defendant "*actually* doubted the veracity of the articles.") (emphasis in original) (quotations and citation omitted).

Despite this Court's admonition that "actual malice" can only be pled through *particularized facts* showing that Courville made the challenged statements with knowledge of their alleged falsity or a reckless disregard for their truth or falsity, Plaintiffs now substantively echo their prior actual malice allegations this Court found inadequate.  For example, Plaintiffs add several allegations concerning Courville's purported motives—adding to such existing allegations in their original Complaint.  SAC ¶ 31-34, 37-39, 41 (pleading that Courville's "true motivations" "purpose" and "intent" was to "increase views," financially profit, "divert Jevremović from effectively acting as guardian to [Mr.] Margera," and ultimately, "destroy[] Jevremović and AURA at any cost.").  But setting aside the implausibility of these allegations of motive[4], this Court already held that "[i]t is [] inadequate [for purposes of actual malice] to allege that a defendant had bad motives or 'ill will' towards plaintiff."  Opinion at 17 (citing *Jorjani*, 2019 WL 1125594, at

---

[4] As a matter of logic, if Courville wanted to increase her social media viewership, it would not make sense for her to build a platform based on deliberate falsehoods.

*4); *see also Schwartz v. Worrall Pubs., Inc.,* 258 N.J. Super. 493, 504 (App. Div. 1992) ("even if [defendants] were acting to further some undisclosed political or financial motives...such motives cannot provide a sufficient basis for finding actual malice."); *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989) ("the fact that the defendant published the defamatory material in order to increase its profits" does not "suffice to prove actual malice."   "If a profit motive could somehow strip communications of the otherwise available constitutional protection, our [defamation] cases ... would be little more than empty vessels.").

Plaintiffs also attempt to plead actual malice by alleging that they contacted Courville to "demand retraction," but "[n]o retraction issued."  *Id.* ¶ 40.  But this says absolutely nothing about whether Courville subjectively entertained serious doubts as to the truth of her statements when she published them.  An unheeded demand for retraction is not dispositive of knowledge of falsity at the time the statements are made, as required to demonstrate actual malice.  *See, e.g., New York Times Co. v. Sullivan*, 376 U.S. 254, 286 (1964) ("The Times' failure to retract upon respondent's demand" is "not adequate evidence of [actual] malice for constitutional purposes."); *Schwartz,* 258 N.J. Super. at 503-04 (holding that a decision to delay issuing a retraction "says little, if anything, about the editor's state of mind at the time of publication.") (citing cases).

Plaintiffs further vaguely allege that Courville's statements were contradicted by information that was available to her—but the *only* specific example Plaintiffs include in the Second Amended Complaint is the accusation that Courville allegedly called Amanda Rabb's father a molester and then "took steps to deliberately avoid learning the truth … that Rabb had come out to clear her father's name" of this purported molestation.  SAC ¶ 36.  But Courville's purported statement regarding Mr. Rabb *does not form the basis for any of Plaintiffs' defamation claims*.  So it does not matter, for purposes of supporting the claims in the Second Amended

14

Complaint with the proper actual malice allegations, what Courville's state of mind was as to that specific statement about Mr. Rabb.  In any event, even this allegation only conclusorily pleads Courville's alleged knowledge that the statement was allegedly false (where falsity itself is not even properly pled), nor does it even concern Plaintiffs at all.  This lone allegation in the Second Amended Complaint does not salvage Plaintiffs' failure to plead actual malice.

Ultimately, Plaintiffs are left to rely on threadbare, conclusory allegations that Courville "knew and ignored" that "no evidence" supported her claims, or knew her statements "were untrue based on their inherent improbability."  SAC ¶ 35.  But nearly identical allegations were already rejected by this Court as "bare and conclusory."  Opinion at 18 (citing cases).  The Second Amended Complaint includes no particularized allegations plausibly alleging that Courville was aware of the alleged falsity of her statements at the time they were made.  The defamation claims are therefore not salvaged by the Second Amended Complaint and must be dismissed with prejudice.

### 3.  The Additional Challenged Statements are not Defamatory

Plaintiff AURA does not plead any new challenged statements in the Second Amended Complaint.  Jevremović does purport to add a handful of new, allegedly defamatory statements in the Second Amended Complaint.  SAC ¶ 67, 123, 125, 127, 131, 133, 135, 137, 141, 146. However, in addition to the opinion and actual malice grounds for dismissal, these additional challenged statements are substantively identical to those which were already dismissed, and they must be dismissed for the same reasons.

### a)  Legal Standard for Defamation Claims

To plead defamation, Plaintiffs must allege: "(1) a defamatory statement of fact; (2) the defamatory statement concerned the plaintiff; (3) the statement was false; (4) the statement was communicated to persons other than the plaintiff; and (5) fault." *Klagsbrun v. Va'ad Harabonim*

*of Greater Monsey*, 53 F. Supp. 2d 732, 739 (D.N.J. 1999), *aff'd*, 263 F.3d 158 (3d Cir. 2001)).  A

defamatory statement is one that "harms the reputation of another such that it lowers the defamed

person in the estimation of the community or deters third parties from dealing with that person."

