<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

**LIMA JEVREMOVIC, *et al.*,**

Plaintiffs,

v.

**BRITTANY JEREAM COURVILLE, *et al.*,**

Defendants.

Civil Action No. 22-4969 (ZNQ) (RLS)

**OPINION**

---

<u>**QURAISHI, District Judge**</u>

**THIS MATTER** comes before the Court upon a Motion to Dismiss filed by Defendants Brittany Jeream Courville ("Courville"), Prem Benipal ("Benipal"), and That Surprise Witness TV LLC (the "LLC") (collectively, "Defendants"). ("Motion", ECF No. 67.) Defendant filed a brief in support of their Motion. ("Moving Br.", ECF No. 67-1.) Plaintiffs Lima Jevremovic ("Jevremovic") and Autonomous User Rehabilitation Agent, LLC ("AURA") (collectively, "Plaintiffs") filed an Opposition to the Motion ("Opp'n Br.", ECF No. 71), to which Defendants replied ("Reply Br.", ECF No. 74).

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[1] For the reasons set forth below, the Court will GRANT Defendants' Motion.

---

[1] Hereinafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

I.      **BACKGROUND AND PROCEDURAL HISTORY**

This action arises out of alleged defamatory statements made by Defendants across various online platforms about Jevremovic and her company, AURA.  (*See generally* Third Amended Complaint, "TAC".)  A complete factual background of this dispute is set forth in this Court's Opinion dated August 10, 2023, which the Court incorporates by reference.  *Jevremovic v. Courville*, Civ. No. 22-4969, 2023 WL 5127332 (D.N.J. Aug. 10, 2023) (hereinafter *Jevremovic*). The relevant background and procedural history are summarized as follows.

Plaintiffs initiated the instant action on August 8, 2022, by filing the original Complaint. ("Compl.", ECF No. 1.)  On May 30, 2022, the Court issued an Order to Show Cause why this matter should not be dismissed for lack of subject matter jurisdiction because Plaintiffs failed to adequately allege the citizenship of AURA.  (ECF No. 24.)  On June 6, 2023, Plaintiffs filed an Amended Complaint ("Am. Compl.", ECF No. 26) that adequately alleged AURA's citizenship; the original Complaint and the Amended Complaint are otherwise identical. Accordingly, the Court withdrew its Order to Show Cause. (ECF No. 32.)

The Amended Complaint asserted two counts of libel against Courville.  (Am. Compl., ECF No. 26 ¶¶ 29–111.)  Between the two counts, Plaintiffs alleged that Courville made defamatory statements about Plaintiffs on her YouTube channel, on Instagram posts, and on other social media platforms.  The statements largely concerned Plaintiffs' relationship with Amanda Rabb and Brandon "Bam" Margera, individuals associated with Jevremovic and AURA's efforts to provide mental health services to individuals suffering mental health crises.  (TAC ¶¶ 18–19, 23–24.)

Defendants filed a Motion to Dismiss the Amended Complaint (ECF No. 20), which the Court granted.  *Jevremovic*, 2023 WL 5127332.  In *Jevremovic*, the Court held that Courville's

statements ("Challenged Statements") were unactionable opinions, not defamatory statements. *Id.* The Court provided several explanations to support its conclusion that the Challenged Statements were not actionable defamatory statements, including that: (1) the statements were made on Instagram and YouTube which are "forums that welcome opinions and candor," (*id.* at *5); (2) despite being a lawyer, Courville "disclaims that her opinions are 'not legal advice,'" (*id.* at *6); and (3) Courville characterizes her opinions as "theories" and even refers to herself as a "conspiracy theorist," (*id.*). The Court also found that Plaintiffs failed to sufficiently plead actual malice, a demanding standard requiring "particularized facts to suggest that . . . [the statement] was published with knowledge of its falsity or a reckless disregard for the truth or falsity of the reported statement." *Darakjian v. Hanna*, 366 N.J. Super. 238, 248 (App. Div. 2004). Ultimately, Court dismissed the two libel counts without prejudice and granted Plaintiff leave to "cure the defects noted in [*Jevremovic*]" and noted that a failure to do so may result in dismissal with prejudice. *Jevremovic*, 2023 WL 5127332, at *8.

On September 11, 2023, Plaintiffs filed the Second Amended Complaint ("SAC"). (ECF No. 48.) Just a few months later, Plaintiffs filed the Third Amended Complaint ("TAC") on December 6, 2023, to correct a clerical error in the caption of the SAC. (ECF No. 64.) Other than the caption, the SAC and the TAC are identical, and the Court refers to the TAC as it is the operative pleading in this matter.

