# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LIMA JEVREMOVIĆ, an individual; and AUTONOMOUS USER REHABILITATION AGENT, LLC, a Delaware Limited Liability Company, : : : : : | |
|       Plaintiffs, : : | CIVIL ACTION NO.: 3:22-cv-04969-ZNQ-RLS |
|       vs. : : : | |
| BRITTANY JEREAM COURVILLE, an individual; and THAT SURPRISE WITNESS TV LLC, a New Jersey limited liability corporation. : : : : : | |
|       Defendants. | |

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' FOURTH AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

# TABLE OF CONTENTS

**Page**

STATEMENT OF FACTS ................................................................................................ 4

ARGUMENT ................................................................................................................... 8

I.    Plaintiffs' Defamation Claims Must Be Dismissed ............................................. 8

    A.    The FAC Does Not Salvage the Deficient Defamation Claims ............................ 8

        1.    The Challenged Statements in the FAC are Still Protected Opinion. ......... 8

        2.    Plaintiffs Still Fail to Adequately Plead Actual Malice ........................... 12

        3.    The Additional Challenged Statements are not Defamatory ................... 14

            a)    Legal Standard for Defamation Claims ....................................... 15

            b)    Additional Challenged Statements Regarding Amanda Rabb (FAC ¶¶ 48, 50, 52, 56). ......................................... 15

            c)    Additional Challenged Statements Regarding Margera. (FAC ¶¶ 92, 132-136.) .................................................. 20

II.    Plaintiffs' Additional Claims Are Inadequately Pled and Must Be Dismissed ................. 25

    A.    The FAC Fails to Salvage Jevremović's Intrusion Upon Seclusion Claim .......... 25

    B.    Jevremović's Emotional Distress Claims Must Be Dismissed ............................ 27

    C.    AURA's Tortious Interference Claims Fail as a Matter of Law .......................... 29

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abdur-Raheem v. New Jersey Dep't of Corr.*,
2018 WL 6837973 (D.N.J. Dec. 31, 2018) .......................................................15, 17

*Air Wis. Airlines Corp. v. Hoeper*,
571 U.S. 237 (2014) ..........................................................................................15

*Am. Millenium Ins. Co. v. First Keystone Risk Retention Grp., Inc.*,
2008 WL 11377739 (D.N.J. Mar. 12, 2008), *aff'd*, 332 F. App'x 787 (3d Cir. 2009) ....................................................................................................................30

*Angle v. United States*,
2012 WL 6708165 (D.N.J. Dec. 21, 2012) ......................................................29

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................8

*Atlas Data Privacy Corp. v. We Inform, LLC*,
2024 WL 4905924 (D.N.J. Nov. 26, 2024) ......................................................26

*Baiul v. Disson*,
607 Fed. App'x 18 (2d Cir. 2015) ....................................................................14

*Bisbee v. John C. Conover Agency, Inc.*,
186 N.J. Super. 335 (App. Div. 1982) ..............................................................26

*Cassava Sciences, Inc. v. Bredt*,
2024 WL 1347362 (S.D.N.Y. Mar. 28, 2024) ..................................................14

*Cibenko v. Worth Publishers, Inc.*,
510 F. Supp. 761 (D.N.J. 1981) ........................................................................25

*Couch v. Verizon Commc's, Inc.*,
2021 WL 4476698 (D.D.C. Sept. 30, 2021) .....................................................14

*D'Ambly v. Exoo*,
2021 WL 5083816 (D.N.J. Nov. 1, 2021) ........................................................26

*Edelman v. Croonquist*,
2010 WL 1816180 (D.N.J. May 4, 2010) ............................................9, 10, 19, 28

*Fogarty v. Household Fin. Corp. III*,
2015 WL 852071 (D.N.J. Feb. 25, 2015) .........................................................28

ii

*Gertz v. Robert Welch Inc.*,
    418 U.S. 323 (1974)...........................................................................................9

*Green v. NCO Inovision*,
    2010 WL 147934 (D.N.J. Jan. 11, 2010) .............................................................15

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
    491 U.S. 657 (1989).........................................................................................13

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997)............................................................................5

*Itiowe v. U.S. Gov't*,
    553 F. App'x 271 (3d Cir. 2014) .......................................................................26

*Johnson v. City of Hoboken*,
    2023 WL 4717636 (N.J. Super. Ct. App. Div. July 25, 2023)...............................29

*Jorjani v. New Jersey Institute of Tech.*,
    2019 WL 1125594 (D.N.J. Mar. 12, 2019).....................................................9, 19

*Karnell v. Campbell*,
    206 N.J. Super. 81 (App. Div. 1985) ................................................................2

*Klagsbrun v. Va'ad Harabonim of Greater Monsey*,
    53 F. Supp. 2d 732 (D.N.J. 1999), *aff'd*, 263 F.3d 158 (3d Cir. 2001) ...................15

*Lee v. TMZ Prods. Inc*,
    710 F. App'x 551 (3d Cir. 2017) ......................................................................12

*M.H. by D.H. v. C.M.*,
    2020 WL 6281686 (D.N.J. Oct. 27, 2020)..........................................................28

*Malcolm v. Bray*,
    2019 WL 4918105 (D.N.J. Oct. 4, 2019).......................................................27, 28

*Marino v. Westfield Bd. of Educ.*,
    2017 WL 216691 (D.N.J. Jan. 18, 2017) ............................................................25

*McBride v. Twp. of Washington*,
    2020 WL 3396802 (D.N.J. Jun. 19, 2020)..........................................................15

*Mosley v. Delaware River Port Auth.*,
    2000 WL 1534743 (D.N.J. Aug. 7, 2000) ..........................................................28

*NY Mach. Inc. v. Korean Cleaners Monthly*,
    2019 WL 12072569 (D.N.J. Aug. 27, 2019) .......................................................30

*O'Keefe v. WDC Media, LLC*,
   2015 WL 1472410 (D.N.J. Mar. 30, 2015) .................................................................19, 22

*Reed v. Scheffler*,
   218 F. Supp. 3d 275 (D.N.J. 2016), *aff'd*, 771 F. App'x 162 (3d Cir. 2019) .....................8, 18

*Salzano v. N. Jersey Media Grp. Inc.*,
   201 N.J. 500 (2010) ...................................................................................................15, 18

*Schwartz v. Worrall Pubs., Inc.*,
   258 N.J. Super. 493 (App. Div. 1992) ............................................................................13

*Sciore v. Phung*,
   2022 WL 950261 (D.N.J. Mar. 30, 2022)........................................................................30

*Swift v. United Food Commercial Workers Union Local 56*,
   2008 WL 2696174 .........................................................................................................25

## Other Authorities

Fed. R. Civ. P. 12(b)(6)...............................................................................................0, 5, 8

Plaintiffs, Lima Jevremović and Autonomous User Rehabilitation Agent, LLC ("AURA"), have **_twice_** tried their luck on the defamation claims before this Court—to no avail. This Court twice dismissed Plaintiffs' defamation claims on two independent grounds, finding that the challenged statements were protected opinion **_and_** that Plaintiffs failed to allege particularized facts satisfying the high bar for "actual malice." Yet, even with the benefit of amending their pleading, Plaintiffs have failed to cure these defects. While at first glance the Fourth Amended Complaint ("FAC") appears extensively marked up from the prior version, the changes are overwhelmingly cosmetic. The FAC either repeats verbatim or simply repackages the substance of previously-alleged challenged statements, necessitating dismissal for the same reasons. No matter how Plaintiffs try to repurpose the same allegations, the pleading still glaringly lacks the plausible factual allegations necessary to support Plaintiffs' claims. In dismissing the Third Amended Complaint, this Court cautioned Plaintiffs that a "[f]ailure to cure the defects noted in this Opinion may lead to dismissal with prejudice." Dkt. #44 at 19. The FAC failed to cure the defects and fails to state a claim, so it should be dismissed with prejudice.

By way of background, AURA offers mental health treatment services for substance abuse disorders. Jevremović is its founder and CEO. Plaintiffs have coopted extensive media opportunities to market AURA, thereby inviting the scrutiny of the millions of viewers—but when confronted with criticism or an unflattering opinion, Plaintiffs seek to suppress that opinion with litigation. This is such a case, and it concerns a handful of posts by Defendant Brittany Courville on social media, including on Instagram and YouTube, raising concerns and expressing her opinions about AURA's and Jevremović's practices, primarily as they relate to the treatment of two AURA clients: celebrity Bam Margera, and Amanda Rabb, a homeless, drug-addicted woman who died while using AURA's services as part of court-ordered treatment.

