# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LIMA JEVREMOVIĆ, an individual; and AUTONOMOUS USER REHABILITATION AGENT, LLC, a Delaware Limited Liability Company, | : : : : : | |
| Plaintiffs, | : | CIVIL ACTION NO.:3:22-CV-04969-ZNQ-RLS |
| Vs. | : : | |
| BRITTANY JEREAM COURVILLE, an individual; and THAT SURPRISE WITNESS TV LLC, a New Jersey limited liability corporation, | : : : : : | |
| Defendants. | : | |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

# **TABLE OF CONTENTS**

Page

ARGUMENT ................................................................................................................ 1

I.  Plaintiffs Have Not Adequately Pled Defamation Claims ..................................... 1

    A.  Plaintiffs Are Bound By the Law of the Case and May Not Relitigate Issues Already Decided By This Court ..................................................... 1

    B.  Plaintiffs Fail To Move the Needle on the Court's Opinion Findings ............................. 2

    C.  Plaintiffs Fail To Move the Needle on the Court's Actual Malice Findings ................... 4

    D.  The Court Should Reject Plaintiffs' Attempts to Relitigate Non-Defamatory Allegations This Court Previously Dismissed ................................................................. 8

II.  Plaintiffs' Opposition Fails to Salvage Their Non-Defamation Claims ................................. 9

    A.  Jevremović's Intrusion Upon Seclusion Claim Must Be Dismissed .............................. 9

    B.  Jevremović's Emotional Distress Claims Must Be Dismissed ..................................... 10

    C.  AURA's Tortious Interference Claims Must Be Dismissed ......................................... 11

CONCLUSION ........................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Acevedo v. Monsignor Donovan High Sch.*,
  420 F. Supp. 2d 337 (D.N.J. 2006) ...................................................................................... 11

*Angle v. United States*,
  2012 WL 6708165 (D.N.J. Dec. 21, 2012) .......................................................................... 11

*Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*,
  226 F. Supp. 2d 557 (D.N.J. 2002) ...................................................................................... 10

*Bull Int'l, Inc. v. MTD Consumer Grp, Inc.*,
  654 Fed. App'x 80 (3d Cir. 2016) .......................................................................................... 8

*Cassava Sciences, Inc. v. Bredt*,
  2024 WL 1347362 (S.D.N.Y. Mar. 28, 2024) ....................................................................... 5

*Dole v. Arco Chem. Co.*,
  921 F.2d 484 (3d Cir. 1990) ................................................................................................ 12

*Durr Mech. Constr., Inc. v. PSEG Fossil, LLC*,
  516 F. Supp. 3d 407 (D.N.J. 2021) ...................................................................................... 12

*Falor v. G & S Billboard*,
  2008 WL5190860 (D.N.J. 2008) ........................................................................................... 2

*Herman v. Muhammad*,
  2024 WL 4489630 (N.J. App. Div. 2024) ............................................................................. 2

*In re Continental Airlines, Inc.*,
  279 F.3d 226 (3d Cir. 2002) .................................................................................................. 1

*In re the Guardianship of Brandon Margera*,
  21-011821-GD, Dkt. #15 (Fla. 6th Cir. Ct. Feb. 17, 2022) ................................................. 10

*Lascurain v. City of Newark*,
  349 N.J. Super. 251 (App. Div. 2002) ................................................................................. 10

*Leang v. Jersey City Bd. Of Ed.*,
  198 N.J. 557 (2009) ............................................................................................................... 4

*LoBiondo v. Schwartz*,
  323 N.J. Super. 391 (1999) ................................................................................................. 11

*LY Berditchev Corp. v. ESupplements, LLC*,
   2024 WL 4182585 (D.N.J. Sept. 12, 2024) ...................................................................12

*Palin v. N.Y. Times Co.*,
   940 F.3d 804 (2d Cir. 2019) .................................................................................... 7, 8

*Pierce v. Capital Cities Comm'ns, Inc.*,
   576 F.2d 495 (3d Cir. 1978) .........................................................................................3

*Tah v. Global Witness Pub., Inc.*,
   413 F. Supp.3d 1 (D.D.C. 2019) ..................................................................................4

*Turner v. Wong*,
   363 N.J. Super. 186 (App. Div. 2003) .......................................................................11

*Wang v. New Jersey State Police*,
   2019 WL 3887126 (D.N.J. Aug. 19, 2019) ...............................................................11