*Salzano v. N. Jersey Media Grp. Inc.*, 201 N.J. 500, 512 (2010); *see also Klagsbrun*, 53 F. Supp.

2d at 739.  "Mere insults and rhetorical hyperbole, while they may be offensive or unpleasant, are

not defamatory."  *McBride v. Township of Washington*, 2020 WL 3396802, at *8 (D.N.J. Jun. 19,

2020).

 The first element of a defamation claim is a defamatory statement of *fact*.  *Klagsbrun*, 53

F. Supp. 2d at 739.  A statement can only be defamatory if it is verifiable; in other words, if it can

be "proven true or false."  *A.Z. v. Doe*, 2010 WL 816647, at *4 (N.J. Super. Ct. App. Div. Mar. 8,

2010) (quotations and citations omitted).

 It is a defamation plaintiff's burden to plausibly plead the falsity of a statement in its case

in chief because falsity is not presumed.  *Green v. NCO Inovision*, 2010 WL 147934, at *4 (D.N.J.

Jan. 11, 2010).   Where a plaintiff merely pleads "in conclusory terms, that [the allegedly

defamatory statements] are defamatory and false," this is insufficient.  *Dashore v. Anderson*, 2019

WL 4727926, at *4 (D.N.J. Sept. 27, 2019); *K.J. v. Greater Egg Harbor Reg'l High Sch. Dist. Bd.

of Educ.*, 2015 WL 5039460, at *14 (D.N.J. Aug. 26, 2015) (dismissing defamation claim where,

*inter alia*, plaintiffs "fail to provide a factual basis for the allegation that the statement was false").

Minor inaccuracies do not render a statement false; even where a statement contains inaccuracies,

it does not amount to falsity so long as the gist or sting of the factual disclosures is justified.  *Air

Wis. Airlines Corp. v. Hoeper*, 571 U.S. 237, 247 (2014) (citing *Masson v. New Yorker Magazine,

Inc.*, 501 U.S. 496, 517 (1991)).

(i)     **Additional Challenged Statements Regarding Bam Margera. (SAC ¶ 67, 123, 137, 141)**

Jevremović alleges a handful of new allegedly defamatory statements regarding Mr. Margera and his guardianship. These allegedly defamatory statements are substantively identical to challenged statements this Court has already found nondefamatory. *Compare* SAC ¶ 67 (alleging that Courville referred to Jevremović as a "handler[] and trafficker[]"); *id.* ¶ 123 (alleging that Courville stated, "*[l]ooks like* team con is planning to traffic @bam_margera for a 'few more months'. #freebam") (emphasis added); *with* Dkt. #1 ¶ 64-65, 70, 85 (allegedly referring to "team con" "trafficking" Mr. Margera in a "literal human trafficking situation."). This Court already found non-actionable substantially similar statements. Opinion at 9, 13. The same types of statements are alleged here, and the Court's logic must apply with equal force.

Moreover, Courville's references to "traffickers" disclose their underlying factual basis— Courville quotes Mr. Margera's own statements that he was "held against his will for months" and "denied medical treatment." SAC ¶ 137, 141. And, critically, Plaintiffs do not plead the falsity of the underlying facts accompanying these statements. *Jorjani*, 2019 WL 1125594, at *4; *Edelman*, 2010 WL 1816180, at *6-7; *Yourman*, 992 F. Supp. at 706. Plaintiffs do not attempt to dispute that Mr. Margera, in fact, made the statements Courville recounted. Plaintiffs also do not dispute that Jevremović had a "court-ordered guardianship" over Mr. Margera (SAC ¶ 25) and that Mr. Margera was court-ordered to complete a drug treatment program. *Id.* at ¶¶ 23-24.[5] Because Plaintiffs do not allege that these underlying facts are false, Courville's opinion reached from these facts is protected opinion. *See Dashore*, 2019 WL 4727926, at *4-5 (dismissing defamation claim where plaintiff only alleged "in conclusory terms, that [statements] are defamatory and false. But,

---

[5] In the original Complaint, Plaintiffs themselves admit that Mr. Margera was "involuntarily placed in the custody of [a] drug rehabilitation facility." Dkt. #1 ¶ 16. Plaintiffs deleted this allegation from their Second Amended Complaint.

Plaintiff goes no further in elaborating upon their falsehood.  Indeed, Plaintiff does not plead any facts in her Complaint as to the verifiable truth regarding these statements.").  Indeed, Plaintiffs themselves note that "these statements might ordinarily be readily understood as hyperbole."  SAC ¶ 107, 122.

Finally, some of these statements cannot even be reasonably understood to be "of and concerning" Jevremović.  A statement is only actionable as defamatory where one would reasonably understand that the statement referred to the plaintiff.  *Foxtons, Inc. v. Cirri Germain Realty*, 2008 WL 465653, at *5 (N.J. Super. Ct. App. Div. Feb. 22, 2008).  But most of these additional challenged statements do not reference Jevremović at all.  Courville's statements about Mr. Margera's experience in rehab (*i.e.*, that he was "held against his will," SAC ¶ 137, 141) are not specific to Jevremović.  The statements do not mention Jevremović as the responsible party— and Mr. Margera's negative experiences could be attributed to any number of individuals at the rehab facility.