The amendments in the TAC significantly exceeded the Court's narrow authorization for Plaintiffs to file an amended complaint to cure the defects with their two counts for libel. First, Plaintiffs added two new parties in the TAC, Defendants Benipal and the LLC. (*See generally id.*) Second, Plaintiffs retain their two libel claims but have also added *eight* additional counts, Counts Three through Ten, for various causes of action including invasion of privacy, harassment,

intentional and negligent infliction of emotional distress, and unfair competition.  (*Id.* ¶¶ 173–222.)  To support their additional causes of action, Plaintiffs plead several factual allegations describing Defendants' purported harassment and doxing behavior towards them.  (*Id.* ¶¶ 44–63.) Plaintiffs describe how Defendants "have resorted to an unabashed campaign of doxing and cyber-harassment in attempts to intimidate Jevremovic and prevent" her from bringing this lawsuit.  (*Id.* ¶ 44.)  Plaintiffs allege that Defendants have published over 300 videos and over 1,000 posts about Jevremovic across Defendants' social media outlets.  (*Id.* ¶ 47.)  In particular, Plaintiffs point to a photo that Defendants published "falsely communicating that Courville had found an OnlyFans page for Jevremovic—a profile page which links to pornographic films and photographs that are not Jevremovic."  (*Id.* ¶ 48.)  Finally, Plaintiffs allege that Defendants have distributed personal information relating to Jevremovic and her family.  (*Id.* ¶¶ 50–53.)  Altogether, Plaintiffs claim that Defendants' conduct has caused "substantial and irreversible damage to Jevremovic's career and reputation" and well as destroying AURA's ability to operate professionally or commercially. (TAC ¶¶ 60–61.)

Although Defendants recognize that Plaintiffs have "tried to widen the scope of this action" with their amendments in the TAC, Defendants do not object to Plaintiffs' amendments on a procedural basis and the Motion only seeks dismissal under Rule 12(b)(6).  (Moving Br. at 1.)  As such, the Court accepts the TAC as the operative pleading and will consider Defendants' arguments for dismissal.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (abrogated on other grounds)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed me. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 663). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

III.   **DISCUSSION**

A.   **VIABILITY OF CLAIMS AGAINST DEFENDANTS BENIPAL AND THE LLC**

Before the Court addresses Defendants' arguments for dismissal under Rule 12(b)(6), the Court will first address two arguments Defendants raise seeking to dismiss claims against Benipal and the LLC on alternative grounds.

1.     <u>No Plausible Allegations Support the Claims against Benipal and the LLC</u>

Defendants first raise a broad, overarching argument that the entire TAC should be dismissed against Benipal and the LLC because the TAC lacks specific factual allegations to substantiate the claims against Benipal and the LLC.  (Moving Br. at 30–31.)  Defendants claim that Plaintiffs make "only a handful of allegations relating to Benipal or the LLC, but none plausibly allege any wrongdoing."  (*Id.* at 30.)  Despite Defendants' efforts to characterize the allegations against Benipal and the LLC as "scant," the Court disagrees.  A review of the TAC reveals that, in accordance with Federal Rules of Civil Procedure, Plaintiffs have sufficiently pled allegations against both Benipal and the LLC to satisfy threshold pleading requirements.  The Court therefore rejects Defendants' argument and declines dismissing the claims against Benipal and the LLC on this basis.

2.     <u>Plaintiffs' Libel and False Light Claims are Time-Barred</u>

Defendants next argue that Plaintiffs' defamation-based claims—the libel and false light claims set forth in Counts One, Two, and Four—must be dismissed against Benipal and the LLC because they are time-barred and do not relate-back to the original Complaint filed in 2022.  (*Id.* at 31–33.)  Because Plaintiffs did not seek leave before adding Benipal and the LLC as named Defendants in the SAC (which was superseded by the TAC), the Court must first determine whether the TAC meets the requirements of Federal Rule of Civil Procedure 15(c)(1)(C) prior to addressing the Motion.

Pursuant to Federal Rule of Civil Procedure 15(c)(1), an amendment to a pleading relates back to the date of the original pleading when:

> (A) the law that provides the applicable statute of limitations allows relation back;
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(A)–(C).

Specifically, Defendants take issue with one allegation (TAC ¶ 146), an alleged defamatory statement Benipal made on Courville's YouTube channel, That Surprise Witness, in August 2022.[2] (Moving Br. at 31–32.)  Notably, this is the only defamatory statement alleged against Benipal in the entire TAC.  The allegations that form the basis of the defamation claims against Benipal and the LLC were first filed in the SAC on September 11, 2023.  (ECF No. 48.)  Defendants cite to N.J.S.A. 2A:14-3, the New Jersey statute which sets forth a one-year statute of limitations for a libel claim.  Thus, Defendants argue that libel and false light claims against both Benipal and the LLC must be dismissed.

The parties do not dispute that the first two requirements under Rule 15(c)(1) have been satisfied.  Instead, the dispute lies as to whether Benipal and the LLC were sufficiently put on notice under Rule 15(c)(1)(C).  "[T]he underlying question for a Rule 15(c) analysis is 'whether the original complaint adequately notified the defendants of the basis for liability the plaintiffs would later advance in the amended complaint.'"  *Glover v. F.D.I.C.*, 698 F.3d 139, 146 (3d Cir. 2012) (quoting *Meijer, Inc. v. Biovail Corp.*, 533 F.3d 857, 866 (D.C.Cir.2008)).  Defendants

---

[2] Though TAC states that the video is from August 2022, Defendants note that the video actually aired in July 2022. (Moving Br. at 9 (citing TAC ¶ 146 n.80)).  Plaintiffs try and frame the "concerns with the exact date" of the video as "serious issues with factual and evidentiary development that should be conducted after the pleading stage."  (Opp'n Br. at 33.)  However, this argument fails given Plaintiffs' own pleading and arguments in Opposition confirm that the video was, at the very latest, reposted online in August 2022, which is clearly one year before the SAC was filed in September 2023.  (Id.)