1

Courville's statements, made on informal channels replete with hyperbolic language, cannot be defamatory simply because Plaintiffs do not like Courville's opinions or because they are unflattering. Instead, the statements are valid expression about matters of public concern which are wholly protected by the United States Constitution. Indeed, one New Jersey court—quoting the New Jersey Supreme Court—went so far as to express its "profound[] concern[] with the chilling effect that plaintiffs' lawsuit in these rather unremarkable circumstances may have on other citizens who would ordinarily speak out on behalf of what they perceive to be the public good," noting that courts "are extremely 'loathe to discourage that robust and uninhibited commentary on public issues that is part of our national heritage.'" *Karnell v. Campbell*, 206 N.J. Super. 81, 95 (App. Div. 1985) (citing *Kotlikoff v. The Community News*, 89 N.J. 62, 67 (1982)).

Plaintiffs renew their defamation-based claims in the FAC, and even add a handful of additional allegedly defamatory statements. However, these claims continue to suffer from the same pleading defects this Court found warranted dismissal of the prior two complaints. Specifically, this Court's grounds for finding that the challenged statements constituted protected opinion remain unaffected by the FAC because the specific contextual elements the Court found suggestive of opinion statements are unchanged. Plaintiffs also add allegations showing comments made by a cherry-picked handful of Courville's audience that, according to Plaintiffs, suggest viewers understood Courville's statements as "fact," not opinion—but this self-serving interpretation of these comments ignores that those allegations suggest only that viewers simply agreed with the opinions Courville provided. The remaining additional allegations Plaintiffs added in the FAC are simply repetitive of allegations that this Court already considered and rejected.

This Court also previously dismissed the defamation claims because Plaintiffs failed to allege "particularized" allegations showing that Courville actually entertained serious doubts (or

any doubts at all) as to the veracity of the challenged statements. And there are no such particularized allegations in the FAC. Plaintiffs continue to rely on conclusory allegations and vague insinuations of improper motives and financial bias, but as this Court already held, these are inadequate to demonstrate that Courville *actually* entertained serious doubts as to the veracity of her statements. And while Plaintiffs are required to plead actual malice for *each* challenged statement, Plaintiffs only attempt to do so as to one or two challenged statements—and even these allegations fail to meet the high standard for actual malice. This pleading failure provides a second, independent ground for dismissing the FAC's defamation-based claims.

Jevremović (but not AURA)[1] also adds a handful of new allegedly defamatory statements, some of which are substantively identical to those in the dismissed prior complaints and necessitate dismissal for the same reasons. In addition to the protected opinion and actual malice deficiencies, the additional challenged statements are also, variably, not plausibly alleged to be false, not capable of defamatory meaning, or they are statements of pure conjecture. And because false light and defamation claims are subject to the "same considerations," Plaintiffs' false light claims fail.

Jevremović's remaining claims are based on allegations that Defendants published Jevremović's (and others') private information. Jevremović fails to cure the defects that led the Court to dismiss these claims. Jevremović re-alleges claims for intentional and negligent infliction of emotional distress—but fails again to plead specific, severe psychological harm caused by highly offensive conduct. Jevremović also re-alleges a claim for intrusion upon seclusion, but in the FAC, Jevremović does not allege that the disclosed information was not publicly available, nor does she plead that the information was wrongfully obtained. Finally, AURA purports to bring

---

[1] The prior versions of the complaint separated out the statements alleged to be defamatory to Jevremović and those alleged to be defamatory to AURA. The FAC does away with that categorization. In any event, none of the "new" allegations appear to pertain to AURA.

tortious interference claims but fails to identify any specific contracts or investors with whom Defendants interfered, let alone that Defendants were the cause of any such investor problems.

Plaintiffs have now failed *three* times to meet their pleading burden.  For these reasons, as more fully set forth below, Defendants respectfully request dismissal of the FAC with prejudice.

## STATEMENT OF FACTS

Jevremović is the founder and CEO of AURA (FAC ¶ 2), which provides mental health treatment services for substance abuse disorders.  *Id.* ¶ 14.  AURA has engaged "celebrities, influencers, and persons in the public eye" to "develop a viral, word-of-mouth buzz surrounding" its services.  *Id.* ¶ 14.  One such celebrity was Margera, who "has starred in the blockbuster Jackass movies and popular television programs."  *Id.* ¶ 84.  In 2021, an Arizona court imposed a one-year guardianship over Margera with Jevremović as his guardian, and court-ordered treatment at a rehabilitation facility.  *Id.* ¶¶ 85, 100, 128-129.

In addition to providing its services to celebrities, AURA's business model includes providing free-of-charge services to less fortunate individuals.  *Id.* ¶ 14.  In this vein, AURA provided its services to Rabb, a homeless, drug-addicted woman.  *Id.* ¶¶ 31-32.  Jevremović succeeded in obtaining court-ordered, involuntary treatment for Rabb, which AURA provided.  *Id.* ¶¶ 34, 59.  Unfortunately, Rabb passed away on May 9, 2021.  *Id.* ¶ 36.

Courville is a self-proclaimed conspiracy "theorist" with an active social media presence. *Id.* ¶¶ 111, 128, 148.  Courville has taken an interest in conservatorship cases and posts about her "theories" on Instagram and her YouTube channel.  FAC ¶¶ 26-27, 111, 128, 148; *see generally* Courville's Instagram account, https://www.instagram.com/thatsurprisewitness/?hl=en; YouTube channel,   https://www.youtube.com/channel/UCDP9HU8g2JLimHmcLqsTGEg?app=desktop.[2]

---

[2] The FAC is based upon alleged defamatory statements on Courville's Instagram and YouTube accounts.  As such, their contents are properly considered in deciding a motion to dismiss for

That Surprise Witness TV LLC (the "LLC Defendant") was formed "to carry out the activities of Ms. Courville." FAC ¶ 4.

On August 8, 2022, Plaintiffs filed their original Complaint alleging defamation.[3] Dkt. #1. By Order dated August 10, 2023, the Court granted Courville's motion to dismiss the Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Dkt. #44 ("Opinion I").

This Court relied on two independent grounds for dismissal of the Complaint: (1) the allegedly defamatory statements were protected opinion; and (2) Plaintiffs failed to adequately plead actual malice given that Plaintiffs were limited-purpose public figures.[4] As to the first ground, this Court held that "context is critical in deciphering unactionable opinion versus defamatory speech." Opinion I at 12. The Court noted that Courville's "statements were delivered by a social media influencer on Instagram, and occasionally, YouTube," "forums that welcome opinions and candor." *Id.* at 12-13. This Court cited cases recognizing that "internet forums" are "specifically designed for the publication of crowd-sourced opinionated statements," and publication on such forums "conveys a strong signal to a reasonable reader that the statements are defendant's opinion" and should be given "less credence" than "similar remarks made in other contexts." *Id.* (quoting *Sciore v. Phung*, 2022 WL 950261, at *11–12 (D.N.J. Mar. 30, 2022)). Referencing other critical context to the challenged statements, the Court noted that Courville "[i]n satirical spirit," "can be seen wearing either panda ears or bunny ears while making her statements,

---

purposes of understanding the context of any individual post. *See, e.g., In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (where the plaintiff "relied upon" certain sources in formulating the complaint, those sources are properly considered on a motion to dismiss, as this allows for the challenged statements to be examined in their "full context").

[3] The original complaint ("Complaint" or "Compl.") was amended on June 6, 2023, to add further jurisdictional detail pursuant to the Court's Order to Show Cause. Dkt. #24. It is otherwise substantively identical to the original Complaint. References herein to the "original Complaint," including specific paragraph references, are therefore to the version as amended on June 6, 2023.

[4] Plaintiffs never disputed this characterization.

while a sparkly unicorn piñata rests prominently in the background.  Additionally, Defendant's profile picture [on her Instagram page] is a photograph of her wearing a pink fuzzy ear headband and tie-dye shirt, and includes in her Instagram biography that she is a 'Legal Edutainer (not legal advice).'"  Opinion I at 13.  Finally, the Court noted that "the specific language" used by Courville "signals that [she] is merely expressing her opinions and theories," as she "repeatedly refers to her opinions" "as mere 'theories,'" marked by language such as "I think" or "it seems."  *Id.* at 13-14, 16.  The Court held that "all of [this] point[s] to unactionable opinions."  *Id.* at 14.