*Ward v. Zelikovsky*,
   136 N.J. 516 (1994) .....................................................................................................3

**Statutes**

Consumer Fraud Act ..........................................................................................................10

**Other Authorities**

Fed. R. Civ. P. 12(b)(6).......................................................................................................1

Defendants[1] submit this reply memorandum of law in further support of their Motion to Dismiss Plaintiffs' FAC pursuant to Federal Rule of Civil Procedure 12(b)(6).[2]

## ARGUMENT

### I. Plaintiffs Have Not Adequately Pled Defamation Claims[3]

#### A. Plaintiffs Are Bound By the Law of the Case and May Not Relitigate Issues Already Decided By This Court

In twice dismissing Plaintiffs' complaints, this Court made certain findings—that the challenged statements are non-actionable because they are protected opinion and because there were no particularized allegations of actual malice. Opinion I at 10-19; Opinion II at 11-13. Plaintiffs are barred from attempting to re-litigate these issues already decided pursuant to the law of the case doctrine. This includes Plaintiffs' invocation of the following arguments, which are *identical* to arguments Plaintiffs made in opposition to previous motions to dismiss:

- the social media context of Courville's statements (Dkt. #91 ("Opp.") at 18; Dkt. #71 ("Prior Opp.") at 13-14);
- the implication of Courville's legal background (Opp. at 23; Prior Opp. at 14-17);
- the relevance of Courville's repeated references to "conspiracy theories" and other disclaimers (Opp. at 13; Prior Opp. at 17-20.)

These were all factors this Court already considered *twice* in arriving at the conclusions set forth in the First and Second Opinions. While the Court allowed Plaintiffs to plead *additional* factual allegations in response to the opinion and actual malice findings, Plaintiffs may not rely on the *same* factual allegations and ask for a different result. *In re Continental Airlines, Inc.,* 279 F.3d 226, 232 (3d Cir. 2002) (law of the case doctrine "limits relitigating of an issue once it has been

---

[1] Capitalized terms herein shall have the same meaning as set forth in Defendants' Opening Brief.
[2] Plaintiffs note that they were unable to link to any of the hyperlinks included in Defendants' Opening Brief. (Opp. n.1.) Not once in the 39 days from when Defendants filed their opening brief until Plaintiffs' filing of their Opposition did Plaintiffs reach out to notify Defendants of this issue and request a searchable copy of the brief, despite counsel communicating about scheduling.
[3] Jevremović concedes that false light claims are subject to the same considerations as defamation claims. (Opp. 25-26.) This claim must be dismissed for the same reasons as the defamation claims.

1

decided" in an earlier stage of litigation); *Falor v. G & S Billboard*, 2008 WL5190860, at *3 (D.N.J. 2008) (law of the case warranted dismissal as prior motion to dismiss was granted).

### B. Plaintiffs Fail To Move the Needle on the Court's Opinion Findings

Plaintiffs do not point to any additional allegations that would negate the Court's findings on opinion. As with the prior version of the Complaint, Plaintiffs "did not attempt to change the context of the Challenged Statements." (Opinion II at 11 (cleaned up)). Plaintiffs repeat the same arguments about disclaimers, verifiability, and the Internet[4]—all of which this Court already considered and found insufficient to deviate from the finding that the context of Courville's statements *as a whole* signaled they were statements of opinion rather than statements of fact.

In their Opposition, Plaintiffs double down on another argument they made in prior, unsuccessful oppositions: that some cherry-picked comments by Courville's viewers in dialogue with Courville's posts are somehow legally relevant to the question of whether Courville's statements are protected opinion. (*See* Dkt. #22 at 5 (argument made in opposition to motion to dismiss original Complaint regarding some identical viewer comments); Dkt. #35 (same, in opposition to motion to dismiss First Amended Complaint); Dkt. #71 at 16 (same, in opposition to motion to dismiss Third Amended Complaint, including some identical viewer comments)).