Nor does the April 18, 2022 statement about "team con [] planning to traffic" Mr. Margera (SAC ¶ 123) even mention Jevremović—and, importantly, Courville posted several posts on Instagram right around that time on the topic of Mr. Margera, overwhelmingly concerning Mr. Margera's treatment at the hands of individuals and entities *other* than Jevremović, such as Brandon Novak, Johnny Knoxville, Paramount Co. and MTV. SAC ¶ 106 (linking Courville's April 19, 2022 Instagram post where Courville writes: "Brandon Novak for sure is part of team con" and referring to Knoxville, Paramount, MTV and others as Mr. Margera's "corporate overlords," and captioning the post "#FreeBam #BitchesLoveHastags #EndHumanTrafficking.").  Indeed, this same language about criminality and the hashtag #FreeBam is exactly the language Courville uses in her Instagram posts in March, April and May of 2022 in which Courville directs

criticism to a whole host of targets—Nicole Boyd[6], Mr. Margera's friend and collaborator Johnny

Knoxville, Paramount, MTV, trustee of a trust established for Mr. Margera, Stephen B. Timmer,

"sober coach" Bob Marier[7], Mr. Margera's friend and collaborator Brandon Novak[8], and Mr.

Margera's parents[9]—regarding their treatment of Mr. Margera.  Plaintiffs' suggestion that all

statements which refer vaguely to #FreeBam and some kind of criminal conspiracy—particularly

those that nowhere mention Jevremović—are nonetheless ***about*** her falls far short of satisfying the

"of and about" plaintiff prerequisite for a defamation claim.  Since the statements could refer to a

host of plausible targets, the statements are not plausibly "of and concerning" Plaintiffs.  *Foxtons*,

2008 WL 465653 at *3-5 (holding that plaintiff failed to show statement was of and concerning

plaintiff even though the statement referred to a real estate broker employing a 3% commission,

and plaintiff claimed they were the only real estate broker employing it); *Kraft v. Wells Fargo &*

*Co.,* 2019 WL 3453271, at *7 (D.N.J. Jul. 31, 2019) (dismissing defamation claim where, *inter*

---

[6] *See, e.g.* SAC ¶ 110 (linking April 3, 2022 Instagram post where Courville highlights Nicole Boyd's name and writes, "Bam is worth $20 million.  Now who would have an incentive to want to control that money and who would be in a position to do so."  Courville also commented on the post that she "imagine[s]" Nicole Boyd is using their child together "as leverage."); *Id.* ¶ 108 (linking Courville's April 18, 2022 Instagram post where Courville screenshots marriage and divorce records, highlighting that "[n]o marriage & divorce records associated with [Bam] Margera were found."  Courville captions the post: "Rumor has it Nikki and Bam aren't even legally married.  #FreeBam."  When a woman named Kelli comments, "where are his parents?" Courville responds, "helping the criminals girl.").

[7] *See, e.g.* SAC ¶ 96 (linking Courville's April 25, 2022 Instagram post where Courville tags Johnny Knoxville, Bob Marier and Stephen Timmer, suggesting that they all conspired with Paramount to set up a trust fund for Mr. Margera's son in order to stop Mr. Margera from bringing suit against Paramount); *Id.* ¶ 106 (linking Courville's April 19, 2022 Instagram post where Courville screenshots an article about Mr. Margera's "Post Jackass Settlement," writing that Mr. Margera "settled with his corporate overlords @mtv @johnnyknoxville @paramountco…#FreeBam #BitchesLoveHastags #EndHumanTrafficking.").

[8] *See, e.g. id.* ¶ 106  (linking Courville's April 19, 2022 Instagram post where Courville writes: "Brandon Novak for sure is part of team con…#EndHumanTrafficking.").

[9] *See, e.g. id.* ¶ 108 (linking Courville's April 18, 2022 Instagram post where she commented that Mr. Margera's "parents" are conspiring with "the criminals.").

*alia*, alleged defamatory statements referenced "the bank," without specifying which bank was being referenced, given that "multiple entities" could have been understood as "the bank").

**(ii)**      **Additional Challenged Statements Regarding Amanda Rabb. (SAC ¶¶ 125, 127, 131, 133, 146.)**

Plaintiffs add several additional challenged statements regarding Amanda Rabb.  These statements mostly fall into two categories:  statements by Courville that Jevremović lied about Ms. Rabb's cause of death; and statements by Courville that Ms. Rabb died in Jevremović's care.  None of these statements are defamatory.

First, the additional statements about Jevremović lying about Ms. Rabb's cause of death are substantively identical to those included in the original Complaint.  *Compare* SAC ¶ 125 (alleging that Courville stated, "I operate in one absolute thing and that is truth.  Lima didn't tell the truth."); *id.* ¶ 133 ("Lima lied about how Amanda died and she never really gave a good explanation for that."); *with* Dkt. #1 ¶ 30 ("Lima…LIED ABOUT [AMANDA'S] CAUSE OF DEATH TO MILLIONS of people."); *see also id.* ¶ 32, 34, 36, 52, 55-56, 80, 82.  These statements were found to be non-defamatory.