contend that the original pleading in this matter failed to put Benipal and the LLC on notice that they would be sued later because the original Complaint only mentions Courville and contains no mention of Benipal or the LLC.  (Moving Br. at 32.)  Defendants also argue that the original Complaint did not assert a false light claim at all and therefore it could "not have given notice to Benipal and the LLC for this claim." (*Id.*)  Plaintiffs, on the other hand, argue that the Benipal and the LLC were adequately notified because the factual allegations in the original Complaint "would have alerted Benipal and [the LLC] that their conduct would fall within the same penumbra." (Opp'n Br. at 33.)  Plaintiffs further explain that Benipal "produced all [the LLC's] content and he is thereby liable for the Courville statements pleaded on the [LLC's] channels." (*Id.*)

For the reasons set forth below, the Court finds that the defamation claims relate back with respect to the LLC but do not relate back with respect to Benipal.

The parties do not substantively focus their arguments as to whether the defamation claims relate back to the LLC; they largely focus on Benipal.  However, a review of the original Complaint does support a finding that it "adequately notified the [LLC] of the basis for liability [Plaintiffs] would later advance in the [TAC]." *Glover*, 698 F.3d at 146 (internal quotations omitted).  The LLC was not specifically mentioned in the TAC, but the LLC shares a nearly identical name as Courville's various social media handles, "That Surprise Witness" and the LLC was created "to carry out the activities of Courville and Benipal" across the various social media outlets.  (TAC ¶ 5.)  Given Plaintiffs' robust allegations identifying that the majority of the alleged defamatory statements Courville made took place on her social media outlets, and that the original Complaint made many references to her specific social media posts, there is a relationship between Courville and the social media outlets she uses to express her statements.  To that end, there is sufficient overlap between the pleadings so that the LLC was put on notice that it could be culpable for the

conduct that occurred across the social media outlet it carries out.  As such, the Court disagrees with Defendants that the original Complaint "lacked any indication of potential claims" against the LLC.  (Moving Br. at 32.)  Therefore, Plaintiffs may rely upon the relation back doctrine as to the LLC and the Court declines to dismiss the defamation claims against the LLC as time-barred.

The Court does not reach the same conclusion for Benipal.  Regarding Benipal, Plaintiffs raise inconsistent and unpersuasive arguments.  First, unlike with the LLC, Plaintiffs specifically included an alleged defamatory statement made by Benipal in the TAC in 2022.  Plaintiffs argue that Benipal is not only responsible for this alleged defamatory statement, but that he played a role in various other statements that Courville made in 2023.  (Opp'n Br. at 33–34.)  However, if this is the case, then it is unclear why Benipal was not included in the original pleading and Plaintiffs offer no explanation as to why they did not include him.  The Court must therefore find that Plaintiffs "failed to plead this particular alleged act of defamation *at all* until the statute of limitation had long expired."  *See Bank of Hope v. Chon*, Civ. No. , 2017 WL 39554, at *3 (D.N.J. Jan. 4, 2017) (emphasis in original).  Second, the original Complaint neither mentions Benipal nor makes any reference to any other individual or producer that assists or works with Courville.  "Rule 15(c) cannot save a complaint that obscures the factual predicate and legal theory of the amended claim."  *Glover*, 698 F.3d at 147–48.  In that light, even if Benipal is associated with Courville and the LLC, the original Complaint only contemplated the statements Courville herself made on her own social media outlets.  Plaintiffs could have asserted in their original Complaint that other individuals made defamatory statements about Jevremovic and AURA, but they did not.  Therefore, Plaintiffs may not rely on the relation back doctrine as to Benipal and the Court will dismiss Counts One, Two, and Four against Benipal as time-barred.

### B.     RULE 12(b)(6) ANALYSES

#### 1.     Libel Claims (Counts One & Two)

Counts One and Two of the TAC assert claims for libel.  In Count One, Jevremovic alleges a libel claim against Defendants (TAC ¶¶ 64–150), and in Count Two, AURA alleges a libel claim against Defendants (*id.* ¶¶ 151–72).

To adequately state a claim for libel, a plaintiff must satisfy two requirements.  First, a plaintiff must allege a prima facie case of defamation.  To establish a prima facie case of defamation, a plaintiff must show that the defendant communicated a false statement about the plaintiff to a third person that harms the plaintiff's reputation in the eyes of the community or deters third persons from associating with the plaintiff.  *Lynch v. N.J. Educ. Ass'n*, 161 N.J. 152, 164–65 (1999).  A defamatory statement is one that "harms the reputation of another such that it lowers the defamed person in the estimation of the community or deters third parties from dealing with that person."  *Salzano v. N. Jersey Media Grp. Inc.*, 201 N.J. 500, 512 (2010).  "To determine if a statement has a defamatory meaning, a court must consider three factors: '(1) the content, (2) the verifiability, and (3) the context of the challenged statement.'"  *Id.* (quoting *DeAngelis v. Hill*, 180 N.J. 1, 14 (2004)).