As to actual malice, this Court made clear that the standard required Plaintiffs to plead "sufficient particularized facts" that Courville "seriously doubted" the truth of her statements.  *Id.* at 17-18 (citing cases).  This Court cautioned it is "not enough" to plead that Courville published statements "without fact-checking, without investigation, without interviewing those involved, and with no regard for accuracy."  *Id.* (citing cases).  Against this legal backdrop, this Court found Plaintiffs' actual malice allegations—statements concerning motive and otherwise lacking factual support—"bare and conclusory."  *Id.*  As this Court found, "Plaintiffs do not point to any facts—circumstantial or direct—that demonstrates Defendant entertained any serious doubts about the veracity of the statements she made."  *Id.* at 19.

On September 11, 2023, Plaintiffs filed their Second Amended Complaint (superseded by a Third Amended Complaint)[5], adding two defendants and asserting an additional eight causes of action.  In its opinion dated August 30, 2024, this Court granted Defendants' motion to dismiss on the same grounds as with the prior complaint.  Specifically, the Court held that "Plaintiffs did not attempt to change the context of the challenged statements and that the challenged statements

---

[5] The Third Amended Complaint is identical to the Second Amended Complaint but for a correction to the LLC Defendant's name.

remain unactionable opinions." Dkt. #75 ("Opinion II" or "Second Opinion"), at 11 (cleaned up). The Court further held that the Third Amended Complaint included "new" allegedly defamatory statements that "parallel the content" of the statements found not defamatory in the original complaint, and were non-actionable as a result. *Id.* at 12. The Court did not need to reach the actual malice argument, but noted that the pleading still failed to meet the high bar of showing that Courville "in fact entertained serious doubt as to the truth of [her] publication." *Id.* at 13 n.6 (citation omitted). As the Court concluded, "though it is evident throughout the [Third Amended Complaint] that Defendants have a lot to say about Jevremović, 'mere insults and rhetorical hyperbole, while they may be offensive, are not defamatory.'" *Id.* at 13 (citation omitted).

This Court dismissed the non-defamation claims for failure to state various elements of those claims, including to allege that information Defendants purportedly disseminated was private and wrongfully obtained, and failure to allege that Jevremović suffered severe psychological or physical harm as a result of Defendants' extreme and outrageous conduct. *Id.* at 13-22.

On October 23, 2024, Plaintiffs filed the FAC, accepting the Court's invitation to attempt to remedy the pleading deficiencies outlined in the Second Opinion. Dkt. #79. In the FAC, each Plaintiff continues to bring a defamation claim, and Jevremović continues with the related claim for false light. These defamation-based claims purport to arise from Courville's statements on social media concerning specific topics:

- statements suggesting that Jevremović worked with Rabb's father and a third party to procure treatment for Rabb (FAC ¶¶ 48, 50, 52, 56, 77);
- statements referring to Jevremović's treatment of Ms. Rabb, including employment of a fundraiser for Ms. Rabb's medical treatment (*id.* ¶¶ 60, 61);
- statements referring to Ms. Rabb's cause of death (*id.* ¶¶ 64, 120),
- statements vaguely referring to a criminal conspiracy and other types of improper conduct surrounding Mr. Margera's guardianship (*id.* ¶¶ 92, 97, 105-106, 111, 114, 121, 124, 127, 128, 132-136, 144, 153); and
- statements of concern over AURA's business practices (*id.* ¶¶ 70, 72, 74, 75, 77, 79).

Jevremović also re-alleges emotional distress and intrusion claims stemming from Courville's purported release of her personal information.  AURA also purports to bring new tortious interference claims based on unspecified interference with vague business opportunities.

For the reasons set forth in detail herein, Plaintiffs failed again to plausibly allege these claims and they should be dismissed with prejudice.

## ARGUMENT

To survive dismissal, a complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Bell Atlantic Corp. v. Twombly*¸ 550 U.S. 544, 555, 557 (2007)).  A claim must be pled with facial plausibility; where a complaint provides facts "merely consistent with" the defendant's liability, it "stops short of the line between possibility and plausibility" and will not survive review under Rule 12(b)(6).  *Iqbal*, 556 U.S. at 678.

## I.    Plaintiffs' Defamation Claims Must Be Dismissed

### A.    The FAC Does Not Salvage the Deficient Defamation Claims

This Court twice dismissed Plaintiffs' defamation claims on two grounds:  (1) the challenged statements were constitutionally protected opinion and (2) the complaint failed to allege that Courville made the challenged statements with actual malice.  Opinion I at 7-19; Opinion II at 10-13.  The FAC does not remedy either of these deficiencies and the defamation claims continue to suffer from the fatal defects this Court found warranted their dismissal.

#### 1.    The Challenged Statements in the FAC are Still Protected Opinion.

As this Court already found in dismissing the two prior complaints, statements of opinion are not actionable as defamation.  *Reed v. Scheffler*, 218 F. Supp. 3d 275, 282 (D.N.J. 2016), *aff'd*, 771 F. App'x 162 (3d Cir. 2019) (opinions are not defamatory "because such statements only

reflect a state of mind, and therefore generally cannot be proved true or false.") (quotations and citation omitted). As the United States Supreme Court held, it does not matter how "pernicious" an opinion is; it cannot be false and is therefore constitutionally protected. *Gertz v. Robert Welch Inc.*, 418 U.S. 323, 339-340 (1974). New Jersey courts have long held that "[s]tatements of 'pure' opinion—i.e., when the speaker states the facts on which an opinion is based—cannot trigger liability." *Jorjani v. New Jersey Institute of Tech.*, 2019 WL 1125594, at *4 (D.N.J. Mar. 12, 2019); *Edelman v. Croonquist*, 2010 WL 1816180, at *6-7 (D.N.J. May 4, 2010) (calling plaintiff derogatory names was protected opinion because defendant set forth basis for the opinion).

In dismissing Plaintiffs' claims in the original Complaint, this Court noted that "context is critical in deciphering unactionable opinion versus defamatory speech." Opinion I at 12. This Court considered the many indicia of opinion contextualizing the challenged statements— including the Internet (specifically, social media) forum; the tone of the statements accompanied by emojis; the loose, figurative and colloquial language and backdrop; the rhetorical questions and conjecture; and the disclaimers—to reach the conclusion that these contextual clues, together, would indicate to a reader that the statements are intended to be opinion. *Id.* at 12-14, 16.

Plaintiffs have continuously failed to remedy this pleading defect. This is not surprising given that there are no allegations that Plaintiffs *could* make that could change the fact that Courville made the challenged statements on social media platforms, or that she used satirical, opinion language—as well as extensive disclaimers—in her emoji-ridden posts. In an attempt to address this deficiency in the prior complaint, Plaintiffs added only variations of the same previously-inadequate allegations underscoring Courville's legal background. However, as the Court noted in dismissing the claims for the second time, "the Court already considered these arguments in *Jevremović* and found them unpersuasive." Opinion II at 12. Specifically, this Court

held that "Plaintiffs did not attempt to change the context of the challenged statements and the Challenged Statements remain unactionable opinions." *Id.* at 11 (cleaned up).