In their *third* iteration of this argument, Plaintiffs take tremendous liberties with paraphrasing the excerpted comments. On absolutely no basis other than their own say-so, Plaintiffs allege that "there is no doubt that [Courville's] audience … believed that her statements regarding Plaintiffs were objectively true" and that "[c]ommenters on Defendants' posts repeatedly

---

[4] Plaintiffs make the blanket proposition that "New Jersey courts have recently addressed the increased dissemination of defamatory statements online and the harm those statements have caused" (Opp. at 18) and curiously cite to *Herman v. Muhammad*, 2024 WL 4489630 (N.J. App. Div. 2024), a case that did *not* address "increased dissemination of defamatory statements online." Instead, noting that "the sole issue here is whether defendants' statements were made with actual malice," it found that a defamation claim should be dismissed for failure to plead actual malice.

accepted Defendants' statements concerning Ms. Jevremović as true." (Opp. 13-14.) Plaintiffs go one step further—they suggest that, "*as a result of the statements published by Defendants*," Courville's viewers "believed … that Ms. Jevremović conducted criminal activity." (*Id.* at 14 (emphasis added).) These are blatant mischaracterizations of the excerpted comments. At most, the comments reveal only that Courville's audience held their own views which may have aligned with Courville's stated views. In other words, the comments show merely that Courville's viewers may have agreed with her opinions—and they could have held similar views of their own because of their independent knowledge or their access to any number of sources. This does not convert Courville's opinion statements into statements of fact. The excerpts provide no plausible support for the extraordinary propositions on which Plaintiffs' argument is premised.

It is no surprise, then, that the case law Plaintiffs cite does not support the repeated argument that the commentary on Courville's posts has any legal relevance to the "fact versus opinion" determination. Plaintiffs rely on a jury verdict case (not a pleadings case) setting forth the unremarkable proposition that the circumstances surrounding a spoken statement—*i.e.*, the context—can shed light on whether a reasonable listener will perceive the statement as opinion or fact; the classic example is that statements made while in the heat of an argument are not reasonably understood by their literal meaning. *See Ward v. Zelikovsky*, 136 N.J. 516, 532-33 (1994) (appeal of jury verdict, not motion to dismiss, cited in Opp. at 14). This Court has already engaged in the context analysis (twice), and has determined (twice) that the *holistic* context of Courville's statements suggests they are opinion. Opinion I at 10-16; Opinion II at 11-13.

Plaintiffs' remaining case law invokes a listener's "reasonable interpretation" for purposes of determining something not at issue in this case: whether a statement is capable of *defamatory meaning*, not whether it is fact or opinion. *See Pierce v. Capital Cities Comm'ns, Inc.*, 576 F.2d

3

495, 502 (3d Cir. 1978) (summary judgment case; under Pennsylvania law, reasonable understanding of a statement is relevant for purposes of determining statement's *defamatory meaning*); *Leang v. Jersey City Bd. Of Ed.*, 198 N.J. 557, 585 (2009) (courts evaluating defamation claims must consider verifiability and if a statement is capable of defamatory meaning; "[w]hen considering verifiability, a court must determine whether the statement is one of fact or opinion [whereas] to decide whether a statement *is capable of a defamatory meaning*, a court must consider the listener's reasonable interpretation, which will be based in part on the context in which the statement appears"); *Tah v. Global Witness Pub., Inc.*, 413 F. Supp.3d 1, 11 (D.D.C. 2019) (finding as relevant to analysis of the *defamatory meaning* of a statement how it was interpreted by its specific target audience; audience's understanding was not considered relevant at all to fact versus opinion analysis, as opinion was not even grounds for dismissal). In none of these cases did the court do what Plaintiffs ask this Court to do: look at a selective sampling of comments to Internet posts and consider them relevant to (let alone dispositive of) whether a statement is fact or opinion.

Plaintiffs fail to add any other allegations to undermine the Court's analysis of the context of Courville's statements as indicia of opinion. The defamation claims should be dismissed.

### C. Plaintiffs Fail To Move the Needle on the Court's Actual Malice Findings

The Opposition similarly fails to salvage the FAC from dismissal on the same actual malice grounds that prompted the Court to twice dismiss Plaintiffs' complaints. Plaintiffs first attempt to avoid the Court's actual malice findings by arguing—for the first time in the many briefs submitted in this case—that the actual malice standard should not even apply. (Opp. at 19.) This argument ignores the concession that Plaintiffs made by engaging the actual malice standard in two previous oppositions to Defendants' motions to dismiss, failing to ever object to the propriety of imposing the actual malice standard. (Dkt. #22 at 14 ("The Complaint Plausibly Pleads Actual Malice"); Dkt. #71 at 21 ("Plaintiffs Satisfy the Pleading Standard for Actual Malice").) The Court has

4

already found that Plaintiffs failed to satisfy their pleading requirement of actual malice, and that is now law of the case. Opinion I at 16-19; Opinion II at n.6. Plaintiffs cannot now argue otherwise.