In any event, Jevremović does not dispute that she publicly provided inaccurate information about Ms. Rabb's cause of death.  To the contrary—she affirmatively concedes this point.  SAC ¶ 118 (acknowledging "the discrepancy between Jevremović's description of Rabb's cause of death and the official autopsy report."); *see also id.* ¶ 18 (conceding that the "formal autopsy report states that she died from cardiac arrhythmia with hypertension, obesity, and schizophrenia as contributing factors").  Instead of disputing this discrepancy, Jevremović only tries to *explain* it, blaming the "conflicting information" on the Clark County Coroner who allegedly provided her or her employee with this incomplete and inaccurate information.  *Id.* ¶ 119; *see also id.* ¶ 18, 69, 70, 71, 73.  But this explanation does not salvage a defamation claim

20

based on these statements because, as Plaintiffs themselves concede, Jevremović *did* provide information to the public about Ms. Rabb's cause of death that was not accurate, regardless of the reason.

Plaintiffs' additional challenged statements (SAC ¶¶ 131, 133, 137) simply recite the undisputed fact that Amanda Rabb died while under Jevremović's care in a court-ordered treatment program and while receiving treatment provided by or funded by Jevremović and AURA. Plaintiffs themselves plead that Jevremović obtained "Court-Ordered Treatment" for Ms. Rabb after failing to obtain an "LPS conservatorship" over her. *Id.* ¶ 78. They further plead that Jevremović and AURA provided and funded her treatment, including funding her "mental health treatment," "in-patient residential care," "full-time out-patient treatment," and "therapy," while also providing "AURA's products at no cost in conjunction with her treatment and therapy." *Id.* ¶ 17. And Plaintiffs cannot dispute that Ms. Rabb died during this time. *Id.* ¶ 17-18. Plaintiffs do not even attempt to plead the falsity of these additional challenged statements, and therefore they cannot qualify as defamation. *Dashore*, 2019 WL 4727926, at *4; *Greater Egg Harbor*, 2015 WL 5039460, at *14.

Finally, Jevremović alleges that it was somehow defamatory for Courville to state that "Amanda was hand chosen because [Jevremović] had the cooperation of Larry Rabb." SAC ¶ 127. As an initial matter, there is nothing defamatory about this statement; it does not tend to harm Jevremović's reputation in the eyes of the community. To the contrary, this statement could be understood as merely stating that Jevremović responsibly procured the consent of Ms. Rabb's father, Larry, prior to attempting to impose a conservatorship over Ms. Rabb. *See, e.g., Reed,* 218 F. Supp. 3d at 283 (dismissing defamation claim since statements were not "of such a nature to harm plaintiff's reputation in the community"). Further, Jevremović concedes the underlying

21

factual basis for this opinion, admitting that Jevremović "and Larry Rabb, Amanda Rabb's father," worked together in "attempting to impose an LPS conservatorship on Rabb."  SAC ¶ 77-78. Plaintiffs have therefore failed to plead the falsity of the statement or the underlying facts, and Courville's opinion based off this fully disclosed fact is simply not actionable. *Jorjani*, 2019 WL 1125594, at *4; *Edelman*, 2010 WL 1816180, at *6-7; *Yourman*, 992 F. Supp. at 706.

Jevremović also includes one allegedly defamatory statement made by Benipal: "[h]ad Jevremović left Amanda alone, Amanda might be alive today."  SAC ¶ 146.  This statement is textbook opinion and clearly conjecture.  A statement can only constitute defamation if it is verifiably false; here, it is impossible to disprove the hypothetical offered by Benipal.  *See, e.g., Sciore*, 2022 WL 950261, at *11 (dismissing defamation claims; statements were nothing "more than an opinion posing a hypothetical conclusion utilizing hyperbolic language...There is no way of verifying the statement as it is a hypothetical").

### (iii)    Additional Challenged Statement Regarding Allegations of Sex Trafficking.  (SAC ¶ 137).

Lastly, Jevremović pleads that Courville stated, "we also now have **allegations** of sex trafficking of people that Lima has purported to be in care of."  SAC ¶ 137 (emphasis added). Jevremović does not allege that this statement is even false; she only pleads that "[t]hese statements are defamatory insofar as they characterize Jevremović as a criminal, which she is not."  SAC ¶ 138.  Failing to plead falsity, Jevremović's claim must fail.  *Dashore*, 2019 WL 4727926, at *4; *Greater Egg Harbor*, 2015 WL 5039460, at *14; *see also Perez*, 2013 WL 5770734, at *5 (statement unactionable where it only referred to "'*alleged* conduct' of Third-Party Plaintiffs") (emphasis in original).

## II.   **Plaintiffs' Additional Claims Are Inadequately Pled and Must Be Dismissed**

### A.   **Jevremović's False Light Claim Must Be Dismissed**

Jevremović's false light claim rests on the same allegations as the defamation claims set forth in Counts I and II.  SAC ¶ 181-82.  False light claims are subject to the "same considerations" as defamation claims.  *Cibenko v. Worth Publishers, Inc.,* 510 F. Supp. 761, 766 (D.N.J. 1981). Specifically, a false light claim cannot be based on statements that are mere "opinion," (*id.* at 766), are not verifiably false (*id.*), and fail to meet the requirements of "the actual-malice standard." *Marino v. Westfield Bd. of Educ.,* 2017 WL 216691, at *9 (D.N.J. Jan. 18, 2017).  Because the alleged defamatory statements set forth in the Second Amended Complaint are protected opinion, not alleged to be false, and are not supported by particularized allegations of actual malice, Jevremović's false light claim must be dismissed for the same reasons the defamation claims fail.