Second, where the plaintiff is a public figure, like Jevremovic here, in the present action, a plaintiff must also allege that the defendant acted with "actual malice."[3]  *McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 356 (3d Cir. 2020) (quoting *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993)).  "Actual malice" is a term of art that does not connote ill will or improper motivation.  Rather, it requires that the publisher of the statements either knew that the

---

[3] The parties do not dispute that Jevremovic is a limited public figure.

statements were false, or they published the statements with "reckless disregard" for their truth. *McCafferty*, 955 F.3d at 359.

Before considering the parties' arguments, the Court will first identify the amendments Plaintiffs made in the TAC regarding their libel claims. As a general note, the allegations relating to Plaintiffs' libel claims in the TAC are materially unaltered from the allegations in the Amended Complaint, and it appears that Plaintiffs have intentionally done so.[4] In the TAC, Plaintiffs explain that they "disagree with the Court's finding that no libel claims have been stated" but that they are still bringing their libel claims "[i]n part to preserve the issue for appeal." (TAC at 2 n.1.) The most substantive amendment is in Count One, where Jevremovic alleges several new defamatory statements ("New Statements") made by Courville.[5] (*Id.* ¶¶ 67, 123, 125, 127, 131, 133, 135, 137, 141.) Otherwise, Count Two in the TAC is identical to Count Two in the Amended Complaint, except that AURA has added Benipal and the LLC. (*Id.* ¶¶ 151–72.) Finally, there are some new general factual allegations relating to statements Courville made about Plaintiffs' relationship to Rabb and Margera. (*Id.* ¶¶ 18–19, 23–24.)

Defendants first argue that Plaintiffs failed to cure the deficiencies identified by this Court in *Jevremovic* as to Plaintiffs' prima facie libel claim. Namely, Defendants argue that Plaintiffs' minimal amendments to their libel claims still fail to allege actionable defamatory statements, especially as it relates to the Challenged Statements. The Court agrees with Defendants that Plaintiffs did not "attempt to change the context of the [C]hallenged [S]tatements" and that the Challenged Statements remain unactionable opinions. (Moving Br. at 12.) The only substantive attempt Plaintiffs make to support the viability of the Challenged Statements is underscoring

---

[4] Most substantively, Plaintiffs have included an eight-page "Statement of the Case" in a narrative format and not in numbered paragraph format in accordance with the Federal and Local Rules. (*Id.* at 2–9.)

[5] There is an additional statement alleged in ¶ 146 of the TAC, but because it is made by Benipal, the Court will not consider it.

Courville's legal background. (Opp'n Br. at 14–17.) In this respect, Plaintiffs argue that "Courville's implied authority as a trained lawyer imbues all the content on the Surprise Witness channels" even if she disclaims her opinion are not legal advice or pair her credentials with each of her statements. (*Id.*) However, the Court already considered these arguments in *Jevremovic* and found them unpersuasive. As such, given the TAC remains consistent with the Amended Complaint regarding the Challenged Statements, the Court rejects disturbing the conclusions it made regarding the Challenged Statements in *Jevremovic*.

Further, the Court need not depart from its conclusions in *Jevremovic* as it relates to the New Statements in the TAC because the New Statements suffer the same flaws as the Challenged Statements. Most striking, the New Statements are very similar to the Challenged Statements. For example, the New Statements allege that Defendants referred to Jevremovic as a "handler and trafficker" and that Defendants made a comment stating that it "Looks like team con is planning to traffic @bam_margera for a 'few more months'. #freebam." (TAC ¶¶ 67, 123.) However, the Court previously dismissed Jevremovic's libel claim based on very similar statements, such as a comment Courville made "describing 'Lima Jevremovic' as an 'alleged trafficker'" (SAC ¶ 70) and another statement Courville made suggesting that Jevremovic placed Margera in "a literal human trafficking situation" (*id.* ¶¶ 85–86). The remaining New Statements similarly parallel the content of the Challenged Statements, which further supports the Court's conclusion that the New Statements are also unactionable opinions.

The Court also explained that the context of statements is critical in deciphering unactionable opinions from defamatory speech. 2023 WL 5127332, at *5. Here, the New Statements once again stem from Instagram and YouTube, forums that welcome opinions and candor. *See id.* (collecting cases). This factor again favors a finding that the New Statements are

unactionable opinions.  Finally, though it is evident throughout the TAC that Defendants have a

lot to say about Jevremovic, "mere insults and rhetorical hyperbole, while they may be offensive,

are not defamatory."  *McLaughlin v. Rosanio, Bailets & Talamo, Inc.*, 331 N.J. Super. 303, 312

(App. Div. 2000) (quoting *Lynch*, 161 N.J. at 167–68).  Accordingly, the Court finds that the New

Statements in the TAC are not defamatory statements, but rather unactionable opinions.  For these

reasons, the Court will dismiss Counts One and Two without prejudice.[6]

### 2.    Invasion of Privacy Claims (Counts Three & Four)

#### a)    *Invasion of Privacy – Intrusion upon Seclusion (Count Three)*

In Count Three, Jevremovic alleges a claim for intrusion upon seclusion.  (TAC ¶¶ 173–

79.)  To state a claim for intrusion upon seclusion, the New Jersey Supreme Court has held that a

plaintiff must allege (1) an intentional intrusion, (2) upon the seclusion of another, (3) that is highly

offensive to a reasonable person.  *In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262,

293 (3d Cir. 2016) (citing *Hennessey v. Coastal Eagle Point Oil Co.*, 129 N.J. 81, 609 A.2d 11, 17

(1992)).  Courts have explained that the "thrust" of an intrusion upon seclusion claim is that "a

person's private, personal affairs should not be pried into" and that "there is no wrong where

defendant did not actually delve into plaintiff's concerns, or where plaintiff's activities are already

public or known."  *D'Ambly v. Exoo*, Civ. No. 20-12880, 2021 WL 5083816, at *8 (D.N.J. Nov.