Plaintiffs fare no better in the FAC. Plaintiffs appear to now rely on a handful of cherry-picked comments from Courville's viewers to suggest they interpreted her statements as "facts." FAC ¶¶ 55, 62, 68, 70, 78, 98-99, 108, 116-118, 125, 131, 141-142, 146-147, 150-151, 176-177. But the bald suggestion that Courville's viewers understood her statements a certain way is not a new argument. Indeed, Plaintiffs have made this argument in response to *each motion to dismiss* in an attempt to convince the Court that Courville's statements are not opinion. *See* Dkt. #22 (Pls.' Opp. to Defs.' Motion to Dismiss Original Complaint) at 5 ("As noted throughout Plaintiffs' Complaint, the *actual readers* of Courville's defamation campaign against Jevremović overwhelmingly interpreted Courville's statements as factual. They believed Courville, and were outraged, because they thought Courville's statements were factually true."); Dkt. #34 (renewing same arguments in opposition to Motion to Dismiss First Amended Complaint); Dkt. #71 (Pls.' Opp. to Defs.' Motion to Dismiss Third Amended Complaint) at 16 ("Courville's audience *does* believe her to be a source of verifiable information"). Nor are the additional allegations of viewer comments "new" to the FAC. The Third Amended Complaint included the same types of viewer comments—some of which are *identical* to the ones Plaintiffs now point to in the FAC—as alleged cures for the pleading defect. *See, e.g.,* Third Amended Complaint (Dkt. #64 "TAC") at ¶¶ 85, 96, 112, 152, 154. Plaintiffs therefore already presented this Court with these arguments and allegations, and each time, this Court has found the challenged statements to be protected opinion. Plaintiffs do not present any substantively new arguments to cure this pleading defect.[6]

---

[6] Plaintiffs also include an allegation that Courville referred to her statements as "truth." FAC ¶ 41. But this, too, is not a new allegation—it appears in a different form in the now-dismissed original Complaint. Dkt. #26 ¶ 17, n.2. Similarly, Plaintiffs' new allegations about Courville's

For example, Jevremović tries to rely on purported viewer responses to argue that a challenged statement *already dismissed in the prior complaint* is defamatory.  Specifically, Jevremović baldly argues (again) that Courville posted on Instagram a "false statement that Ms. Jevremović is involved in pornography" (FAC ¶ 178), but as with the prior complaint, the allegation grossly mischaracterizes the Instagram post at issue.  Courville's Instagram post shows only a profile photograph from the social media page of a woman named "Lima Mora."  FAC ¶ 174.  While Jevremović alleges that this is an OnlyFans profile picture (FAC ¶¶ 177), that characterization is belied by the picture embedded in the FAC, which includes all the indicia of a *Facebook* profile picture (*i.e.*, the "add friend" and "Facebook Messenger" tools underneath the photograph).  So there is no plausible allegation that this profile picture is even connected in any way to an  OnlyFans page.  Plaintiffs' only support for the proposition that the post implicated Jevremović in pornography is a series of excerpted comments (tellingly, not in quotation marks) by unidentified viewers—not Courville herself—that Jevremović has an "only fans."  FAC ¶ 176. But these comments cannot transform Courville's reposting of a public photo into something Courville never actually said.  This Instagram post is not defamatory as this Court previously found by dismissing the Third Amended Complaint.

In any event, these additional allegations of viewer comments do not undermine the Court's finding that the context of Courville's statements signals opinion.  Even this limited sampling of comments on Courville's videos and posts reflects only that viewers were engaging in dialogue with Courville, thanking her for drawing attention to potential wrongdoers and for providing them with her thoughtful insights.  To the extent viewers commented with characterizations of

---

"conspiracy theory label" are mere repackaging of the same allegations in the prior versions of their pleadings that this Court found part of the context suggesting opinion, not fact.  FAC ¶ 113; Compl. ¶¶ 17 n.2, 39, 45; TAC at p. 7; Opinion I at 13-14; Opinion II at 11-12.

Jevremović's conduct (calling her actions "criminal" and "sick") or praised Courville's efforts, this has no bearing on whether Courville's statements were presented as fact or opinion. Indeed, the FAC includes some statements by viewers that Plaintiffs never plead *Courville* herself made. And other comments in line with Courville's statements simply suggest, at most, that viewers actually agreed with the opinions Courville provided. In twice rejecting Plaintiffs' self-serving argument about viewer understanding and interpretation, this Court found that a holistic view of the context of the statements *as a whole* indicated to the reader that they were statements of opinion. Opinion II at 10-13.

Plaintiffs' repeated failure to cure the first, independent ground on which the Court dismissed the defamation claims warrants dismissal with prejudice.

### 2.    Plaintiffs Still Fail to Adequately Plead Actual Malice

Plaintiffs also failed to provide the plausible actual malice allegations missing from their prior Complaints. This Court found that the actual malice standard applies; thus, to survive dismissal, Plaintiffs had to "allege sufficient particularized facts" demonstrating that Defendants "seriously doubted" the veracity of their statements. Opinion I at 17-18 (citing cases); *Lee v. TMZ Prods. Inc*, 710 F. App'x 551, 560 (3d Cir. 2017) (affirming dismissal of defamation claim absent allegation defendant "*actually* doubted the veracity of the articles.") (emphasis in original) (quotations and citation omitted).

Despite this Court's admonition that "actual malice" can only be pled through *particularized facts* showing that Courville made the challenged statements with knowledge of their alleged falsity or a reckless disregard for their truth or falsity, Plaintiffs now substantively echo their prior actual malice allegations this Court found inadequate. For example, Plaintiffs add several allegations concerning Courville's *potential* financial motive in speaking about Jevremović (FAC ¶ 180), but substantively similar allegations already appeared in prior versions of the

Complaint.  *See, e.g.,* TAC ¶¶ 31-34, 37-39, 41 (pleading that Courville's "true motivations" "purpose" and "intent" was to "increase views," financially profit, "divert Jevremović from effectively acting as guardian to [Mr.] Margera," and ultimately, "destroy[] Jevremović and AURA at any cost.").  But setting aside the implausibility of these allegations of motive[7], this Court already held that "[i]t is [] inadequate [for purposes of actual malice] to allege that a defendant had bad motives or 'ill will' towards plaintiff."  Opinion I at 17 (citing *Jorjani*, 2019 WL 1125594, at *4); *see also Schwartz v. Worrall Pubs., Inc.,* 258 N.J. Super. 493, 504 (App. Div. 1992) ("even if [defendants] were acting to further some undisclosed political or financial motives...such motives cannot provide a sufficient basis for finding actual malice."); *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989) ("the fact that the defendant published the defamatory material in order to increase its profits" does not "suffice to prove actual malice."  "If a profit motive could somehow strip communications of the otherwise available constitutional protection, our [defamation] cases ... would be little more than empty vessels."); *see also* Opinion II at 13 n.6 (finding inadequate for purposes of actual malice Plaintiffs' "continue[d] rel[iance] on conclusory allegations and vague insinuations of improper motives and financial bias") (citation omitted).

Plaintiffs also attempt to plead actual malice by alleging that Courville "touted her background as a lawyer" and therefore "advised her many viewers and listeners that her many false and defamatory statements should be believed."  FAC ¶ 173.  This allegation has absolutely no bearing on actual malice, as it does not meet the high burden of showing that "the defendant in fact entertained serious doubts as to the truth of [her] publication."  *Harte-Hanks*, 491 U.S. at 667 (citation omitted).

---

[7] As a matter of logic, if Courville wanted to increase her social media viewership, it would not make sense for her to build a platform based on deliberate falsehoods.

Plaintiffs further vaguely allege that Courville's statements were contradicted by information that was available to her—but the *only* specific examples Plaintiffs include in the FAC are with respect to one or two of the new challenged statements. These otherwise inadequate allegations (described below), in any event, do not salvage Plaintiffs' failure to plead actual malice, as defamation law requires that actual malice be pled for ***each*** defamatory statement. *See Cassava Sciences, Inc. v. Bredt*, 2024 WL 1347362, at *23 (S.D.N.Y. Mar. 28, 2024); *Couch v. Verizon Commc's, Inc.*, 2021 WL 4476698, at *4, n.8 (D.D.C. Sept. 30, 2021); *see also Baiul v. Disson*, 607 Fed. App'x 18, 20-21 (2d Cir. 2015). So only those challenged statements with specific facts about actual malice are even eligible for further analysis—and those allegations fall short.

Ultimately, Plaintiffs are left to rely on conclusory allegations that Courville "knew," or "reckless[ly] disregard[ed]," that her statements were untrue. FAC ¶¶ 80, 90, 101, 191, 199, 209. But this Court rejected nearly identical allegations as "bare and conclusory." Opinion I at 18; Opinion II at 13 n.6. The FAC includes no particularized allegations plausibly alleging that Courville was aware of the alleged falsity of *each* of her statements when they were made. The defamation claims are therefore not salvaged by the FAC and must be dismissed with prejudice.