Substantively, as Defendants have argued, the FAC fails to salvage the pleading shortcomings that led the Court to dismiss the prior complaint for lack of actual malice. Plaintiffs include a chart that purports to show actual malice for only *three* of the Challenged Statements, so the remaining statements should be dismissed on this ground alone. *See, e.g., Cassava Sciences, Inc. v. Bredt*, 2024 WL 1347362, at *23 (S.D.N.Y. Mar. 28, 2024) (actual malice must be alleged for each defamatory statement). And, in any event, the purported "evidence of actual malice" Plaintiffs set forth for the limited subset of challenged statements is inadequate as a matter of law.

***Jevremović's court-appointed role with Margera.*** Plaintiffs argue that actual malice as to this challenged statement is demonstrated by Courville "cho[osing] to ignore the critical distinction between conservatorship and guardianship." (Opp. at 20.) But as Defendants argued, the FAC includes no allegations that Courville actually doubted the veracity of her statements. Instead, the FAC demonstrates that Courville relayed to her audience her understanding that the terms "guardianship" and "conservatorship" are used in different states to refer to the same general concept—and Courville did refer to them interchangeably, even once referring in the video Plaintiffs cite to the legal status as "guardianship aka conservatorship." FAC ¶¶ 97, 102.[5]

***Margera's hotel room arrest.*** In their opening brief, Defendants dissected Courville's YouTube video which painstakingly debunked a tabloid article narrative about Margera's hotel

---

[5] Moreover, this allegedly defamatory statement—which Plaintiffs included in prior, dismissed versions of the Complaint—is, at a minimum, substantially true and, separately, Plaintiffs cannot point to any specific instance where Courville accuses Jevremović of accessing Margera's money. (Defs.' Opening Br. at 21-23.) Plaintiffs do not address these arguments at all in their Opposition.

5

room arrest (which narrative suggested two women were in the hotel room, one of whom was assaulted). (Defs.' Opening Br. at 23-24.) Plaintiffs do not dispute that by the end of Courville's video calling into question the validity of every part of this entire story as presented by a tabloid publication, she unequivocally states that she "do[es]n't know" who was assaulted in the hotel room or—more importantly—"***I don't know if that's even true***," alluding to the entire story altogether. (Opp. at 21.) Despite conceding that Courville told her audience her understanding that the whole story—hotel room assault and all—was improbable, Plaintiffs make the absurd suggestion that statements made about Jevremović as part of this media narrative are somehow defamatory because a commenter suggested the assaulted woman was Jevremović, and Courville responded with a "laughing out loud" emoji. (*Id.*) But this has nothing to do with demonstrating actual malice. Here, Courville *instructs her audience* not to believe anything about the Page Six hotel assault story, including any role played by Jevremović. There is no defamation, and certainly no showing that Courville doubted what she was telling her audience about the hotel incident.[6]

***Jevremović allegedly conspiring to put Ms. Rabb in jail.*** Finally, Plaintiffs point to a series of entirely irrelevant allegations to argue that Courville had to know it was false to opine that Jevremović conspired with others to put Ms. Rabb in jail. For example, Jevremović suggests that Ms. Rabb said a few positive statements about her father (Opp. at 22)—but whether or not Ms. Rabb had positive feelings towards her father is completely irrelevant in considering

---

[6] Despite conceding that Courville told her audience not to believe the Page Six story, Plaintiffs continue to argue that Courville knew that Jevremović was not the victim of Margera's assault because the article called the victim a woman in her 50s or 60s. (Defs.' Opening Br. at 24.) The article, however, notes that it is unclear whether the assault victim was in her 50s or 60s. Plaintiffs argue the article meant it was unclear which of the two women in the hotel room was in her 50s or 60s. (Opp. at 21.) The parties' competing interpretations of the ambiguous article undermines any suggestion Courville *knew* that any statement about Jevremović and the hotel incident was untrue. This, however, is entirely irrelevant given that Plaintiffs concede that Courville made clear to her audience that the entire hotel room incident—and any role of Jevremović included—was not true.