### B.   **Jevremović's Intrusion Upon Seclusion Claim Must Be Dismissed**

To properly plead a claim for intrusion upon seclusion, a plaintiff must allege: (1) an intentional intrusion; (2) into the solitude, seclusion, or private affairs of another; (3) that is highly offensive to a reasonable person.  *Swift v. United Food Commercial Workers Union Local 56*, 2008 WL 2696174, at *3 (N.J. App. Div. July 11, 2008).  Because this cause of action necessarily requires an allegation that the plaintiff's private affairs were invaded, there can be no intrusion upon seclusion claim based on the disclosure of information which was not obtained wrongfully or was already public or known.  *D'Ambly v. Exoo,* 2021 WL 5083816, at *9 (D.N.J. Nov. 1, 2021); *Cf. Bisbee v. John C. Conover Agency, Inc.,* 186 N.J. Super. 335, 340 (N.J. Sup. Ct. App. Div. 1982) ("all of the matters at issue herein were otherwise known and public…Defendants did nothing wrongful in obtaining or compiling this information.").

Here, Jevremović's claim rests entirely on the allegation that Defendants publicly disclosed personal information belonging to her and her family, including their addresses, names,

photographs and Jevremović's social security number.  SAC ¶ 176.  But other than conclusory labels, Jevremović fails to plead that this information was not publicly available or that it was wrongfully obtained by Defendants.  This pleading deficiency is fatal to Jevremović's claim. *D'Ambly*, 2021 WL 5083816, at *9 (dismissing intrusion upon seclusion claim because pleading failed to allege that wrongful means were used or that non-public information was published). Indeed, Jevremović fails to even provide the factual details of specific instances where Defendants purportedly disclosed private information, including when the information was disclosed, which of the "Defendants" allegedly obtained and released the information, and on which specific medium.  In fact, the only detailed factual allegation in the Second Amended Complaint about publishing private information has nothing to do with Defendants' conduct at all—it is the allegation that an unidentified *third-party* posted Jevremović's home address in a comment on Courville's Instagram post.  SAC ¶ 53.  The Second Amended Complaint includes *no* specific allegations with any measure of detail that would plausibly support the allegation that Courville herself publicly released any such information.[10]

Moreover, to the extent Jevremović alleges that Defendants disclosed private information relating to others, including her family members, Jevremović lacks standing to pursue such claims. *Itiowe v. U.S. Gov't*, 553 F. App'x 271, 272 (3d Cir. 2014) (dismissing claim brought by plaintiff concerning her brother's alleged injuries: "To establish standing, a plaintiff must allege an injury

---

[10] Jevremović makes the conclusory allegation in Paragraph 50 that "Courville has at various times published to the Internet Jevremović's social security number, date of birth, unlisted home phone number, and three of Jevremović's unlisted home addresses … ."  There are no dates or references attached to these allegations other than a link to one specific Instagram post (SAC ¶ 50 n.39), but this post is the same one in which an unidentified third party—not Courville—posted what is alleged to be Jevremović's home address.

that 'affects the plaintiff in a personal and individual way'…'a litigant…cannot rest a claim to relief on the legal rights or interests of third parties.'") (citations omitted).

### C.    Jevremović's Harassment Claims Must Be Dismissed

Jevremović purports to allege two claims for harassment, but these causes of action are brought under New Jersey's *criminal* harassment statute, N.J.S.A. § 2C:33-4, which does not confer a private civil right of action. *Reaves v. Monmouth Univ.,* 2022 WL 17722803, at *6 (D.N.J. Dec. 15, 2022) ("New Jersey law does not provide a private right of action to bring a civil lawsuit pursuant to…N.J.S.A. 2C:33-4."); *Todd v. Citibank*, 2017 WL 1502796, at *5 (D.N.J. Apr. 26, 2017) (holding plaintiff could not proceed on private action for harassment "in light of the New Jersey courts' and State Legislature's reluctance to create a private cause of action under N.J.S.A. 2C:33–4"); *Clark v. Cox*, 2018 WL 259770, at *3 (D.N.J. Jan. 2, 2018) (same).  These claims must therefore be dismissed.[11]

### D.    Jevremović's Emotional Distress Claims Must Be Dismissed

Jevremović's claims for intentional infliction of emotional distress ("IIED") against Courville and negligent infliction of emotional distress ("NIED") against all Defendants fail to state a claim.  Both causes of action require a plaintiff to plead that defendants proximately caused them to suffer emotional distress that is "sufficiently substantial to result in *physical illness* or *serious psychological sequelae*." *Malcolm v. Bray*, 2019 WL 4918105, at *2 (D.N.J. Oct. 4, 2019) (emphasis added) (Such "distress must be so severe that no reasonable person could be expected

---

[11] In pleading this cause of action, Jevremović relies on a Temporary Restraining Order that was issued in California pending a hearing.  SAC ¶ 187.  That Temporary Restraining Order has since been dismissed and the California court granted Courville's motion to dismiss pursuant to California's anti-SLAPP statute. *Jevremović v. Courville*, No.: 23STRO05821, Order Granting Courville's Special Motion to Strike (Cal. Super. Ct. L.A. Cty., Dec. 27, 2023).

to endure it," and it must manifest in a "severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so.").