---

[6] Even if the TAC's allegations could somehow be construed as sufficiently stating a claim for libel, the Court further finds that it still must dismiss Counts One and Two because the TAC again fails to adequately allege actual malice. "The actual malice standard is not satisfied by proof of even 'highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers.'" *Campbell v. Pa. Sch. Bds. Ass'n*, 336 F. Supp. 3d 482, 498 (E.D. Pa. 2018) (quoting *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 666 (1989)).  Rather, "'actual malice' requires that 'the defendant in fact entertained serious doubts as to the truth of his publication.'"  *Id.* (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731(1968)). Defendants correctly note that Plaintiffs continue to rely on "conclusory allegations and vague insinuations of improper motives and financial bias" to satisfy the high standard of actual malice.  (Moving Br. at 2–4.)  Plaintiffs' allegations in the TAC do not make such showing.  At best, Plaintiffs allege facts that might explain Defendants' motive for making social media posts about Jevremovic, but these allegations are insufficient to show that Defendants entertained doubts about the truth of the statements.  (TAC ¶¶ 33–36.)

1, 2021) (citing *Bisbee v. John C. Conover Agency, Inc.*, 452 A.2d 689, 691 (N.J. Sup. Ct. App. Div. 1982) (citing Prosser, LAW OF TORTS (4 ed. 1971), § 117 at 807–809)).

Here, Jevremovic alleges that Defendant released the following personal and private information: Jevremovic's family's home addresses, the name and address of the church she attends, her phone number, her social security number, and photos of her family.  (TAC ¶ 176.) Defendants argue that Jevremovic's intrusion upon seclusion claim must be dismissed because "other than conclusory labels, Jevremovic fails to plead that [the] information was not publicly available or that it was wrongfully obtained by Defendants." (Moving Br. at 24.)  Defendants note that home addresses, names and addresses of churches, and phone numbers are all publicly available information. (Reply Br. at 9–10.)  Jevremovic disagrees and contends that "much of the private information published by Defendants was not available to the public." (Opp'n Br. at 25 (citing TAC at 6 nn. 9–10, ¶¶ 50–51, 53–54, 176, 178, 207)).

The Court does not find Jevremovic's arguments convincing because the conclusory allegations in the TAC are insufficient to allege that Defendants committed an intentional intrusion or that Defendants invaded her privacy.  Jevremovic's conclusory characterization of labeling the information Defendants released about her as "private" does not explain how she has an expectation of privacy in any of the information she identifies.[7]  Jevremovic also admits that an intrusion upon seclusion claim typically involves "unauthorized entry to the plaintiff's premises, electronic eavesdropping, unauthorized opening of plaintiff's mail, examining a private bank account, or repeated hounding and harassment." (Opp'n Br. at 25.)  However, the TAC contains

---

[7] Defendants also argue that Jevremovic lacks standing to bring an intrusion upon seclusion claim relating to information Defendants released about individuals other than Jevremovic.  (Moving Br. at 24; Reply Br. at 10.) Jevremovic does not respond to this argument in their Opposition brief.  However, having determined that Jevremovic's intrusion upon seclusion claim cannot succeed based on its failure to state a claim, the Court need not reach Plaintiffs' separate argument.

no allegation to support that Defendants acted in any such manner.  There are no allegations about how Defendants obtained the information, whether Defendants "used anything other than public or permissible means to" obtain the information, or if the information was not public.  *See D'Ambly*, 2021 WL 5083816, at *9.[8]  Without more, Jevremovic cannot sufficiently allege an intentional intrusion into her private information.  The Court will therefore dismiss Count Three without prejudice.

<p style="text-align:center"><em>b)     Invasion of Privacy – False Light (Count Four)</em></p>

In Count IV, Jevremovic asserts a claim for the tort of false light.  (TAC ¶¶ 180–84.)  To state a claim of false light, a plaintiff must allege that (1) the defendant publicized a matter concerning the plaintiff "before the public in a false light"; (2) "the false light in which [the plaintiff] was placed would be highly offensive to a reasonable person"; and (3) the defendant had "knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which [the plaintiff] would be placed."  *Romaine v. Kallinger*, 109 N.J. 282, 294 (1988) (quoting *Restatement (Second) of Torts* § 652E).  The third element of a false-light claim parallels the actual malice requirement of a defamation claim.  *Durando v. Nutley Sun*, 209 N.J. 235, 249 (2012).  For the reasons provided above, the Court concludes that Plaintiff did not sufficiently allege actual malice with respect to her two libel claims.  As such, the Court finds that Jevremovic