### 3.    The Additional Challenged Statements are not Defamatory

Plaintiff AURA does not plead any new challenged statements in the FAC. Jevremović does purport to add a handful of new, allegedly defamatory statements in the FAC.[8] However, in

---

[8] Defendants note that the redline Plaintiffs submitted to show changes made to the new version of the Complaint sometimes shows an allegation as "new" when, in fact, it was included in the prior version of the complaint. For example, Paragraph 114 of the FAC references a statement about "a group of criminal co-conspirators for financial purposes" and shows it as a new addition since the last complaint. But a Control-F search of the redline document reflects that this statement was also included in the prior, dismissed version of the complaint. *See* Dkt. #79-1 (showing this statement was previously Third Amended Complaint ¶ 83); *see also* Dkt. #79-1 (suggesting FAC ¶ 59 includes new allegation that Courville stated, "help you push your scam conservatorship through," when that was included as Third Amended Complaint ¶ 77).

addition to the opinion and actual malice grounds for dismissal, these additional challenged statements are substantively identical to those which were already dismissed and are otherwise not defamatory.

### a)    Legal Standard for Defamation Claims

To plead defamation, Plaintiffs must allege: "(1) a defamatory statement of fact; (2) the defamatory statement concerned the plaintiff; (3) the statement was false; (4) the statement was communicated to persons other than the plaintiff; and (5) fault." *Klagsbrun v. Va'ad Harabonim of Greater Monsey*, 53 F. Supp. 2d 732, 739 (D.N.J. 1999), *aff'd*, 263 F.3d 158 (3d Cir. 2001)). A defamatory statement is one that "harms the reputation of another such that it lowers the defamed person in the estimation of the community or deters third parties from dealing with that person." *Salzano v. N. Jersey Media Grp. Inc.*, 201 N.J. 500, 512 (2010). "Mere insults and rhetorical hyperbole, while they may be offensive or unpleasant, are not defamatory." *McBride v. Twp. of Washington*, 2020 WL 3396802, at *8 (D.N.J. Jun. 19, 2020). It is a defamation plaintiff's burden to plausibly plead the falsity of a statement in its case in chief because falsity is not presumed. *Green v. NCO Inovision*, 2010 WL 147934, at *4 (D.N.J. Jan. 11, 2010). Where a plaintiff merely makes "conclusory assertions" that the defamatory statements are "false," this is insufficient. *Abdur-Raheem v. New Jersey Dep't of Corr.,* 2018 WL 6837973, at *7 (D.N.J. Dec. 31, 2018). Minor inaccuracies do not render a statement false; even where a statement contains inaccuracies, it is not "false" so long as the gist or sting of the factual disclosures is justified. *Air Wis. Airlines Corp. v. Hoeper*, 571 U.S. 237, 247 (2014).

### b)    Additional Challenged Statements Regarding Amanda Rabb (FAC ¶¶ 48, 50, 52, 56).

In the FAC, Jevremović alleges two additional categories of defamatory statements regarding Jevremović's relationship with Amanda Rabb. First, Jevremović alleges that it was

defamatory for Courville to state in a YouTube video that Jevremović conspired with Rabb's father, Larry, and a documentary filmmaker, Mark Laita, to put Rabb in jail prior to her LPS conservatorship. FAC ¶¶ 48, 50 (linking video). But the allegations in the FAC omit the crucial context in which this statement was made. Before Courville launches into her opinion about how Rabb ended up in jail, the YouTube video screen turns black with a large, all-caps disclaimer: "MY UNDERSTANDING OF THE SETUP." Moreover, the tagline "IN MY UNDERSTANDING" appeared at the bottom of the screen while Courville discussed her theory, signaling to the viewer her upcoming opinion—which Plaintiffs conspicuously left out of their screenshots included in the FAC. *See* FAC ¶ 43.



Courville then details a series of facts—which Jevremović does not allege to be false—that lead to her conclusion that Jevremović and Larry Rabb worked together to get Rabb in jail prior to her conservatorship. Indeed, Jevremović admitted in a previous version of the Complaint (but suspiciously absent from the FAC) that Jevremović "and Larry Rabb, Amanda Rabb's father," worked together in "attempting to impose an LPS conservatorship on Rabb." TAC ¶¶ 77-78. In the video, Courville explains her theory to her viewers as follows: Rabb assaulted her father, who reached out to Laita for assistance and guidance. Courville then explains how Jevremović and

Larry Rabb were connected in an attempt to help get Rabb into a conservatorship. *Id.* And then Courville showed her audience Jevremović's method for securing a conservatorship, displaying on the screen a screenshot of the AURA website on which Jevremović publicized that Step One of getting a loved one into a conservatorship is to threaten an unwilling participant with "conservatorship or jail." *Id.* Courville explains to her audience that, based on this clear website, "Lima's M.O. is to force someone to choose between conservatorship or jail." *Id.*[9] Because Plaintiffs do not allege that these underlying facts are false, Courville's opinion reached from these facts—that Rabb's presence in jail prior to her conservatorship, given her unwillingness to enter treatment voluntarily, involved Jevremović in some manner—is protected opinion. *See Abdur-Raheem*, 2018 WL 6837973, at *7.

Nor does the FAC satisfy the high actual malice pleading burden as to this challenged statement. Jevremović alleges only that in an interview with Laita, Rabb's father discussed Laita trying to get Rabb arrested. FAC ¶¶ 57-58. Based on this statement alone, Jevremović suggests that Courville *had to know* that Jevremović was not involved in getting Ms. Rabb arrested simply because Jevremović was not mentioned in this conversation. *Id.* That implausible leap of logic is insufficient to satisfy the actual malice burden. Nowhere in that allegation—or in the interview itself—does either Rabb's father or Laita *exclude* Jevremović from this set of events, and their

---

[9] In the various videos embedded in the YouTube video at issue, Jevremović makes clear that she views getting an unwilling conservatee into jail as an option for effectuating a conservatorship. In Jevremović's own words, "[Laita] suggested calling the police on Amanda, which is the best thing he could do." *See* Aura Scholarship-Lima Jevremović. Jevremović then went on to explain to her audience why forced jail time was important for conservatorship efforts: "[T]he reason this [incarceration] is so significant, is because the way you get somebody who doesn't want to get help into treatment is something called an LPS conservatorship, and that's what we're using for Amanda." *Id.* Later in that same video, Jevremović explains further: "[T]he only way you can get an LPS conservatorship put through is if the person is in holding, so the person must be in jail or in a psychiatric hospital." *Id.* Jevremovic then tells the audience about one of her recommended options if they cannot "get the LPS conservatorship put through"—*i.e.*, jail. *Id.*

failure to mention her does not mean that Courville's statements were published "with knowledge of [their] falsity or a reckless disregard for the truth or falsity of the [] statement."  Opinion I at 17 (quoting *Darakjian v. Hanna,* 366 N.J. Super. 238, 248 (App. Div. 2004)).  This statement is not actionable as defamation for these independent reasons.[10]

As to the second "new" challenged statement regarding Rabb, Jevremović adds a few additional allegations in an attempt to support a purported defamatory statement she raised in her prior pleadings:  she alleges that it was defamatory for Courville to state, in that same YouTube video, that Jevremović had hand-picked Ms. Rabb to receive AURA treatment with the cooperation of Larry Rabb.  FAC ¶ 52.  A variation of this challenged statement was previously alleged in the Third Amended Complaint (*see* TAC ¶ 127), which the Court dismissed.  The additional allegations in the FAC do not salvage this challenged statement.  As an initial matter, it is not defamatory:  it does not tend to harm Jevremović's reputation in the eyes of the community. *See, e.g., Reed,* 218 F. Supp. 3d at 283; *Salzano,* 201 N.J. at 512.