6

Courville's state of mind in opining about Jevremović working with others to put Ms. Rabb in jail. Along the same lines, Jevremović suggests that Courville had to have been aware that Rabb stated she was allegedly drug-free by April 2022 and had positive feelings towards Jevremović (*id.*)—but again, Ms. Rabb's drug use in April 2022 and her feelings towards Jevremović at some undisclosed period of time are entirely irrelevant in considering Courville's state of mind in opining about Jevremović working with others to put Ms. Rabb in jail. Ultimately, Jevremović relies on an interview between Mr. Laita and Mr. Rabb in which they discussed trying to get Ms. Rabb arrested, but did not mention Jevremović. (*Id.*) As Defendants have argued, the *absence* of a mention of Jevremović in this casual conversation is a far cry from the "particularized" facts necessary to demonstrate Courville *knew* that her opinion about Jevremović's participation in this plan was false. (Defs.' Opening Br. at 17-18.) Any such unsupported suggestion is belied further by the support Courville laid out in her "**understanding of the setup**."[7] (*Id.* at 16-17.)

Plaintiffs also argue that Courville "touted her background as an Ivy League law graduate" and "emphasized that she knew 'stuff' because she 'is a lawyer," so "considering [these] credentials, she knew or should have known that her many statements … were false." (Opp. at 21, 23-24.) In other words, Plaintiffs ask this Court to find that Courville's law degree is sufficient to satisfy the high burden of pleading statements were made with actual knowledge of falsity. For this absurd proposition, Plaintiffs rely on *Palin v. N.Y. Times Co.*, 940 F.3d 804 (2d Cir. 2019). They misleadingly suggest that in the *Palin* case, it was the defendant reporter's mere credentials as a newspaper editor that allowed the court to find actual malice. But that is a complete distortion of that case. In *Palin*, the court did not make its actual malice finding simply because the defendant was an editor; rather, defendant was editor-in-chief of *specific newspapers* that published articles

---

[7] Plaintiffs fail to address this clear disclaimer, which signals the opinion nature of this statement.

*contradicting* the defamatory statements, giving rise to a plausible inference the defendant recklessly disregarded the available truth in making his statements. *Id.* at 814. The *Palin* court also found an inference of actual malice where an early version of the defamatory article hyperlinked an article that contradicted the defamatory statement. *Id.* at 815. Plaintiffs baldly state "the same is true here" but fail to point to any contradictory information accessible to Courville.

As they did in previous oppositions, Plaintiffs ultimately rely on the refrain that "internal inconsistencies or apparently reliable information that contradicts its libelous assertions" may qualify for actual malice (Opp. at 22, 24), but, as with prior versions of the complaint, *no such inconsistencies* are pled in the FAC. Plaintiffs again fail to allege particularized facts showing that Defendants *did*, in fact, entertain serious doubts about the veracity of each of the challenged statements. The defamation claims should be dismissed on this ground as well.

### D. The Court Should Reject Plaintiffs' Attempts to Relitigate Non-Defamatory Allegations This Court Previously Dismissed

Finally, Plaintiffs try to relitigate Courville's alleged statements concerning a purported "OnlyFans screenshot" (Opp. at 15-18), among other purported defamatory statements that were included in complaints this Court dismissed. As to the purported OnlyFans screenshot, the FAC (like its predecessor complaint) does not allege that the screenshot comprises a defamatory statement. Nor can Plaintiffs rely on the theory of "defamation by implication" (Opp. at 17-18), which New Jersey has not expressly adopted as a cause of action.[8] In any event, even while Plaintiffs *concede* that Courville's screenshot says nothing about Jevremović or OnlyFans (it is clearly a Facebook profile picture), they continue to implausibly suggest that the screenshot could reasonably be understood to make an implication about Jevremović and OnlyFans. (Opp. at 17-

---

[8] The only defamation by implication case Plaintiffs cite is decided under Pennsylvania law. (Opp. at 17, citing *Bull Int'l, Inc. v. MTD Consumer Grp, Inc.*, 654 Fed. App'x 80, 105 (3d Cir. 2016) (setting forth elements of claim for defamation by implication under Pennsylvania law).)

8

18.)  This suggestion is based exclusively on a select few comments by some of Courville's audience—a suggestion this Court has already rejected by dismissing the prior complaint based on the same premise.  (Opinion II at 11-13; Dkt. #71 at 12.)  Again, that a limited sample of readers commented about OnlyFans cannot impute liability to Courville, who made no such statement.