Jevremović failed to meet this pleading burden: she does not plead that she suffered a "severe and disabling emotional or mental condition" or resultant "serious psychological" or "physical illness." *Id.* Instead, the harms that Jevremović alleges—financial harm, relocation, hiring of security (SAC ¶ 203, 209-210)—are neither physical nor psychological in nature. To the extent that Jevremović pleads she suffered "devastation and emotional distress" (which, in any event, do not amount to a "severe and disabling mental condition"), these allegations are entirely conclusory and fail to detail the precise physical illness or psychological disorder; the allegations are therefore inadequate. *Raciti v. Rushmore Loan Mgmt. Servs., LLC*, 412 F. Supp. 3d 462, 471 (D.N.J. 2019) (dismissing NIED claim: "aside from the conclusory statement that 'Plaintiffs have suffered emotional distress caused by Defendant's unlawful behavior…the Complaint contains no allegations at all regarding Plaintiffs' alleged emotional distress."); *Kennedy v. Am. Airlines Inc.,* 195 F. Supp. 3d 646, 659 (D.N.J. 2016) ("[Plaintiff] alleges, with little if any explanation, that he experienced 'pain and suffering, emotional distress, mental distress, and diminished quality of life'…the Court finds Plaintiff's generic and conclusory allegations of emotional distress inadequate to meet the severity requirement for emotional distress claims."). Here, Jevremović fails to identify a specific psychological disorder or support her conclusory allegations with plausible facts.

Jevremović also fails to allege that any of the distress she allegedly suffered was caused by Courville's "intentional and outrageous conduct," as required to sustain an IIED claim. *Malcolm*, 2019 WL 4918105, at *2. What qualifies as "intentional and outrageous conduct" is very limited; the inquiry is subject to an "elevated threshold" which "is only satisfied in extreme cases under

New Jersey law." *Fogarty v. Household Fin. Corp. III,* 2015 WL 852071, at *16 (D.N.J. Feb. 25, 2015) (quotations and citation omitted).  Indeed, it is not sufficient for a defendant's conduct to be intentionally "tortious or even criminal"—liability on an IIED claim is only found where defendant's conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and be regarded as atrocious, and utterly intolerable in a civilized community."  *Id.* at *16 (citations omitted); *Mosley v. Delaware River Port Auth.,* 2000 WL 1534743, at *12 n.11 (D.N.J. Aug. 7, 2000) (citation omitted).  But the conduct that Jevremović cites in support of her IIED claim falls far short of this high bar.  The claim rests nearly exclusively on Courville's alleged dissemination of Jevremović's personal information.[12]  And here, the SAC does not even plausibly allege that Defendants *did* publish anything private about Jevremović.  In any event, New Jersey courts have found that even publicly disseminating social security numbers does not constitute sufficiently "extreme and outrageous conduct."  *See, e.g., Johnson v. City of Hoboken*, 2023 WL 4717636, at *1, 5 (N.J. Super. Ct. App. Div. July 25, 2023).

Jevremović also alleges that Courville published a photo on Instagram "suggesting Plaintiff was distributing pornographic materials via OnlyFans."  SAC ¶ 201.  Substantively, the allegation grossly mischaracterizes the Instagram post at issue.  The post, included in the Second Amended Complaint at Paragraph 48, shows a profile photograph from the social media page of a woman named "Lima Mora."  SAC ¶ 48.  While Jevremović alleges that this is an OnlyFans profile picture, that characterization is belied by the picture embedded in the Second Amended Complaint, which

---

[12] To the extent Jevremović would argue that the defamation claims somehow support these emotional distress claims, courts in this District have held that "'[t]here is … a certain symmetry or parallel between claims of emotional distress and defamation that calls for consistent results,' such that New Jersey courts do not permit claims for infliction of emotional distress to proceed when the factual basis for the claim is non-actionable defamation."  *Edelman*, 2010 WL 1816180, at *8 (quoting *Decker v. The Princeton Packet*, 116 N.J. 418, 432 (1989)).

includes all the indicia of a *Facebook* profile picture (*i.e.*, the "add friend" and "Facebook Messenger" tools underneath the photograph). So there is no plausible allegation that this profile picture is even connected in any way to an OnlyFans page. Moreover, Courville did not refer to Jevremović at all in this post or make any accusations whatsoever. *Id.* In fact, the only wording on the post is: "Who's she." *Id.* Jevremović's allegation that this post somehow constitutes a "false allegation regarding Jevremović's involvement in pornography" (*id.* ¶ 49) is therefore entirely implausible; Courville did not allege anything *at all* and simply reposted a publicly-available profile picture from a public website. *Id.* ¶ 49. And even accepting Plaintiffs' allegations that the post obliquely refers to Jevremović, at worst, it constitutes nothing more than the types of derogatory insinuations which are routinely rejected as insufficiently outrageous to sustain an IIED claim. *Fogarty*, 2015 WL 852071, at *16 (citing cases where outrageous conduct was found).