---

[8] At best, the TAC includes two facts that reference private information: Jevremovic's social security number (TAC ¶ 50) and a video Courville aired of Jevremovic that was "not public information" (*id.* at 6 nn. 9–10).  As it relates to her social security number, though Jevremovic characterizes the number as "private," Defendants point out that "Jevremovic fails to plead that this information was not publicly available."  (Moving Br. at 24.)  As such, the allegations are unclear as to whether her social security number was already known.  As it relates to the video, the Court notes that the reference to the video is not incorporated in a numbered paragraph within the TAC.  Instead, it appears in the "Statement of the Case" introduction to the TAC and is not repeated again in the pleading.  (TAC at 6.)  The Court rejects relying on this passing reference to support Jevremovic's intrusion upon seclusion claim.  Even if Jevremovic sufficiently alleged that the social security number and the video are private, her intrusion upon seclusion claim nevertheless fails because she does not adequately allege the threshold element of this claim: an intentional intrusion.

has also failed to properly allege actual malice for her claim of false light, and it will dismiss Count Four without prejudice.

### 3.   Harassment Claims (Counts Five & Six)

In Counts Five and Six, Jevremovic asserts claims for harassment, N.J.S.A. § 2C:25-19(a)(13), and cyber-harassment, N.J.S.A. § 2C:25-33-4.1, under the Domestic Violence Act ("DVA").  (TAC ¶¶ 185–95.)  Defendants argue that both of "causes of action are brought under New Jersey's *criminal* harassment statute, N.J.S.A. § 2C:33-4, which does not confer a private civil right of action" and therefore must be dismissed.  (Moving Br. at 25 (emphasis in original) (citing *Reaves v. Monmouth Univ.*, Civ. No. 22-1782, 2022 WL 17722803, at *6 (D.N.J. Dec. 15, 2022); *Todd v. Citibank*, Civ. No. 16-5204, 2017 WL 1502796, at *5 (D.N.J. Apr. 26, 2017); *Clark v. Cox*, Civ. No. 15-6174, 2018 WL 259770, at *3 (D.N.J. Jan. 2, 2018))).  Plaintiffs do not respond to any of Defendants' cited case law.  Instead, Plaintiffs argue that the DVA provides "emergency and long-term civil and criminal remedies" and permits victims to file complaints alleging acts of domestic violence and to "seek emergency *ex parte* relief as a civil remedy."[9]  (Opp'n Br. at 26 (citing N.J.S.A. § 2C:25-18; *Cesare v. Cesare*, 154 N.J. 394, 399 (1998)).

In Opposition, Plaintiffs clarify that their claims for harassment and cyber-harassment are defined by N.J.S.A. § 2:33-4 and N.J.S.A. § 2:33-4.1, respectively.  (Opp'n Br. at 26–27.)  It is well established that New Jersey law does not provide a private right of action for harassment.  *See Rooney v. Carlomagno*, Civ. No. A–1049–08T1, 2010 WL 199397, at *2 (N.J. Super. Ct. App. Div. Jan. 22, 2010) (stating "[w]e have specifically declined the opportunity to consider whether

---

[9] Plaintiffs' reliance on the DVA and *Cesare* to support their civil harassment claim is misplaced.  Among other reasons, Plaintiffs cannot rely on the DVA to bring a civil right of action in federal court given the DVA permits a victim to "file a complaint alleging the commission of an act of domestic violence *with the Family Part of the Chancery Division of the Superior Court* in conformity with the Rules of Court."  N.J.S.A. § 2C:25-28 (emphasis added).

an act of harassment under N.J.S.A. 2C:33–4 creates a civil cause of action for damages"); *Reaves*, 2022 WL 17722803, at *6 ("New Jersey law does not provide a private right of action to bring a civil lawsuit pursuant to [N.J.S.A. § 2:33-4]."); *Malcolm v. Bray*, Civ. No. 19-11734, 2019 WL 4918105, at *1 (D.N.J. Oct. 4, 2019) (dismissing plaintiff's harassment claim because New Jersey does not recognize a civil cause of action for harassment); *Todd*, 2017 WL 1502796, at *5 (same). Accordingly, consistent with case law, the Court finds that Jevremovic has no right of action under the state criminal laws and will dismiss Counts Five and Six with prejudice.

### 4.   Emotional Distress Claims (Counts Seven & Eight)

Next, Jevremovic alleges two emotional distress claims.  In Count Seven, Jevremovic alleges a claim for intentional infliction of emotional distress ("IIED") (TAC ¶¶ 196–203), and in Count Eight, she alleges a claim for negligent infliction of emotional distress ("NIED") (*id.* ¶¶ 204–210).  To state a claim for intentional infliction of emotional distress, a plaintiff must plead "intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." *Buckley v. Trenton Saving Fund Soc.*, 111 N.J. 355, 366 (1988).  To state a claim for negligent infliction of emotional distress, a plaintiff must plead "negligent conduct that is the proximate cause of emotional distress in a person to whom the actor owes a legal duty to exercise reasonable care." *Decker v. Princeton Packet, Inc.*, 116 N.J. 418, 429 (1989).