Moreover, Jevremović does not adequately allege that this statement was false under the defamation laws.  Jevremović appears to suggest that this statement was inaccurate because she did not hand-pick Rabb with the help of Rabb's father, but rather she followed the suggestion of Laita and his audience, who recommended that Rabb be the first scholarship recipient of AURA treatment.  FAC  ¶¶ 29-32.  But this is a distinction without a difference.  Whether Jevremović hand-picked Rabb for AURA treatment or Rabb was selected as part of audience participation, the "gist" of the statement is the same and one that Jevremović does not dispute:  Rabb was picked to

---

[10] Jevremović alleges that Courville lied about Rabb's relationship with her father and her father's status as a molester.  But Jevremović included these allegations in the previous complaint (TAC ¶ 36), and they were irrelevant there as well because these are statements concerning Mr. Rabb and Ms. Rabb for which Jevremović has no standing to challenge.

receive AURA treatment.   Because the challenged statement is "substantially true," a claim for defamation on the basis of this statement must fail.  *O'Keefe v. WDC Media, LLC*, 2015 WL 1472410, at *3-4 (D.N.J. Mar. 30, 2015) (dismissing defamation claim regarding statement that defendant committed a felony on motion to dismiss where dispute was not on whether he pleaded guilty to a crime, but rather "about *which type* of criminal offense was imputed" in the article; "When assessing whether a statement is substantially true, New Jersey law requires courts to overlook 'minor inaccuracies,' as long as 'the substance, the gist, the sting of the libelous charge' is true.") (citing cases).  In other words, courts have recognized that, even if "Defendants' words may have been imprecise or not to Plaintiff's liking," the statement is not defamatory if, "taken as a whole, [it] accurately portrayed Plaintiff's legal standing at the time [of the statement]."  *Id.* at *5 (citing cases).

And in any event, Jevremović concedes the underlying factual basis for the conclusion Courville reached, that Jevremović picked Rabb to get AURA treatment.  Specifically, in the FAC, Jevremović herself admits that she and Laita strategized about picking Rabb to be the recipient for the scholarship program because she was the "hardest" candidate (FAC ¶ 53)—not because of any audience votes or participation.[11]   Plaintiffs have therefore failed to plead the falsity of the statement or its underlying facts, and Courville's opinion based off these fully disclosed facts is not actionable.  *Jorjani*, 2019 WL 1125594, at *4; *Edelman*, 2010 WL 1816180, at *6-7.

Moreover, Jevremović does not even attempt to allege actual malice for this statement. Instead, as to this statement, the FAC includes completely irrelevant allegations relating to whether

---

[11] Indeed, Jevremović repeatedly admits, in the many videos embedded in the YouTube videos she challenges, that she picked Rabb for the scholarship, without qualification. *See, e.g.,* Aura Scholarship Lima Jevremović (Laita asks Jevremović, "So you chose Amanda?" to which Jevremović responded, "Yes! I chose Amanda! … And I chose Amanda with you specifically because … Amanda is the poster child of an impossible case").

Larry Rabb was a molester, or the extent to which Rabb was thankful for meeting Jevremović. But these allegations have nothing to do with the specific defamatory statements in the FAC, let alone any relevance to showing actual malice as to those challenged statements.[12]

c)    **Additional Challenged Statements Regarding Margera (FAC ¶¶ 92, 132-136).**

Jevremović also alleges two additional categories of defamatory statements regarding Jevremović's relationship with Margera. First, Jevremović merely adds more allegations in an attempt to support the argument that it was somehow defamatory for Courville to say that Jevremović had a "conservatorship"—rather than a guardianship—over Mr. Margera. This is not a new *challenged statement*—it was included in the original Complaint (¶¶ 67-69) and the Third Amended Complaint (¶¶ 103-105, 162-65), and both times this Court found the statement non-actionable. Critically, in both prior pleadings, Jevremović included the same comment—now at FAC ¶ 96 (and despite looking like a new allegation on the redline, previously included in the Third Amended Complaint at ¶ 103)—by one of Courville's readers stating that guardianships differ from conservatorships; the inclusion of that allegation in the prior complaint did not salvage it from dismissal on Defendants' motion to dismiss.

In the FAC, Jevremović tries her hand at this challenged statement, *again*, this time apparently trying to add allegations to demonstrate actual malice. For example, Jevremović points to a video allegedly hidden deep on the Arizona judiciary website purportedly discussing the differences between guardianships and conservatorships. FAC ¶ 93. These videos are part of a "Committee on Judicial Education and Training" module *for members of the Arizona judiciary*, not the general public. *See id.* (linking website). Setting aside that the FAC does not plead that

---

[12] The remaining allegations concerning Rabb are either identical, or substantively identical, to challenged statements this Court has already found nondefamatory.

Courville was aware of this Arizona judiciary training library, or had any reason to know about it, the videos in any event have no bearing on whether Courville *actually doubted the veracity of her statements*. Indeed, as this Court made clear when dismissing the original Complaint, "[c]ritically, it is not enough for purposes of actual malice to plead that a defendant published statements "without fact-checking, without investigation, without interviewing those involved, and with no regard for accuracy." Opinion I at 17 (quoting *Lee*, 710 F. App'x at 560). As this Court continued, "[e]ven if [Courville] did not do enough to substantiate the statements prior to making them on social media, she is not liable for defamation because 'mere proof of failure to investigate, without more, cannot establish' such serious doubts as to the truth of the publication." Opinion I at 19 (quoting *Nothstein v. United States Cycling*, 499 F. Supp. 3d 101 (E.D. Pa. 2020)); *see also* Opinion II at 13 n.13 ("The actual malice standard is not satisfied by proof of even 'highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers.'") (citing *Campbell v. Pa. Sch. Bds. Ass'n*, 336 F. Supp. 3d 482, 498 (E.D. Pa. 2018)). So the existence of the Arizona judiciary training module on guardianships and conservatorships is irrelevant to the actual malice inquiry.

Moreover, the allegations in the FAC underscore that Courville relayed to her audience her understanding that the term "guardianship" and "conservatorship" are used interchangeably in different states to refer to the same general concept. FAC ¶ 97. And a review of the Instagram posts and the video in which the challenged statements appear makes clear that, pursuant to this belief, Courville used the terms "guardianship" and "conservatorship" interchangeably to refer to Jevremović's relationship to Margera—even once referring in the video to the legal status as "guardianship aka conservatorship." *See also* FAC ¶ 102 (citing Instagram posts on 6/22/22,

6/22/22, 6/22/22, 6/22/22, and 6/24/22).  The FAC's own allegations therefore undermine any suggestion that Courville made these statements with knowledge of their alleged falsity.[13]

Finally, this challenged statement is substantially true—whether Courville refers to the legal status as a guardianship or conservatorship is inconsequential given that Jevremović does not dispute she had some legal relationship relative to Margera in that general nature.  *See O'Keefe*, 2015 WL 1472410, at *3-4 ("When assessing whether a statement is substantially true, New Jersey law requires courts to overlook 'minor inaccuracies,' as long as the substance, the gist, the sting of the libelous charge is true.").  While Jevremović argues without support that the term "conservatorship" suggested to viewers that Jevremović was trying to access Margera's assets, Jevremović tellingly does not include one instance of Courville stating that Jevremović controlled Margera's assets.  Indeed, any such suggestion would be belied by Courville's own statements in the very videos Jevremović references.  *See* FAC ¶ 132 (linking video).  In the video, Courville repeatedly tells her viewers her understanding that Jevremović's "conservatorship" of Margera is "of the person" (as opposed to control of his money).  *Id.*  At most, Courville questions aloud who is in charge of Margera's assets given that he is not allowed to access his phone—a fact that Jevremović does not argue is false.  *Id.*  Courville's questioning of the ramifications of this

---

[13] Jevremović's suggestion that Courville's discussion of conservatorships and guardianships in a similar way is somehow defamatory is particularly outrageous given that Jevremović herself equates them in her own public statements.  For example, in a Laita video airing on September 9, 2022 called *A Talk on Mental Health and Addiction-Lima Jevremovic*, Jevremovic states:

> "What we were trying to do was file what's called an LPS conservatorship. **It's the equivalent of a guardianship** in um – you know, **in the grand understanding** – it's that conservatorships that deal with the estate and a person's mental health are called probate conservatorships in L.A. and guardianships per se are called LPS conservatorships in California."

*See* https://www.youtube.com/watch?v=4xWNlQKzlm4.

underlying facts is not actionable defamation.  For all these reasons, this statement cannot be actionable defamation.