Plaintiffs also appear to attempt to relitigate various allegedly defamatory statements concerning a purported "criminal conspiracy," attempts to control Margera's money and references to "celebrity cash cows," referring to Jevremović as Margera's handler/trafficker, experimental treatment on Ms. Rabb, and lying about Ms. Rabb's cause of death.  (Opp. at 12, 14-15.)  These very statements were already dismissed by this Court as mere opinion and because actual malice allegations were lacking.  (Opinion I at 10-19; Opinion II at 11-13.[9])

## II. Plaintiffs' Opposition Fails to Salvage Their Non-Defamation Claims

### A. Jevremović's Intrusion Upon Seclusion Claim Must Be Dismissed

The Opposition fails to show how (1) Jevremović had any expectation of privacy in the information she claims Defendants publicized, or (2) that Defendants obtained this information through impermissible means.  These are the two independent grounds on which this Court already dismissed the intrusion upon seclusion claim.  In her Opposition, Jevremović argues that only one piece of information—her social security number ("SSN"), as contained in Margera's guardianship application—was "sealed and not accessible to the public." (Opp. at 25.)  Jevremovic fails to tell this Court that the guardianship application containing her SSN filed in Pinellas County, Florida, was, for at least some period of time, ***not sealed***.[10]  Indeed, the FAC concedes that Courville posted the guardianship petition on June 24, 2022 (FAC ¶ 100)—months after February 17, 2022, when

---

[9] Defendants incorporate the dismissal of these allegations in prior versions of the Complaint.
[10] Notably, the Instagram post at issue (FAC ¶ 202 n.58, linking Courville's repost of the guardianship petition) shows a version of the guardianship application with the SSN redacted.  The FAC contains no evidence of any post by Courville that shows an unredacted version of the filing.

9

the Pinellas County clerk ***denied*** Jevremović's request for confidential treatment of the guardianship application (as the public docket makes clear). *In re the Guardianship of Brandon Margera*, 21-011821-GD, Dkt. #15 (Fla. 6th Cir. Ct.). Given the clerk's denial of the confidentiality request, the document with the SSN would have been publicly accessible by the time Courville posted the petition in June 2022. The FAC's concession of the timing undermines any suggestion that the information was private—or that Defendants obtained it through impermissible means, an allegation Plaintiffs never even try to make.[11] To the extent Jevremović relies on third-party conduct (Opp. at 25)—and not even conduct relating to wrongfully obtaining private information—she offers no support for imputing such third party conduct to Defendants.

## B. Jevremović's Emotional Distress Claims Must Be Dismissed

In the Opposition, Jevremović attempts to justify emotional distress claims based on non-emotional damages. (Opp. at 27, alleging impact on "social connections" and "career".) This is insufficient as per the Court's prior order. (Opinion II at 18-19.) Nor does the Opposition engage Defendants' extensive case law finding conclusory allegations of "depression" or non-specific "physical conditions" insufficient to state a claim. (Defs.' Opening Br. at 27-28.) Indeed, Jevremovic's own case law confirms this deficiency. *See, e.g., Lascurain v. City of Newark*, 349 N.J. Super. 251, 264, 280-81 (App. Div. 2002) ("depression, and "adverse effect on her blood sugar and heart condition" caused by desecration of plaintiff's father's grave did not have a "dramatic impact on her every-day activities or on her ability to function daily," as required for IIED claim); *Turner v. Wong*, 363 N.J. Super. 186, 200 (2003) (emotional distress must be "so

---

[11] Jevremović also argues, for the first time, that the publication of her SSN violated the Consumer Fraud Act. (Opp. at 25.) That statute is irrelevant here—Jevremović is not a consumer and did not bring a claim under the statute. *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.,* 226 F. Supp. 2d 557, 561 (D.N.J. 2002) (only "consumers" "may invoke the protections of [that statute]").

severe that no reasonable person could be expected to endure it"). Finally, while the Opposition baldly states that allegations of depression and non-specific physical aggravation are "a result of Defendants' wrongful conduct" (Opp. 27), that connection *is not pled in the FAC*. The FAC does not make any plausible causal connection to Defendants' conduct, and any such connection is undermined by the chronology Defendants pointed out in their Brief (at 27-28).