### E.    Plaintiffs' Unfair Competition Claims Must Be Dismissed

Jevremović and AURA each bring a separate unfair competition claim against all Defendants. However, an unfair competition claim "is a business tort, generally consisting of the misappropriation of a ***business's*** property by ***another business***." *Sussex Commons Outlets, L.L.C. v. Chelsea Prop. Group, Inc.,* 2010 WL 3772543, at *9 (App. Div. 2010) (emphasis added); *see also Heartland Payment Sys., LLC v. Carr*, 2021 WL 302918, at *8 (D.N.J. Jan. 29, 2021) (dismissing claim brought by individual plaintiff since alleged injury would be to corporate entity, not individual). Thus, as an initial matter, any unfair competition claim could only be made *by* AURA *against* the LLC.

Nor are there any allegations to support the types of unfair competition claims recognized under New Jersey law: "'passing off' one's product as that of another; unprivileged imitation of another's product; and misappropriation or tortious exploitation of another's product." *Mu Sigma, Inc. v. Affine, Inc.*, 2013 WL 3772724, at *7 (D.N.J. Jul. 17, 2013); *Wellness Pub. v. Barefoot*,

2008 WL 108889, at *20 (D.N.J. Jan. 9, 2008) ("A prerequisite to an act of unfair competition is that one party misappropriates another's property."); *New Jersey Optometric Ass'n v. Hillman-Kohan Eyeglasses, Inc.*, 144 N.J. Super. 411, 427 (N.J. Super. 1976) ("Although it is impossible to categorize all acts which constitute unfair competition, there are a few fundamental elements that are definite.  In essence, unfair competition is a business tort.  Generally, it consists of the misappropriation of one's property by another—property which has some sort of commercial or pecuniary value.").  Indeed, "[o]utside of the intellectual property context, unfair competition is not an independent cause of action."  *Heartland Payment*, 2021 WL 302918, at *8.  Yet here, Plaintiffs' unfair competition causes of action are completely silent about misappropriation of property, property theft, or even property at all—this necessitates dismissal.

Instead, Plaintiffs' unfair competition claims hinge exclusively on allegations concerning allegedly defamatory statements that are unrelated to an unfair competition claim, *i.e.*, allegations that "Defendants misled the public regarding AURA and/or products … [by] actively spread[ing] defamatory statements and falsehoods about AURA …."  SAC ¶ 213.  This claim is simply a repackaged defamation claim, not a claim for unfair competition.  *See, e.g., Innovasystems, Inc. v. Proveris Scientific Corp.*, 2014 WL 3887746, at *7 (D.N.J. Aug. 6, 2014) (dismissing unfair competition claim based on defamatory statements; "such a theory does not constitute a claim for unfair competition, but rather an additional attempt to advance a defamation/trade libel claim under the banner of an inapposite business tort.").

Moreover, even if an unfair competition claim could be based on defamatory statements, these claims must be dismissed for the same reasons Plaintiffs' defamation claims should be dismissed.  In particular, there can be no claim here against the LLC, where Plaintiffs did not

29

include a single allegedly defamatory statement attributed to the LLC in the Second Amended Complaint.

**III.**     **The Claims Against Benipal and the LLC Must Be Dismissed**

    **A.**     **There are no Plausible Allegations Supporting any Claims Against Benipal and the LLC**

The 60-page Second Amended Complaint makes only a handful of allegations relating to Benipal or the LLC, but none plausibly allege any wrongdoing.  Plaintiffs allege only that Benipal appeared on Courville's podcast, and without any further detail, vaguely allege that he served as a "*de facto* producer" for Courville's social media channels and that he somehow "financially supported" her activities.  SAC ¶ 4, 9.  Plaintiffs also vaguely suggest that Benipal engaged in "doxing and harassment," but fail to provide a single specific example or any further factual detail.  *Id.* ¶ 41.

Other than these boilerplate, nonspecific allegations, the Second Amended Complaint alleges *one* allegedly defamatory statement attributed to Benipal—a statement that Benipal is alleged to have made "in an August 2022 video."  *Id.* ¶ 146.  Any defamation or false light claim based on this alleged statement is time-barred, as discussed below.  Moreover, as discussed *supra*, this statement is not even defamatory—it is pure conjecture.

The allegations relating to the LLC are even more scant.  Plaintiffs allege the LLC was formed "to carry out the activities of Courville and Benipal" on Plaintiffs' "social media outlets," but offer no further details.  SAC ¶ 5.  These bare-bones allegations fail to attribute any specific act to Benipal or the LLC.