Jevremovic premises both her emotional distress claims on the following facts: (1) Defendants' distribution of her home address, phone number, social security number, (2) Defendants' distribution of her family's home addresses, and (3) Defendants' publication of a photo of Jevremovic suggesting she was "distributing pornographic materials via OnlyFans."[10]

---

[10] The Court notes that Plaintiffs' IIED and NIED claims are particularly strained.  This is because plaintiffs may not rely upon defamatory statements to serve as the basis for an IIED or NIED claim where their defamation claim fails. "'There is . . . a certain symmetry or parallel between claims of emotional distress and defamation that calls for consistent results,' such that New Jersey courts do not permit claims for infliction of emotional distress to proceed

(TAC ¶¶ 200–01, 207.)  Defendants argue that both the IIED and the NIED claims fail because Jevremovic did not plead that she suffered emotional distress.  (Moving Br. at 25–26).  Jevremovic disagrees and contends that she pleads the various types of psychological and physical harm that she has experienced with sufficient particularity.  (Opp'n Br. at 30–31 (citing TAC ¶¶ 148–150, 176, 177, 179, 182–83, 200, 201, 210 n. 94)).

The Court can dispose of Jevremovic's emotional distress claims quickly.[11]  In New Jersey, "the emotional stress suffered by the plaintiff must be 'so severe that no reasonable man could be expected to endure it.'"  *Moran v. DaVita*, 441 F. App'x 942, 947 (3d Cir. 2011) (quoting *Buckley*, 111 N.J. at 366 (quoting *Restatement (Second) of Torts* § 46 comment j)).  The TAC does contain allegations that allege that Jevremovic suffered "emotional distress," but each allegations is bare, conclusory, and falls very short of the severe distress standard.  Plaintiffs' IIED and NIED claims are narrow and they are premised only on Defendants distribution of Jevremovic's personal information and publication of a photo.  (*See* TAC ¶¶ 196–210.)  With respect to these claims, Jevremovic summarily and conclusory alleges that Defendants' actions have caused "devastation and emotional distress" (*id.* ¶¶ 200–01) and "mental anguish" (*id.* ¶ 210).  There are simply no allegations or facts that actually illustrate or explain the severe emotional distress Jevremovic suffered.  The Court recognizes that Jevremovic alleged facts regarding how Defendants' distribution of her personal information has impacted her privacy (*id.* ¶ 176) and that it "forced [Jevremovic and her family] to move homes, relocate to different states and hire around-the-clock security" (*id.* ¶ 203).  However, these are not the factual allegations required to support an IIED

---

when the factual basis for the claim is non-actionable alleged defamation." *Edelman v. Croonquist*, Civ. No. 09-1938, 2010 WL 1816180, at *8 (D.N.J. May 4, 2010) (quoting *Decker*, 116 N.J. at 432).  As such, Plaintiffs must rely on other non-defamation based grounds to support their claims for IIED and NIED.

[11] Defendants also argue that Jevremovic's IIED claim must be dismissed because Defendants' alleged conduct is not "intentional and outrageous conduct."  (Moving Br. at 26–27.)  The Court need not reach this argument because it finds that Plaintiffs do not adequately plead severe distress.

or NIED claim as they do not pertain to any emotional distress. Accordingly, the Court will dismiss Counts Seven and Eight without prejudice.

5. <u>Unfair Competition Claims (Counts Nine & Ten)</u>

AURA and Jevremovic each assert a claim for unfair competition in Counts Nine and Ten of the TAC, respectively. (TAC ¶¶ 211–222.) Specifically, AURA alleges that Defendants engaged in unfair competition by "actively spread[ing] defamatory statements and falsehoods about AURA, while Courville simultaneously began contributing to another online health company, Giddy." (*Id.* ¶ 213.) AURA alleges that in doing so, Defendants deceived and defrauded the public and have effectively frozen investment in AURA. (*Id.* ¶¶ 214–15.) Jevremovic alleges that Defendants spread defamatory statements about her to intentionally destroy her social media personality and to "siphon off Jevremovic's followers and viewers to Defendants'" social media channels at Jevremovic's expense. (*Id.* ¶¶ 218–221.)

Although New Jersey's unfair competition law is "flexible and elastic," it is "not completely boundless." *Duffy v. Charles Schwab & Co., Inc.*, 123 F. Supp. 2d 802, 815 (D.N.J. 2000) (quoting *N.J. Optometric Ass'n v. Hillman–Kohan Eyeglasses, Inc.*, 144 N.J. Super. 411, 427 (Ch. Div. 1976)); *Wellness Publ'g v. Barefoot*, Civ. No. 02–3773, 2008 WL 108889, at *20 (D.N.J. Jan. 9, 2008). "[M]ost cases of unfair competition encompass one of two torts: [(1) misappropriation or] passing off one's goods or services as those of another and [(2)] unprivileged imitation[.]" *Id.* Furthermore, New Jersey courts have recognized a third tort that falls under the common law of unfair competition: tortious interference.[12] *See EP Henry Corp. v. Cambridge*

---

[12] Some acts that constitute unfair competition have been described as follows:

> either that the means used are dishonest, or that, by imitation of name or device, there is a tendency to create a confusion in the trade, and enable the seller to pass off upon the unwary his goods as those of another, and thereby deceive the purchaser; or that, by false representation, it is intended to mislead the public, and induce them to accept a spurious article in the place of one they have been accustomed to use.

*Pavers, Inc.*, Civ. No. 17-1538, 2017 WL 4948064, at *6 (D.N.J. Oct. 31, 2017) (citing *Nat'l Auto Div., LLC v. Collector's All., Inc.*, Civ. No. A-3178-14T3, 2017 WL 410241, at *4 (N.J. Super. App. Div. Jan. 31, 2017)).