The same infirmities infect the second "new" challenged statement regarding Margera—*i.e.* Courville's statement that Jevremović conspired with others to convince Margera to go to Florida to get arrested, and that Jevremović was the victim of Margera's assault in the Florida hotel room where the arrest took place.  FAC ¶¶ 133-136 (citing <u>video</u>).  As an initial matter, nowhere in the video the FAC references does Courville ever state that Jevremović was physically present at the hotel during this incident or that she was the victim of Mr. Margera's assault.  *Id.*  Moreover, the discussion about  Margera's hotel arrest was made in a YouTube video with the hallmark opinion features (Courville in fuzzy bunny ears with pinata in the background; extensive statements of subjectivity such as "I have a theory" and "What do I know" and "What do you all think").  *Id.*

More critically, however, a viewer who watched the entire YouTube video would learn that *Courville herself* does not believe that the story about Margera assaulting someone in the hotel room—and therefore anything relating to Jevremović being in that hotel room—is even true.  *Id.* Courville starts out this part of the YouTube video reading an <u>article</u> from the New York Post's gossip and tabloid section, "Page Six," describing the hotel events involving two unnamed women and Margera's purported arrest for assaulting one of the women.  *Id.*  But Courville then goes on to show the viewers a few clips of Margera describing his arrest and the police report from that night—with Courville ultimately concluding that, given these disclosed facts, she did not believe the story unfolded as Page Six reported.  *Id.*  Against this backdrop, it is implausible that Courville defamed Jevremović by stating that "Ms. Jevremović was present at the hotel when the police were called to the hotel to 'setup' Mr. Margera's arrest" (FAC ¶ 133) because Courville *herself debunks*

*this media story*.  Indeed, Courville makes clear during the video:  I "don't know" which woman was implicated in the hotel room according to the Page Six story, "I don't know if that's even true."  This statement can therefore not be actionable defamation.

For the same reasons, this statement also fails on the grounds of actual malice.  To satisfy this steep burden, Jevremović alleges that Courville had to know Jevremović was not the victim of the alleged assault because, according to the Page Six article, "The caller described the alleged victim – whose name will not be disclosed out of discretion – as a white woman in her 50s or early 60s."  FAC ¶ 138.  Jevremović further excerpts from the article an alleged Margera rep stating that "Bam was with his aunt in the hotel room. She is a 65-year-old woman."  *Id.*  Jevremović then argues that "it was plain from the article that Ms. Courville was reading from, that Ms. Jevremović, who was in her 30s, could not have been the alleged victim."  FAC ¶ 139.  But Jevremović's excerpts from the Page Six article are intentionally misleading—she leaves out the next sentence in the article that undermines any actual malice allegation.  The article actually reads as follows:

> The caller described the alleged victim – whose name will not be disclosed out of discretion – as a white woman in her 50s or early 60s. ***It's unclear from the call, however, which woman the man was referring to***.

FAC ¶ 134 n. 44 (citing article).  The article itself leaves open the possibility that the victim of the alleged assault was someone other than the 50-year woman.  It is therefore not "plain" that Jevremović could not have been the victim.  But this is, in any event, irrelevant given that Courville herself casts doubt in the YouTube video on the entire Page Six narrative, stating "I don't know if that's even true" when asked about the women in the hotel with Margera and the purported assault.  The FAC therefore fails to state a claim as to this additional challenged statement.[14]

---

[14] The remaining allegations concerning Margera are simply repackaged from prior complaints and should be dismissed for the same reasons.

Ultimately, the FAC fails to salvage the defects that led this Court to twice dismiss Plaintiffs' complaints. Plaintiffs either continue to rely on the same challenged statements found not defamatory, or add new challenged statements that suffer from the same defects—opinion, disclosed underlying facts not alleged to be false, and absence of actual malice. After a third ineffective attempt, it is clear that Plaintiffs' claims must be dismissed with prejudice.[15]

## II.  Plaintiffs' Additional Claims Are Inadequately Pled and Must Be Dismissed

### A.  The FAC Fails to Salvage Jevremović's Intrusion Upon Seclusion Claim

In previously dismissing this claim, this Court found that the pleading's "conclusory allegations" failed to satisfy two of its required elements, "that Defendants committed an intentional intrusion or that Defendants invaded her privacy." Opinion II at 14; *Swift v. United Food Commercial Workers Union Local 56*, 2008 WL 2696174, at *3 (N.J. App. Div. July 11, 2008. Jevremović has done nothing to remedy these defects in the FAC.

In the FAC, once again, Jevremović's claim relies on the contention that Defendants published supposedly "private" information.[16]  FAC ¶ 202. As this Court already found, "Jevremović's conclusory characterization of labeling the information Defendants released about her as 'private' does not explain how she has an expectation of privacy in any of the information she identifies." Opinion II at 14. And in the FAC, Jevremović fails to add any allegations about this information being private; to the contrary, she adds a new allegation in which she *concedes* that her social security number is not private because ***Jevremović herself*** published it in a publicly-

---

[15] Jevremović's false light claim rests on the same allegations as the defamation claims set forth in Counts I and II (FAC ¶¶ 208-210) and should be dismissed for the same reasons. False light claims are subject to the "same considerations" as defamation claims, and cannot be based on statements that are mere "opinion," are not verifiably false, and fail to meet the requirements of "the actual-malice standard." *Marino v. Westfield Bd. of Educ.*, 2017 WL 216691, at *9 (D.N.J. Jan. 18, 2017); *Cibenko v. Worth Publishers, Inc.*, 510 F. Supp. 761, 766 (D.N.J. 1981).

[16] The FAC fails to allege when or how many of these purportedly "private" facts were revealed.

available filing in Florida state court. *See* FAC ¶ 202 n.58 (linking to Defendants' reposting of a legal document Jevremović publicly filed which contained Jevremović's social security number).[17] Jevremović's publication of her social security number on a public docket undermines any suggestion that this information is private and is fatal to an invasion of privacy claim. *Bisbee v. John C. Conover Agency, Inc.,* 186 N.J. Super. 335, 340 (App. Div. 1982) ("all of the matters at issue herein were otherwise known and public…Defendants did nothing wrongful in obtaining or compiling this information."); *D'Ambly v. Exoo,* 2021 WL 5083816, at *9 (D.N.J. Nov. 1, 2021) (dismissing claim where plaintiff failed to allege non-public information was published).

Further, Jevremović failed to add any allegations to cure this Court's finding that there was no intentional intrusion pled. In previously dismissing this claim, this Court found no allegation suggesting Defendants "used anything other than public or permissible means" to obtain Jevremović's information. Opinion II at 14-15 (quoting *D'Ambly*, 2021 WL 5083816, at *9). The FAC adds nothing except a concession that the social security number was on a public docket.

Beyond these independent reasons on which this Court already relied in dismissing this claim, Jevremović argues that *third-parties* released some of her private information (FAC ¶ 165)—but of course, the actions of such third-parties cannot sustain claims against Defendants. And to the extent Jevremović alleges that Defendants disclosed *others'* private information, Jevremović lacks standing to pursue such claims. *Itiowe v. U.S. Gov't*, 553 F. App'x 271, 272 (3d Cir. 2014) (dismissing claim for plaintiff's brother's alleged injuries: "To establish standing, a

---

[17] Jevremović's argument that this public filing cannot be considered (Dkt. #84 at 2-3) is wrong. Jevremović references and links to this filing *in the FAC* at ¶ 202 n.58—it is therefore entirely appropriate for the Court to consider on a motion to dismiss. Moreover, in ruling on a motion to dismiss, a court may "take judicial notice of matters of public record," such as public court filings. *Atlas Data Privacy Corp. v. We Inform, LLC*, 2024 WL 4905924, at *4 (D.N.J. Nov. 26, 2024).

plaintiff must allege an injury that 'affects the plaintiff in a personal and individual way'…'a litigant…cannot rest a claim to relief on the legal rights or interests of third parties.'").

### B.    Jevremović's Emotional Distress Claims Must Be Dismissed

This Court previously disposed of Jevremović's emotional distress claims "quickly," finding them "particularly strained." Opinion II at 17-18, n.10.  As the Court noted, intentional and negligent infliction of emotional distress ("IIED"/"NIED") claims require a plaintiff to plead emotional distress manifesting in physical or psychological sequalae which is "so severe that no reasonable man could be expected to endure it."  *Id.* at 18 (quoting *Moran v. DaVita*, 441 F. App'x 942, 947 (3d Cir. 2011)); *see also Malcolm v. Bray*, 2019 WL 4918105, at *2 (D.N.J. Oct. 4, 2019) (emotional distress must result in "serious" "psychological" or "physical illness.").  This Court found that Jevremović's "conclusory" allegations of "devastation," "emotional distress," and "mental anguish" fell "very short of the severe distress standard."  Opinion II at 18.