The IIED claim also fails because Jevremović cannot show "intentional and outrageous" conduct. Jevremović cites *Wang v. New Jersey State Police*, 2019 WL 3887126 (D.N.J. Aug. 19, 2019), where the court found sufficient allegations that the police, *inter alia*, "unlawfully detained, seized, arrested and imprisoned [plaintiff] without probable cause," and "subject[ed her] to a strip search." *Id.* at *7. ***That*** is outrageous conduct—not the FAC's reliance on non-actionable defamation or unsupported allegations of harassment by unspecified third-parties[12] (which, as the FAC concedes, Courville *discouraged* (FAC ¶ 170)). *LoBiondo v. Schwartz*, 323 N.J. Super. 391, 417 (1999) (IIED claim cannot be premised on non-defamatory statements).[13]

### C. AURA's Tortious Interference Claims Must Be Dismissed

In its Opposition, AURA concedes that its tortious interference claims, based solely on Courville's alleged "defamatory statements," are nothing more than "re-labeled" unfair competition claims this Court previously dismissed (Opp. at 28)—and they should be dismissed for the same reasons. (Opinion II at 21-22 (unfair competition claims were "repackaged defamation claim[s]" which cannot give rise to "an independent claim" for unfair competition or tortious interference).) AURA ignores that tortious interference claims cannot ***duplicate***

---

[12] The NIED claim fails because Jevremović points only to ***third-party*** conduct that gave her a ***speculative*** fear of harm (Opp. at 27-28). *Angle v. United States*, 2012 WL 6708165, at *7 (D.N.J. Dec. 21, 2012) (must plead she was placed in a "zone of danger" of "*immediate* personal injury.").
[13] Ironically, Jevremović cites *Acevedo v. Monsignor Donovan High Sch.*, 420 F. Supp. 2d 337 (D.N.J. 2006) for the proposition that IIED claims are "rarely" dismissed on the pleadings (Opp. at 28), yet in *Acevedo*, the court did dismiss the IIED claim. *Acevedo*, 420 F. Supp. 2d at 349.

11

defamation claims, nor can they be based on non-actionable statements. (Opinion II at 21-22 (citing cases).)[14] Moreover, AURA offers only conclusory allegations of malicious or intentional interference. *LY Berditchev Corp. v. ESupplements, LLC*, 2024 WL 4182585, at *3 (D.N.J. Sept. 12, 2024) ("bald allegations of intentional harm that lack any factual support" are insufficient).

Finally, AURA argues it is not required to plead specific contracts with which Defendants interfered (Opp. at 28)—but, even if true, AURA must still plead Courville had "knowledge ***of a specific*** contract and intend[ed] to interfere ***with that*** contract." *Durr Mech. Constr., Inc. v. PSEG Fossil, LLC*, 516 F. Supp. 3d 407, 422 (D.N.J. 2021). The FAC fails to do so.

## CONCLUSION

For the reasons set forth herein and in Defendants' opening brief, Defendants respectfully request that the Court dismiss the Fourth Amended Complaint with prejudice.[15]

Respectfully submitted,

COZEN O'CONNOR, PC
A Pennsylvania Professional Corporation
Attorney for Defendant Brittany Jeream Courville

BY: *[signature]*

John P. Johnson, Jr.
1010 Kings Highway South
Cherry Hill, NJ 08034
Telephone: 856-910-5001
Fax: 215-701-2049

---

[14] All of AURA's alleged defamation claims have been dismissed. (Opinion II at 10-13.)

[15] Plaintiffs' case law confirms that the opportunity to amend should be denied where, as here, there has been a "repeated failure to cure deficiencies by amendments previously allowed." *Dole v. Arco Chem. Co.,* 921 F.2d 484, 487 (3d Cir. 1990). Plaintiffs should not be permitted to continue forcing Defendants to incur legal fees in defending against non-viable claims.

12

                                                                             jjohnson@cozen.com

Kevin T. Kerns
*(D.N.J Admission Forthcoming)*
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Telephone:  215-665-6912
Fax:  215-372-2352
kkerns@cozen.com

Tamar Wise (*Admitted Pro Hac Vice*)
3 WTC
175 Greenwich Street, 55th Floor
New York, NY 10172
Telephone: 212-883-4924
Fax: 646-461-2054
twise@cozen.com

Dated:  February 25, 2025

13