Despite the dearth of any real, specific, or plausible factual allegations about these additional defendants, Plaintiffs purport to allege ***nine*** out of ten of their claims as against all Defendants, including Benipal and the LLC.  In these counts, Plaintiffs do not allege any specific

conduct by Benipal or the LLC.  They instead rely only on vague allegations about  "Defendants" as a group, without providing any specifics as to each defendant's role or liability.  Absent specific factual allegations substantiating Plaintiffs' claims against Benipal and the LLC, Plaintiffs have failed to meet the plausibility threshold demanded by *Iqbal* and all their claims must be dismissed against these defendants.  *Iqbal*, 556 U.S. at 678-79;  *see also Boyd v. New Jersey Dep't of Corr.,* 2013 WL 1163507, at *7 (D.N.J. Mar. 18, 2013) (dismissing complaint "fail[ing] to set forth specific facts indicating each Defendant's liability for each claim…Without such specificity Defendants will not know the basis of Plaintiffs' claims against them and remain unable to respond to those claims.").  This is particularly true for the defamation/false light claims.  These claims are viable only against the party who *made* the false statement—and, with the exception of the non-actionable statement set forth in Paragraph 146, Plaintiffs do not allege that Benipal or the LLC made or otherwise adopted any of Courville's statements as their own.  These claims must be dismissed.  *See, e.g. Perez*, 2013 WL 5770734, at *5 (declining to find statements defamatory where defendant never "adopted the statements contained therein as their own.").[13]

**B.    The Defamation-Based Claims Against Benipal and the LLC are Barred by the Statutes of Limitations**

The defamation and false light claims against Benipal and the LLC must be dismissed on the additional ground that they are barred by the one-year statute of limitations for these claims. N.J.S.A. 2A:14-3; *see also Smith v. Datla*, 451 N.J. Super. 82, 93-94 (App. Div. 2017).  The Second Amended Complaint was filed on September 11, 2023, more than one year after the allegations giving rise to Plaintiffs' claims against Benipal and the LLC, and in particular, over a

---

[13] Further, Plaintiffs plead zero particularized facts alleging Benipal's or the LLC's actual malice, which this Court found must be pled. Opinion at 16.

year after Benipal made his allegedly defamatory statement in what Plaintiffs misdate as an August

2022 video.  SAC ¶ 146.  The claims are therefore time-barred.

Plaintiffs cannot benefit from FRCP 15's relation back doctrine, *i.e.*, applying the date of

the original Complaint to the new allegations against Benipal and the LLC for statute of limitations

purposes.  That doctrine is available only where a plaintiff can demonstrate that the additional

defendants "knew or should have known that the action would have been brought against it, but

for a mistake concerning the proper party's identity."  Rule 15(c)(1)(C)(ii).

Plaintiffs cannot satisfy this requirement.  Here, the original complaint failed to put Benipal

and the LLC on notice that they "would have been sued but for a mistake as to [their] identity."

*Campbell v. Doe*, 2017 WL 349289, at *3 n.1 (D.N.J. Jan. 24, 2017); *Schier v. Unifrutti of Am.,

Dovex Corp.*, 1994 WL 897202, at *4 (D.N.J. Sept. 16, 1994) (FRCP 15 does not apply where the

original complaint "gave [additional defendant] no reason to believe that the plaintiff intended to

sue [them]").  The original Complaint only mentions Courville herself—not Benipal or the LLC.

Plaintiffs failed to include Benipal's "particular alleged act of defamation *at all* until the statute of

limitations had long expired."  *Bank of Hope v. Chon*, 2017 WL 39554, at *3 (D.N.J. Jan. 4, 2017)

(emphasis in original).  Moreover, the original Complaint did not even contain a claim for false

light, against anyone, and could therefore not have given notice to Benipal and the LLC for this

claim.  *See Stokes v. Eldred*, 2022 WL 1802882, at *3 (D.N.J. June 2, 2022). Given that the original

Complaint lacked any indication of potential claims against Benipal or the LLC, "there [was] no

reason" for Benipal or the LLC "to believe that the plaintiff did anything other than make a

deliberate choice" to omit them.  *Lassoff v. New Jersey*, 2006 WL 5509595, at *5 (D.N.J. Jan. 31,

2006) (quoting *Lundy v. Adamar of New Jersey, Inc.,* 34 F.3d 1173, 1177 (3d Cir. 1994)); *Slater

v. Skyhawk Transp., Inc.*, 187 F.R.D. 185, 198 (D.N.J. 1999) ("[Plaintiff] did not misidentify a

party; he simply failed to include one. Thus, [Plaintiff's] Amended Complaint does not relate

back.").  The cost of this deliberate choice by Plaintiffs is the running of the statute of limitations.

## **CONCLUSION**

For the reasons set forth herein, Defendants respectfully request that Plaintiffs' Second

Amended Complaint be dismissed as against them, with prejudice.

Respectfully submitted,

COZEN O'CONNOR, PC
A Pennsylvania Professional Corporation
Attorney for Defendants

BY:

John P. Johnson, Jr.
1010 Kings Highway South
Cherry Hill, NJ 08034
Telephone: 856-910-5001
Fax: 215-701-2049
jjohnson@cozen.com

Keven T. Kerns
*(D.N.J Admission Forthcoming)*
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Telephone:  215-665-6912
Fax:  215-372-2352
kkerns@cozen.com

Tamar Wise (*Admitted Pro Hac Vice*)
3 WTC
175 Greenwich Street, 55th Floor
New York, NY 10172
Telephone: 212-883-4924
Fax: 646-461-2054
twise@cozen.com

Dated:  January 11, 2023