Therefore, under New Jersey's common law, the tort of unfair competition is, thus far, limited to the following three broad categories of behavior: "(1) the 'passing off' of [another's commercial] goods or services [as one's own]; (2) unprivileged imitation; and (3) tortious interference." *EP Henry*, 2017 WL 4948064, at *6 (declining to extend New Jersey's common law tort of unfair competition to encompass false advertising); see also *Tris Pharma, Inc. v. UCB Mfg., Inc.*, Civ. No. A-5808-13T3, 2016 WL 4506129, at *5 (N.J. Super. Ct. App. Div. Aug. 29, 2016) (same).  A plaintiff asserting an unfair competition claim must allege two essential elements: (1) "the misappropriation of one's property by another . . . which has some sort of commercial or pecuniary value"; and (2) "bad faith or malicious conduct." *Harish v. Rubinstein*, 602 F. Supp. 3d 696, 703 (D.N.J. 2022) (quoting *Vorhees v. Tolia*, Civ. No. 16-8208, 2020 WL 1272193, at *11 (D.N.J. Mar. 17, 2020)).

As a preliminary matter, Jevremovic's unfair competition claim is particularly attenuated given that she is an individual.  Unfair competition is known as a "business tort, generally consisting of the misappropriation of a business's property by another business." *Sussex Commons Outlets, L.L.C. v. Chelsea Prop. Grp., Inc.*, Civ. No. A-3714-07T1, 2010 WL 3772543, *9 (N.J. Super. Ct. App. Div. Sept. 23, 2010).  Defendants argue that Jevremovic's unfair competition claim must be dismissed because she is not a corporate entity and therefore cannot, as a matter of law, assert such a claim.  (Moving Br. at 28.)  At least one court has dismissed a similar claim—an unfair competition counterclaim based on a theory of tortious interference brought by an individual

---

*Duffy*, 123 F. Supp. 2d at 815–16 (quoting *Squeezit Corp. v. Plastic Dispensers*, 31 N.J. Super. 217, 221–22 (App. Div. 1954)).

defendant—noting that the individual defendant's counterclaim is "barred by the derivative injury rule" given the defendant's company, and not himself, would be harmed by the alleged tortious interference. *See Heartland Payment Sys., LLC v. Carr*, Civ. No. 18-9764, 2021 WL 302918, at *8 (D.N.J. Jan. 29, 2021). Jevremovic does not directly address this point and offers no authority to support how she can plausibly allege an unfair competition claim as an individual. In fact, her arguments in Opposition merely contend that Defendants' actions have destroyed her "online persona and/or online brand." (Opp'n Br. at 32.) Jevremovic's basis for her unfair competition claim is neither supported by the law or her allegations.

Notwithstanding Jevremovic's capacity as an individual plaintiff, both Plaintiffs' unfair competition claims suffer another flaw. Plaintiffs make no attempt to categorize their claims into one of the three recognized categories of unfair competition: (1) misappropriation of business information or the "passing off" of goods or services; (2) unprivileged imitation; or (3) tortious interference. And it is not surprising that Plaintiffs have failed to do so. The spirit of an unfair competition claim is to "promote higher ethical standards in the business world." *Ryan v. Carmona Bolen Home for Funerals*, 341 N.J. Super. 87, 92 (App. Div. 2001) (citing *N.J. Optometric*, 144 N.J. Super. at 427). The essence of the present action is a defamation claim primarily between two individuals. Even under the "amorphous" and "flexible and elastic" area of law that is unfair competition, Plaintiffs' allegations do not set forth viable claims here. *See Duffy*, 123 F. Supp. 2d at 815–16. At best, AURA alleges that Defendants' statements have frozen investment in the company and "forestalled further development of AURA's new health-based business." (TAC ¶ 215.) In making this argument, AURA improperly relies on the alleged defamatory statements as the basis for the harm. The Court agrees with Defendants that this theory is simply a "repackaged defamation claim" and not an independent claim for unfair competition. *See*

*Innovasystems, Inc. v. Proveris Sci. Corp.*, Civ. No. 13-05077, 2014 WL 3887746, at *7 (D.N.J. Aug. 6, 2014) (finding that plaintiff's unfair competition claim premised on defamatory statements did not "constitute a claim for unfair competition, but rather an additional attempt to advance a defamation/trade libel claim under the banner of an inapposite business tort"). Therefore, the Court will dismiss Counts Nine and Ten without prejudice.

## IV.   <u>CONCLUSION</u>

For the reasons stated above, the Court will GRANT Defendants' Motion (ECF No. 67). Specifically, the Court will DISMISS WITHOUT PREJUDICE Counts One, Two, Three, Four, Seven, Eight, Nine, and Ten; the Court will DISMISS WITH PREJUDICE Counts Five and Six. Plaintiffs will be given thirty (30) days to file a Fourth Amended Complaint, limited to remedying the defects in the counts dismissed without prejudice. Failure to cure the defects noted in this Opinion may lead to dismissal with prejudice. An appropriate Order will follow.


Date: **August 30, 2024**

<div style="margin-left:40%">

s/ Zahid N. Quraishi

**ZAHID N. QURAISHI**

**UNITED STATES DISTRICT JUDGE**

</div>