The FAC does not remedy these pleading defects.  To the extent the FAC pleads identical conclusory allegations of psychological or physical manifestations of emotional distress, or non-physical or psychological damages, (*see* FAC ¶¶ 25, 213, 217-19, 220), those allegations have already been found to be inadequate.  Opinion II at 18-19.  And the only new allegations of emotional distress in the FAC lack any plausible ties to Defendants' conduct.  For example, Jevremović pleads that she "regularly sees a psychiatrist and a therapist." FAC ¶¶ 219-220. Jevremović never contends that she started seeing her psychiatrist/therapist because of Defendants' conduct, or that seeing a psychiatrist or therapist is because of a severe and disabling emotional or mental condition that would qualify for an IIED claim.  *See Malcolm*, 2019 WL 4918105, at *2. Similarly, Jevremović alleges that she was diagnosed with depression in April 2024 without any allegation that the depression was caused by Defendants (FAC ¶¶ 219-220)— it would appear that this diagnosis *over two years* after the alleged defamatory statements began bears no connection

to Defendants' conduct.  In any event, New Jersey courts have repeatedly found bare allegations of "depression" to fall far short of the "severe distress standard" this Court demanded.  Opinion II at 18 (citing cases); *see also M.H. by D.H. v. C.M.,* 2020 WL 6281686, at \*11 (D.N.J. Oct. 27, 2020) (general allegations of "depression," "mental anguish," "anxiety," and "panic attacks" insufficient); *Fogarty v. Household Fin. Corp. III*, 2015 WL 852071, at \*17 (D.N.J. Feb. 25, 2015) (general allegations of "depression," "despair," "anxiety," and "stress" insufficient).    And Jevremović's allegations that she is *in the process of* "developing" a "heart condition related to the emotional distress" (FAC ¶ 219), or that her emotional distress has "exacerbated" some unspecified "physical conditions" (FAC ¶ 220) are "too lacking in seriousness and too speculative" to salvage her claims.  *M.H.,* 2020 WL 6281686, at \*11.

Jevremović also fails to allege that any of the distress she allegedly suffered was caused by Courville's "intentional and outrageous conduct," as required to sustain an IIED claim.  *Malcolm*, 2019 WL 4918105, at \*2.  What qualifies as "intentional and outrageous conduct" is very limited; the inquiry is subject to an "elevated threshold" which "is only satisfied in extreme cases under New Jersey law."  *Fogarty,* 2015 WL 852071, at \*16.   "[T]ortious or even criminal" conduct is not enough—it must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and be regarded as atrocious, and utterly intolerable in a civilized community."  *Id.* at \*16, n.19; *Mosley v. Delaware River Port Auth.,* 2000 WL 1534743, at \*12 n.11 (D.N.J. Aug. 7, 2000).  But the conduct that Jevremović cites in support of her IIED claim does not qualify.  The claim rests nearly exclusively on Courville's alleged dissemination of Jevremović's personal information.[18]   And here, the FAC does not even plausibly allege that

---

[18] "New Jersey courts do not permit claims for infliction of emotional distress to proceed when the factual basis for the claim is non-actionable [] defamation." *Edelman*, 2010 WL 1816180, at \*8.

Defendants *did* publish anything private about Jevremović.  In any event, New Jersey courts have found that even publicly disseminating social security numbers does not constitute sufficiently "extreme and outrageous" conduct.  *See, e.g., Johnson v. City of Hoboken*, 2023 WL 4717636, at *1, 5 (N.J. Super. Ct. App. Div. July 25, 2023).

Finally, Jevremović has failed to sufficiently allege that she was placed in a "zone of danger" of "*immediate* personal injury" as required to plead an NIED claim.  *See Angle v. United States*, 2012 WL 6708165, at *7 (D.N.J. Dec. 21, 2012) (emphasis in original).  Jevremović alleges only that she feared someone might harm her after her home address was published online (FAC ¶ 217)—but such speculative fear is nowhere near enough to establish physical presence in an *immediate* zone of danger.  *See Angle*, 2012 WL 6708165, at *7 (plaintiffs were not in "immediate" zone of danger even after a bomb fragment penetrated their home, violently shook the house, and landed in an upstairs bedroom, since plaintiffs were in the kitchen downstairs).

## C.    AURA's Tortious Interference Claims Fail as a Matter of Law[19]

Plaintiffs' tortious interference claims rest solely on the allegation that Defendants' "false and defamatory statements" harmed Plaintiffs' business (just like the unfair competition claims in the Third Amended Complaint, which Plaintiffs have since dropped). FAC ¶ 232.  As the Court already found in dismissing the unfair competition claims, these claims merely constitute "repackaged defamation claim[s]," which cannot give rise to "an independent claim" for unfair competition or tortious interference.  Opinion II at 21-22 (citing *Innovasystems, Inc. v. Proveris*

---

[19] When this Court dismissed Plaintiffs' Third Amended Complaint, it gave Plaintiffs the narrow right to "file a Fourth Amended Complaint, **limited to remedying the defects in the counts dismissed without prejudice**." Opinion II at 22 (emphasis added). Yet AURA brings entirely new claims of tortious interference that were not in the prior Complaint.  Either the tortious interference claims are merely repackaged unfair competition claims (in which case they should be dismissed just as the unfair competition claims were), or they are new claims that are improperly brought on Plaintiffs' fourth bite at the apple. Either way, the claims should be dismissed with prejudice.

*Sci. Corp.*, 2014 WL 3887746, at *7 (D.N.J. Aug. 6, 2014) (tortious interference claim was "repackage[d]" trade libel claim which "meets a similar fate.")).  And because Plaintiffs fail to state a claim for defamation, a claim premised on defamatory statements fails.  *Sciore*, 2022 WL 950261, at *15 (citing cases).

Moreover, AURA fails to plead any of the required elements of a tortious interference claim—an existing/prospective contract, interfered with intentionally and maliciously, causing loss of the contract and damages.  *NY Mach. Inc. v. Korean Cleaners Monthly*, 2019 WL 12072569, at *4 (D.N.J. Aug. 27, 2019).  Tortious interference claims require Plaintiffs to identify a "specific" existing or prospective contract with which Defendants interfered.  *See, e.g., NY Mach.*, 2019 WL 12072569, at *4 (D.N.J. Aug. 27, 2019).  Rather than providing that level of detail, AURA vaguely alludes to unidentified "contracts" or lost business from its "investors" (FAC ¶¶ 223-228, 230-232, 235) without ever identifying a single specific investor or disrupted contract.  This pleading failure is fatal to AURA's claim.  *NY Mach.*, 2019 WL 12072569, at *4 (D.N.J. Aug. 27, 2019) (claim insufficiently pled due to failure to "identify any specific current or potential customers.").[20]

Additionally, setting aside conclusory labels, AURA has failed to plead that Defendants acted with malice, intentionally, to interfere with AURA's unidentified contracts, or that they caused AURA's non-specific losses.  These claims should be dismissed with prejudice.

## CONCLUSION

For the reasons set forth herein, Defendants respectfully request the Court dismiss Plaintiffs' Fourth Amended Complaint in its entirety, with prejudice.

---

[20] AURA's belated suggestion in response to Defendants' pre-motion letter that the purported contracts could be provided for the Court's review "in camera" (ECF 84 n.2) ignores that the *FAC* lacks specificity as to *any* of these alleged investors or contracts.  Any new documents introduced now would be improperly extraneous to the FAC.

Respectfully submitted,


COZEN O'CONNOR, PC
A Pennsylvania Professional Corporation
Attorney for Defendants


BY:  _____
     John P. Johnson, Jr.
     1010 Kings Highway South
     Cherry Hill, NJ 08034
     Telephone: 856-910-5001
     Fax: 215-701-2049
     jjohnson@cozen.com

     Keven T. Kerns
     *(D.N.J Admission Forthcoming)*
     One Liberty Place
     1650 Market Street, Suite 2800
     Philadelphia, PA 19103
     Telephone:  215-665-6912
     Fax:  215-372-2352
     kkerns@cozen.com

     Tamar Wise (*Admitted Pro Hac Vice*)
     3 WTC
     175 Greenwich Street, 55th Floor
     New York, NY 10172
     Telephone: 212-883-4924
     Fax: 646-461-2054
     twise@cozen.com